**The St Paul**

October 6, 2003

CERTIFIED COPY

THIS IS A CERTIFIED COPY OF POLICY NO. 1MP30099115203
TERM: 01/01/1997 TO 01/01/1998
FOR: HATER INDUSTRIES, INC.

THIS CERTIFIED COPY CONFERS NO RIGHTS TO THE HOLDER, IT IS
MERELY A MEMORANDUM OF THE ISSUANCE OF SAID POLICY AND
IS GIVEN ONLY AS A MATTER OF INFORMATION.

Certified by _Barbara Wright_ Dated _10/6/2003_

# MASTER INSURANCE POLICY - COMMON POLICY DECLARATIONS

**USF&G®**
**INSURANCE**

Policy No.  1MP 300991152 03        Renewal of 1MP 300991152 02

---

1. **NAMED INSURED AND MAILING ADDRESS:**
(No., Street, City, State, Zip Code)

☐  **United States Fidelity and Guaranty Company**
☒  **Fidelity and Guaranty Insurance Underwriters, Inc.**
☐  **Fidelity and Guaranty Insurance Company**
(Each a Stock Insurance Company)

HATER INDUSTRIES, INC.
240 STILLE DRIVE
CINCINNATI, OH 45233

The issuing company is designated above by the letter X.
Branch Office:
OHIO

2. **POLICY PERIOD:**

From 01/01/97 _____ to 01/01/98 _____

12:01 A.M. standard time at your mailing
address shown above.

Agent:
KNEFLIN-DILLHOFF-HILS &
KRUSE AGENCY, INC
Address:
414 WALNUT STREET, S-1210
CINCINNATI, OH 45202

Agent's Code: 3720    Subproducer No.: 000
Countersigned By:

3. **BUSINESS DESCRIPTION**
MACHINE SHOP

4. In return for the payment of the premium, and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy. This policy consists of the following Coverage Part(s) for which a premium is indicated. This premium may be subject to adjustment. The Policy Writing Minimum Premium is $500.00

| Coverage Part(s) | | Premium |
|---|---|---|
| COMMERCIAL GENERAL LIABILITY | $ | 6,762.00 |
| SUPERIOR PROPERTY PROGRAM | $ | 4,286.00 |
| INFORMATION TECHNOLOGY | $ | 250.00 |
| CONTRACTOR'S BLOCK | $ | 353.00 |
| | $ | |
| | $ | |
| **Total Policy Premium** | $ | 11,651.00 |
| Premium is payable: At Inception | $ | 11,651.00 |

5. **FORMS AND ENDORSEMENTS APPLICABLE TO ALL COVERAGE PARTS** (See specific form or endorsement for applicability to each coverage part.):

CL/IL 00 21 02 88 ✓        IL 02 44 06 89 ✓
CL/IL 154 07 90 ✓         IL 02 86 12 90 ✓
CL/00 99 01 01 87 ✓       CL/IL 102 10 89M ✓
IL 00 17 11 85 ✓

SP00002

Client No.: 0000742036                AGENCY BILL

CL/IL 102 10 89M
01/02/97                    BRANCH OFFICE COPY           01/02/97    (ISO IL 00 19 11 85)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION
## (Broad Form)

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVRAGE PART
COMMERCIAL UMBRELLA LIABILITY COVERAGE PART - COVERAGE B
FARM COVERAGE PART
GARAGE COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY NEW YORK DEPARTMENT OF TRANSPORTATION
TRUCKERS COVERAGE PART.

1. The insurance does not apply:

   A. Under any Liability Coverage, to "bodily injury" or "property damage":

      (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

      (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from the "hazardous properties" of "nuclear material," if:

      (1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

      (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an "insured"; or

      (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility," but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

   "Hazardous properties" include radioactive, toxic or explosive properties;
   "Nuclear material" means "source material," "Special nuclear material" or "by-product material";
   "Source material," "special nuclear material," and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

Includes copyrighted material of Insurance Services Office, Inc. with its permission.
Copyright, Insurance Services Office, Inc., 1983, 1984

CL/IL 00 21 02 88        (ISO IL 00 21 11 85)        Page 1 of 2

SP00003

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor";

"Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility."

"Nuclear facility" means:

(a) Any "nuclear reactor,"

(b) Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel," or (3) handling, processing or packaging "waste";

(c) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or devise is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste,"

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"Property damage" includes all forms of radioactive contamination of property.

POLICY NUMBER:

# DESCRIPTION OF TERMS USED AS PREMIUM BASIS

Premiums are computed in accordance with our manual rules and rates.  The first Named Insured must keep records of the information we need for premium computation and send us copies at such time as we may request. Refer to the Premium Audit Condition of the Coverage Form.

Following are general description of several premium bases we use.  Consult your agent for details and information regarding proper record maintenance.

| Symbol | Bases of Premium | Description |
|---|---|---|
| a | Area | The total number of square feet of floor space at the insured premises (certain space may be excludable.) |
| | | Rates apply per 1,000 square feet of area. |
| c | Total Cost | The total cost of all work let or sublet in connection with each specific project including the cost of all labor, materials and equipment furnished, used or delivered for use in the execution of the work and all fees, bonuses or commissions made, paid or due. |
| | | Rates apply per $1,000 of total cost. |
| g | Gallons | Rates apply per 1,000 gallons. |
| m | Admissions | The total number of person, other than employees of the Named Insured, admitted to the event insured or to events conducted on the premises whether on paid admissions, tickets, complimentary tickets or passes. |
| | | Rates apply per 1,000 admissions. |
| p | Payroll | Money or substitutes for money paid to employees including executive officers.  Payroll of individual insureds is included.  Overtime pay is included subject to certain limitations. |
| | | Rates apply per $1,000 of payroll. |
| s | Gross Sales | The gross amount charged by the Named Insured, concessionaires of the Named Insured or by others trading under the insured's name for all goods or products sold or distributed, operations performed, rentals and dues or fees.  Among items excluded are sales or excise taxes collected and remitted to a government division. |
| | | Rates apply per $1,000 of gross sales. |
| t | Each | The unit of exposure is indicated in the Coverage Part Declarations. |
| | | Rates apply per unit of exposure. |

CL/IL 154 07 90

SP00005

| Symbol | Bases of Premium | Description |
|---|---|---|
| u | Units | A single room or group of rooms intended for occupancy as separate living quarters by a family, by a group of unrelated persons living together, or by a person living alone. |
| o | Total Operating Expenditures | Total expenditures (including grants, entitlements and shared revenue) without regard to source of revenue during the policy period, including accounts payable and excluding: |

(a) Capital improvements - any purchase or improvement of any individual item of personal or real property which is bonded or financed (including interest thereon) or exceeds 5% of "Total Operating Expenditures." However, work performed by the Named Insured in connection with such purchase or improvement is included.

(b) Expenditures for independent contractors operations - where the contractor carries adequate insurance. However, when the contractor does not carry adequate insurance, the cost of contract is included.

(c) Welfare benefits (not administrative costs) - expenditures for activities designed to provided public assistance and institutional care e.g. old age assistance, aid to dependent children, aid to blind, social security payments and CETA funds if a separate policy is issued for CETA.

(d) Expenditures for exposures which are separately rated.

Rates apply per $1,000 of total operating expenditures.

CL /IL 154 07 90

Page 2 of 2

SP00006

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**


This endorsement modifies insurance provided under the following:

IT IS AGREED ITEM #1 OF THE COMMON POLICY DECLARATION IS AMENDED TO

INCLUDE THE FOLLOWING NAMED INSUREDS:


HATER INDUSTRIES, INC.

CHARLEVOIX MANUFACTURING CO., AND

THE TRISON COMPANY

PROJECT INVESTMENTS, L.L.C.

CL/OO 99 01 01 87

SP00007

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. CANCELLATION

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. CHANGES

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. EXAMINATION OF YOUR BOOKS AND RECORDS

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. INSPECTIONS AND SURVEYS

We have the right but are not obligated to:

1. Make inspections and surveys at any time;

2. Give you reports on the conditions we find; and

3. Recommend changes.

Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

1. Are safe or healthful; or

2. Comply with laws, regulations, codes or standards.

This condition applies not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

## E. PREMIUMS

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

Copyright, Insurance Services Office, Inc., 1982, 1983

SPO0008

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# OHIO CHANGES - CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
BUSINESSOWNERS POLICY
COMMERCIAL AUTO COVERAGE PART
COMMERCIAL CRIME COVERAGE PART*
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART.

\* This endorsement does not apply to coverage provided for employee dishonesty (Coverage Form A) or public employee dishonesty (Coverage Forms O and P).

**A.** With respect to a policy which has been in effect for more than 90 days, or is a renewal of a policy we issued, the CANCELLATION Common Policy Condition is replaced by the following:

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy only for one or more of the following reasons, except as provided in paragraph 6. below.

    **a.** Nonpayment of premium;

    **b.** Discovery of fraud or material misrepresentation in the procurement of the insurance or with respect to any claims submitted thereunder;

    **c.** Discovery of a moral hazard or willful or reckless acts or omissions on your part which increases any hazard insured against;

    **d.** The occurrence of a change in the individual risk which substantially increases any hazard insured against after the insurance coverage has been issued or renewed except to the extent the insurer could reasonably have foreseen the change or contemplated the risk in writing the contract;

    **e.** Loss of applicable reinsurance or a substantial decrease in applicable reinsurance, if the Superintendent has determined that reasonable efforts have been made to prevent the loss of, or substantial decrease in, the applicable reinsurance, or to obtain replacement coverage;

    **f.** Failure of an insured to correct material violations of safety codes; or

    **g.** A determination by the Superintendent of Insurance that the continuation of the policy would create a condition that would be hazardous to the policyholders or the public.

3. We will mail written notice of cancellation to the first Named Insured, and agent if any, at the last mailing addresses known to us. Proof of mailing will be sufficient proof of notice.

4. We will mail the notice of cancellation at least:

    **a.** 10 days before the effective date of cancellation, if we cancel for nonpayment of premium; or

    **b.** 30 days before the effective date of cancellation, if we cancel for a reason stated in 2.b. through 2.g. above.

5. **a.** The notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

    **b.** The notice will also contain the date of the notice and the policy number, and will state the reason for cancellation.

Copyright Insurance Services Office, Inc., 1988, 1989
Copyright, ISO Commercial Risk Services, Inc., 1988, 1989

IL 02 44 06 89                                                         Page 1 of 2  ☐

64    1

SP00009

Policies written for a term of more than one year or on a continuous basis may be cancelled by us for any reason at an anniversary date, upon 30 days' written notice of cancellation.

7. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

**B.** The following is added to the Common Policy Conditions and supersedes any provisions to the contrary:

NONRENEWAL

1. If we elect not to renew this policy, we will mail written notice of nonrenewal to the first Named Insured, and agent if any, at the last mailing addresses known to us. The notice will contain the date of the notice and the policy number, and will state the expiration date of the policy.

2. We will mail the notice of nonrenewal at least 30 days before the expiration date of the policy.

3. Proof of mailing will be sufficient proof of notice.

**C.** 1. Paragraph A.2.a. of the BUSINESSOWNERS Common Policy Conditions is deleted.

2. Paragraph E.2. of the Cancellation Common Policy Condition in the STANDARD PROPERTY POLICY is deleted. Paragraph E.2 is replaced by the following (unless item A. of this endorsement applies):

We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

**a.** 10 days before the effective date of cancellation, if we cancel for nonpayment of premium, or

**b.** 30 days before the effective date if we cancel for any other reason.

Copyright Insurance Services Office, Inc., 1988, 1989
Copyright, ISO Commercial Risk Services, Inc., 1988, 1989

IL 02 44 06 89

SP00010

IL 02 86 12 90

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# MICHIGAN CHANGES - CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
COMMERCIAL AUTO COVERAGE PART
COMMERCIAL CRIME COVERAGE PART*
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
FARM COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

\*  This endorsement does not apply to coverage provided for employee dishonesty (Coverage Form A) or public employee dishonesty (Coverage Forms O and P).

A. The CANCELLATION Common Policy Condition is amended as follows:

1. Paragraph **1.** is replaced by the following:

   The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us or our authorized agent advance notice of cancellation.

2. Paragraph **3.** is replaced by the following:

   We will mail or deliver our notice to the first Named Insured's last mailing address known to us or our authorized agent.

3. Paragraph **5.** is replaced by the following:

   If this policy is cancelled, we will send the first Named Insured any pro rata premium refund due. The minimum earned premium shall not be less than the pro rata premium for the expired time or $25.00, whichever is greater. The cancellation will be effective even if we have not made or offered a refund.

B. The following Condition is added and supersedes any other provision to the contrary:

   NONRENEWAL

   If we decide not to renew this policy, we will mail or deliver to the first Named Insured's last mailing address known to us or our authorized agent written notice of the nonrenewal not less than 30 days before the expiration date.

   If notice is mailed, proof of mailing shall be sufficient proof of notice.

IL 02 86 12 90

Copyright, Insurance Services Office, Inc., 1991
Copyright, ISO Commercial Risk Services, Inc., 1991

□

SP00011



**DESCRIPTION OF COVERED PREMISES** (Street, City, County, State, Zip, Occupancy):

Prem. No.   1   -   240 STILLE DRIVE, CINCINNATI, OH 45233
                    MASONRY, NON-COMBUSTIBLE MACHINE SHOP

Prem. No.   2   -   400 MARTIN ROAD, CHARLEVOIX, MI 49720
                    NON-COMBUSTIBLE MACHINE SHOP

Prem. No.   _____   -   _____

Prem. No.   _____   -   _____

Prem. No.   _____   -   _____

## LIMITS OF INSURANCE

| Coverage Code | Prem. No.: | Prem. No.: | Prem. No.: | Prem. No.: | Prem. No.: |
|---|---|---|---|---|---|
| RE | $ 1,235,000 | $ 550,000 | $ | $ | $ |
| PP | $ 1,100,000 | $ 875,001 | $ | $ | $ |
|  | $ | $ | $ | $ | $ |
|  | $ | $ | $ | $ | $ |

RE=Real Property, PP=Personal Property; RP=Real and Personal Property; FL=Flood; EQ=Earth Movement

**Business Income Amount Reported:**   $ __Not Cov.__      **Period of Restoration:** _____ mos.

**Extra Expense:**   $ __Not Cov.__      **Inflation Guard -** _____ (Applies only if a decimal is shown.)

**DEDUCTIBLES:**

$ __1,000__   Applies to loss arising from Covered Causes of Loss other than "flood" or "earth movement."

$ __N/A__   Applies to loss arising from "flood."

| Earth Movement | Prem. No.: | Prem. No.: | Prem. No.: | Prem. No.: | Prem. No.: |
|---|---|---|---|---|---|
| **Percent** | % | % | % | % | % |

**OPTIONAL COVERAGES:** The following apply only where indicated and only if an "x" is shown in the box.

☐   Earth Movement   _____
☐   Flood   _____

**MORTGAGE HOLDERS (name and mailing address):** ☐ See CL/IL 513

**FORMS AND ENDORSEMENTS APPLICABLE TO THIS COVERAGE PART:** CL/SP 104 12 92 ✓
CL/SP 0001 12 92 ✓ CP 00 90 07 88   CL/SP 1030 12 92 ✓ CL/SP 1218 12 92 ✓

Forms Applicable To Specific Premises:
Prem. No.

**PREMIUM FOR THIS COVERAGE PART:**   $__4,286.00__

CL/SP 104 12 92

# BUILDING AND PERSONAL PROPERTY
# COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties, and what is and is not covered.

Throughout this Coverage Part the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we," "us," and "our" refer to the Company providing this insurance.

Other words and phrases that appear within quotation marks have special meaning. Refer to DEFINITIONS for their meaning.

## A. COVERAGES

1. **Property at Your Premises**

   a. We will pay for direct physical loss of or damage to Covered Property:

      (1) If caused by or resulting from any of the Covered Causes of Loss; and

      (2) If the loss or damage occurs at or within 1000 feet of "covered premises."

   b. If Real Property is indicated in the Declarations, Covered Property, as used in this Coverage Part, means buildings, structures, and other real property that you own, including all property made a permanent part of the building, structure, or real property.

   c. If Personal Property is indicated in the Declarations, Covered Property, as used in this Coverage Part, means:

      (1) Business personal property that you own;

      (2) Business personal property that you lease from others if you have a written contractual obligation to insure it;

      (3) "Personal property of others" while in your care, custody, or control;

      (4) Personal property (other than vehicles) that belongs to you or your employees, officers, or partners; and

      (5) Your use interest as tenant in improvements and betterments. Improvements and betterments are fixtures, alterations, installations, or additions:

         (a) Made a part of a building or structure that you occupy and do not own; and

         (b) You acquired or that were made at your own expense but which you cannot legally remove.

2. **Accounts Receivable**

   a. If your records of accounts receivable are lost or damaged by a Covered Cause of Loss, we will pay:

      (1) All amounts due from your customers that you are unable to collect;

      (2) Interest charges on any loan required to offset amounts you are unable to collect pending our payment of these amounts;

      (3) Collection expenses that are in excess of your normal collection expenses that are made necessary by the loss; and

      (4) Other reasonable expenses that you incur to re-establish your records of accounts receivable.

   b. The following is added under paragraph B. of the Causes of Loss - Comprehensive Form only as respects this coverage.

      We will not pay for loss or damage cause by or resulting from:

      (1) Alteration,                         falsification, concealment, or destruction of records of accounts receivable done to conceal the wrongful giving, taking, or withholding of money, securities, or other property.     This provision applies only to the extent of the wrongful giving, taking or withholding.

      (2) Bookkeeping, accounting, or billing errors or omissions.

      (3) Electrical or magnetic injury, disturbance, or erasure of electronic recordings. But we will pay for direct loss or damage caused by lightning.

CL/SP 00 01 12 92   Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Page 1 of 12 ☐

135    1

SP00013

(4) Errors in machine programming or instructions to machines.

(5) Operator or programmer error.

(6) Unauthorized instructions to transfer property to any person or to any place.

We will not pay for loss or damage that requires any audit of records of any inventory to prove its factual existence.

c. If you cannot accurately establish the amount of accounts receivable outstanding as of the time of loss or damage, the following method will be used.

(1) Determine the total of the average monthly amounts of accounts receivable for the 12 months immediately preceding the month in which the loss occurs; and

(2) Adjust that total for any normal fluctuations in the amount of accounts receivable for the month in which the loss occurred or for any demonstrated variance from the average for that month.

d. The following will be deducted from the total amount of accounts receivable, however that amount is established.

(1) The amount of the accounts for which there is no loss or damage;

(2) The amount of the accounts that you are able to re-establish or collect;

(3) An amount to allow for probable bad debts that you are normally unable to collect; and

(4) All unearned interest and service charges.

The most we will pay under this coverage is $25,000 per occurrence.

3. **Debris Removal**

We will pay your debris removal expenses only if you report them to us in writing within 180 days of the date of direct physical loss or damage.

Debris removal expenses are amounts incurred to remove debris of Covered Property from "covered premises" resulting from any of the Covered Causes of Loss. Debris removal expenses do not include any amounts incurred to:

a. Extract or remove "pollutants" or contaminants from land or water; or

b. Cleanup, remove, restore, or replace polluted land or water.

This coverage is part of and does not increase the Limits of Insurance applicable to Covered Property. But the most we will pay for this coverage is 25% of the sum of the amount we pay for direct physical loss of or damage to Covered Property plus the deductible applicable to the loss or damage. If this amount is not sufficient to pay all the debris removal expenses, we will pay up to an additional amount specified under Limits of Insurance.

4. **Exhibitions, Expositions, Trade Shows, or Fairs**

We will pay for direct physical loss of or damage to your business personal property while at the premises of any exhibition, exposition, trade show, or fair. The loss or damage must be caused by or result from a Covered Cause of Loss.

The most we will pay for loss or damage under this coverage is $25,000 per occurrence.

5. **Expediting Expense**

We will pay the expediting expenses that you incur as a result of direct physical loss or damage to Covered Property.

Expediting expenses are reasonable extra costs for temporary repairs or and for expediting the repairs or replacement of Covered Property damaged by a Covered Cause of Loss. Expediting expenses include overtime wages and the extra cost of express or other rapid means of transportation. Expediting expenses do not include the costs incurred for the temporary rental of property, temporary replacement of damaged property, or expenses recoverable elsewhere in this Coverage Part.

The most we will pay under this coverage for all such expenses arising from an occurrence is $25,000.

6. **Extra Expense**

a. We will pay necessary "extra expense" incurred during the "period of restoration":

(1) Arising from direct physical loss of or damage to Covered Property at or within 1000 feet of "covered premises"; or

(2) If you are denied access to "covered premises" by a civil authority because of direct physical loss of or damage to property away from "covered premises."

The loss or damage must be caused by or result from a Covered Cause of Loss.

CU/SP 00 01 12 92    Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Page 2 of 12 ☐

136    2

SP00014

The most we will pay under this coverage for all "extra expenses" arising from an occurrence is $25,000.

b. The amount of "extra expense" will be determined based on:

(1) All expenses that exceed the normal operating expenses that would have been incurred by "operations" during the "period of restoration" if no direct physical loss or damage had occurred. We will deduct from the total of such expenses:

(a) The salvage value that remains of any property bought for temporary use during the "period of restoration" once "operations" are resumed; and

(b) Any "extra expense" that is paid for by other insurance except for insurance that is written subject to the same plan, terms, conditions, and provisions as this insurance.

(2) All necessary expenses that reduce the "extra expense" otherwise incurred.

## 7. Fine Arts - Market Value

We will pay for direct physical loss of or damage to "fine arts":

a. That you own; or

b. That belong to others while in your care, custody, or control;

on a market value basis. The loss or damage must occur at "covered premises" and be caused by or result from any of the Covered Causes of Loss.

The most we will pay under this coverage is $25,000 per occurrence.

## 8. Fire Department Service Charge

If a fire department is called to save or protect Covered Property at "covered premises" from a Covered Cause of Loss, we will pay your liability for fire department service charges:

a. Assumed under contract or written agreement before the Covered Cause of Loss occurs; or

b. Required by local ordinance.

## 9. Loss Data Preparation Costs

We will pay the reasonable costs you incur, up to $10,000, in collecting and preparing loss data required by policy conditions applicable to this Coverage Part or requested

by us. This includes the cost of taking inventory, getting appraisals, and preparing other data in order to determine the extent of the loss.

This coverage does not apply to costs incurred under the Appraisal provision of this Coverage Part.

## 10. Lost Key Consequential Loss

If a master or grand master key is lost or damaged by a Covered Cause of Loss, we will pay for the actual cost of keys, the cost of adjusting locks to accept new keys, or the cost of new locks, if required, of like kind and quality including the cost of their installation. The most we will pay under this coverage for all amounts incurred under this coverage is $25,000.

## 11. Money and Securities

a. We will pay for the disappearance, destruction, or "theft" of "money" or "securities":

(1) From within "premises" or banking premises"; or

(2) In the care, custody, or control of a "messenger" or armored motor vehicle company.

b. In addition to any other exclusions that may apply to this coverage, we will not pay for:

(1) Loss resulting from accounting or arithmetical errors or omissions.

(2) Loss resulting from the giving or surrendering of property in exchange or purchase.

(3) Loss of property contained in any money-operated device unless the amount of "money" deposited in it is recorded by a continuous recording instrument in the device.

The most we will pay under this coverage for loss of "money" and "securities" in any one occurrence is $5,000.

## 12. Newly Acquired or Constructed Property

a. We will pay for direct physical loss of or damage to your new buildings while being built on "covered premises."

b. We will pay for direct physical loss of or damage to buildings acquired by you at locations that are not "covered premises." The buildings must be intended for:

(1) Similar use as buildings at "covered premises"; or

SP00015

(2) Use as a warehouse.

c. We will pay for direct physical loss of or damage to your business personal property at locations you acquire.

d. This coverage:

(1) Begins when construction is started or when you acquire the property. It ends when any of the following first occurs:

(a) This policy expires;

(b) 180 days expire after construction begins or you acquire the property; or

(c) You report values to us.

(2) Does not apply to property at any fair, trade show, exhibition, or exposition.

(3) Applies only if the loss or damage is caused by or results from a Covered Cause of Loss.

We will charge you additional premium for this coverage based on values reported from the date construction begins or the date you acquire the property.

The most we will pay for loss or damage under this coverage is $1,000,000 per occurrence.

13. Ordinance of Law

a. If a Covered Cause of Loss occurs to covered buildings, we will pay:

(1) For loss to the undamaged portion of the building caused by enforcement of any ordinance or law that:

(a) Requires the demolition of parts of the same property not damaged by a Covered Cause of Loss;

(b) Regulates the construction or repair of buildings; or establishes zoning or land use requirements at the described premises; and

(c) Is in force at the time of loss.

(2) The increased cost to repair, rebuild, or construct the property caused by enforcement of building, zoning, or land use ordinance or law. If the property is repaired or rebuilt, it must be intended for similar occupancy as the current property, unless otherwise required by zoning, or land use ordinance or law.

(3) The cost to demolish and clear the site of undamaged parts of the property caused by enforcement of the building, zoning or land use ordinance or law.

b. We will not pay for increased costs of construction under this coverage:

(1) Until the property is actually repaired or replaced, at the same premises or another premises; and

(2) Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage, not to exceed 2 years. We may extend this period in writing during the 2 years.

c. We will not pay under this coverage for the costs associated with the enforcement of any ordinance or law that requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the affects of, "pollutants."

The most we will pay under this coverage is $250,000 per occurrence.

14. Pollutant Cleanup

a. We will pay your pollutant cleanup expenses only if:

(1) You report the pollutant cleanup expenses to us in writing within 180 days of the date on which the Covered Cause of Loss occurs; and

(2) The discharge, dispersal, seepage, migration, release, or escape of the "pollutants" or contaminants is caused by or results from a Covered Cause of Loss that occurs during the policy period.

b. Pollutant cleanup expenses are amounts that are incurred:

(1) To extract, remove, or cleanup "pollutants" or contaminants from land or water; or

(2) To remove, restore, or replace polluted or contaminated land or water;

at "covered premises."

The most we will pay under this coverage for each "covered premises" is $25,000 for the sum of all pollutant cleanup expenses arising from Covered Causes of Loss occurring during each separate twelve month period of this policy.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

SP00016

### 15. Preservation of Property

You may move Covered Property from "covered premises" to another location in order to save it from imminent loss or damage by a Covered Cause of Loss. If you do, we will pay for direct physical loss of or damage to that property:

a. While it is being moved to, returned from, or while temporarily stored at another location; and

b. Only if the loss or damage occurs within ninety days after the property is first moved.

### 16. Property in Custody of Salespeople

We will pay for direct physical loss of or damage to your business personal property in the care, custody, or control of your salespeople. The loss or damage must occur away from "covered premises" and be cause by or result from a Covered Cause of Loss.

The most we will pay for loss or damage under this coverage is $25,000 per occurrence.

### 17. Property Off-Premises

We will pay for direct physical loss of or damage to Covered Property that is temporarily away from "covered premises." The loss or damage must be caused by or result from a Covered Cause of Loss.

This coverage does not apply to:

a. Property while in transit, or in or on a vehicle;

b. Property in the care, custody, or control of salespeople, your employees, or any borrower or renter;

c. Property at any exhibition, exposition, trade show, or fair; or

d. Property sold under any conditional sale, trust agreement, installment plan, or other deferred payment plan.

The most we will pay for loss or damage under this coverage is $25,000 per occurrence.

### 18. Refilling Fire Extinguishing Equipment

We will pay to refill fire extinguishers and automatic fire extinguishing systems if its discharge was:

a. Caused by a Covered Cause of Loss; or

b. Intended to control loss or damage by fire or explosion.

This coverage does not apply if the discharge occurred while the system or equipment was being tested or serviced.

This coverage is part of and does not increase the Limit of Insurance applicable to the Covered Property.

### 19. Transit

a. We will pay for direct physical loss or damage to your business personal property in transit more than 1000 feet from "covered premises." The property must be in due course of transit at your risk between points within the coverage territory. The loss or damage must be caused by or result from a Covered Cause of Loss.

b. We will only cover animals that die or that sustain injuries making destruction necessary if the death or injuries are cause directly by fire, lightning, windstorm, explosion, collision, or upset or overturn of the vehicle carrying the animals.

c. This coverage does not apply to:

(1) Property once it is in the care, custody, or control of salespeople or the Postal Service.

(2) Property shipped on deck of ocean-going ships.

(3) Import shipments. But this coverage shall apply once the property becomes fully discharged from the conveyance used to import it and other marine insurance on it has ceased.

(4) Export shipments covered under other marine insurance or export shipments once they are onboard conveyances destined to leave the coverage territory.

The most we will pay for loss or damage under this coverage is $10,000 per occurrence.

### 20. Valuable Papers and Records - Cost of Research

If there is direct physical loss of or damage to valuable papers and records (including records on electronic or magnetic media) by a Covered Cause of Loss, we will pay amounts you incur to research, replace, or restore information that was on such property. Valuable papers and records does not include "money" or "securities."

This coverage does not apply to:

a. Your records of accounts receivable; or

b. Amounts incurred to replace or restore information available from duplicates or from originals.

### 15. Preservation of Property

You may move Covered Property from "covered premises" to another location in order to save it from imminent loss or damage by a Covered Cause of Loss. If you do, we will pay for direct physical loss of or damage to that property:

a. While it is being moved to, returned from, or while temporarily stored at another location; and

b. Only if the loss or damage occurs within ninety days after the property is first moved.

### 16. Property in Custody of Salespeople

We will pay for direct physical loss of or damage to your business personal property in the care, custody, or control of your salespeople. The loss or damage must occur away from "covered premises" and be cause by or result from a Covered Cause of Loss.

The most we will pay for loss or damage under this coverage is $25,000 per occurrence.

### 17. Property Off-Premises

We will pay for direct physical loss of or damage to Covered Property that is temporarily away from "covered premises." The loss or damage must be caused by or result from a Covered Cause of Loss.

This coverage does not apply to:

a. Property while in transit, or in or on a vehicle;

b. Property in the care, custody, or control of salespeople, your employees, or any borrower or renter;

c. Property at any exhibition, exposition, trade show, or fair; or

d. Property sold under any conditional sale, trust agreement, installment plan, or other deferred payment plan.

The most we will pay for loss or damage under this coverage is $25,000 per occurrence.

### 18. Refilling Fire Extinguishing Equipment

We will pay to refill fire extinguishers and automatic fire extinguishing systems if its discharge was:

a. Caused by a Covered Cause of Loss; or

b. Intended to control loss or damage by fire or explosion.

This coverage does not apply if the discharge occurred while the system or equipment was being tested or serviced.

This coverage is part of and does not increase the Limit of Insurance applicable to the Covered Property.

### 19. Transit

a. We will pay for direct physical loss or damage to your business personal property in transit more than 1000 feet from "covered premises." The property must be in due course of transit at your risk between points within the coverage territory. The loss or damage must be caused by or result from a Covered Cause of Loss.

b. We will only cover animals that die or that sustain injuries making destruction necessary if the death or injuries are cause directly by fire, lightning, windstorm, explosion, collision, or upset or overturn of the vehicle carrying the animals.

c. This coverage does not apply to:

(1) Property once it is in the care, custody, or control of salespeople or the Postal Service.

(2) Property shipped on deck of ocean-going ships.

(3) Import shipments. But this coverage shall apply once the property becomes fully discharged from the conveyance used to import it and other marine insurance on it has ceased.

(4) Export shipments covered under other marine insurance or export shipments once they are onboard conveyances destined to leave the coverage territory.

The most we will pay for loss or damage under this coverage is $10,000 per occurrence.

### 20. Valuable Papers and Records - Cost of Research

If there is direct physical loss of or damage to valuable papers and records (including records on electronic or magnetic media) by a Covered Cause of Loss, we will pay amounts you incur to research, replace, or restore information that was on such property. Valuable papers and records does not include "money" or "securities."

This coverage does not apply to:

a. Your records of accounts receivable; or

b. Amounts incurred to replace or restore information available from duplicates or from originals.

SP00018

a. The Earth Movement deductible:

(1) Will be the larger of either $50,000 or the Earth Movement Percent shown in the Declarations times the applicable Limits of Insurance.

This deductible applies separately to each premises.

(2) Does not apply to fire, explosion, or "sprinkler leakage" loss resulting from "earth movement."

b. The Flood deductible does not apply to fire or explosion loss resulting from "flood."

2. No deductible applies to amounts payable under the following coverages:

a. Extra Expense.

b. Fire Department Service Charges.

## G. LOSS CONDITIONS

### 1. Abandonment

There can be no abandonment of any property to us.

### 2. Appraisal

If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

a. Pay its chosen appraiser; and

b. Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

### 3. Duties In The Event Of Loss Or Damage

a. You must see that the following are done in the event of loss or damage to property:

(1) Notify the police if a law may have been broken.

(2) Give us prompt notice of the loss or damage. Include a description of the property involved.

(3) As soon as possible, give us a description of how, when, and where the loss or damage occurred.

(4) Take all reasonable steps to protect the property from further damage by a Covered Cause of Loss. If feasible, set the damaged property aside and in the best possible order for examination. Also, you must keep a record of your expenses for emergency and temporary repairs, for consideration in the settlement of the claim. This will not increase the Limit of Insurance.

(5) At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values, and amount of loss claimed.

(6) As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

You must also permit us to make copies from your books and records and permit us to take samples of damaged and undamaged property for inspection, testing, and analysis.

(7) Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

(8) Cooperate with us in the investigation or settlement of the claim.

b. We may examine any insured (including employees) under oath, while not in the presence of any other insured (or employee) and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers (transcript) must be signed; however, we reserve the right to waive this requirement.

### 4. Loss Payment

a. In the event of loss or damage, at our option we will either:

(1) Pay the value of lost or damaged property;

(2) Pay the cost of repairing or replacing the lost or damaged property.

(3) Take all or any part of the property at an agreed or appraised value; or

(4) Repair, rebuild, or replace the property with other property of like kind and quality.

We will give notice of our intentions within 30 days after we receive the sworn proof of loss.

b.  We will not pay more than your financial interest in any property.

c.  Our payment for loss of or damage to property of others will only be for the account of the owner of the property.

We may adjust losses with the owners of damaged property if other than you. If we pay the owners, such payments will satisfy your claims against us for the owners more than their financial interest in the property.

d.  We may elect to defend you against suits arising from claims of owners of property. We will do this at our expense.

e.  If you have complied with all of the terms of this Coverage Part and:

(1) We have reached agreement with you on the amount of loss; or

(2) An appraisal award has been made;

we will pay for covered loss or damage within 30 days after we receive the sworn proof of loss.

**5.  Recovered Property**

If either you or we recover any property after loss settlement, that party must give the other prompt notice.  At your option, the property will be returned to you.  You must then return to us the amount we paid you for the property.  We will pay recovery expenses and the expenses to repair recovered property, subject to Limit of Insurance.

**6.  Vacancy**

If the building where loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage, we will:

a.  Not pay for any loss or damage cause by any of the following even if they are Covered Causes of Loss:

(1) Vandalism;

(2) Leakage of sprinkler systems, unless you have taken the necessary steps to protect the system from freezing;

(3) Building glass breakage.

(4) Water damage; or

(5) Theft or attempted theft.

b.  Reduce the amount we would otherwise pay for the loss or damage by 15%;

A building is vacant when it does not contain enough business personal property to conduct customary operations.  Buildings under construction are not considered vacant.

**7.  Valuation**

The value of property shall be determined as of the time and place of loss or damage.

a.  Except as provided below, we will determine the value of property at its replacement cost (without deduction for depreciation.)

b.  We will not pay on a replacement cost basis:

(1) Until the property is actually repaired, replaced, or rebuilt; and

(2) Unless the repairs, replacement, or reconstruction is made as soon as reasonably possible after the loss or damage.

If we do not pay on a replacement cost basis, we will determine the value of the property at actual cash value.

c.  We will not pay more for loss or damage on a replacement cost basis than the least of:

(1) The Limit of Insurance applicable to the lost or damaged property;

(2) The cost to replace, on the same premises, the lost or damaged property with other property:

(a) Of comparable material and quality; and

(b) Used for the same purpose; or

(3) The amount you actually spend that is necessary to repair or replace the lost or damaged property.

d.  For stock in process the value will be the value of raw stock and labor expended, plus the proper proportion of overhead charges.

e.  For "finished stock", the value will be the regular cash selling price minus all discounts and charges you otherwise would have had.

CL/SP 00 01 12 92    Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Page 8 of 12 ☐

f. For manuscripts, drawings, tape recordings, exposed film, or other records including those which exist on electronic or magnetic media (other than prepackaged software programs), the value will be the *cost* of:

   (1) Blank materials for reproducing the records; and

   (2) The labor incurred to transcribe or copy the records from duplicates or from originals.

g. For property sold but not delivered, the value will be your net selling price after all allowances and discounts.

h. For "fine arts," the value will be actual cash value. This valuation does not apply to the Fine Arts - Market Value coverage.

i. For "money," the value will be at its face value or its equivalent (if from a country other than the United States of America) based on exchange rates in effect when loss occurred.

j. For "securities," the value will be the actual cash value of the "securities" or the actual cost of replacing the "securities," whichever is less. We will not pay for the loss of income, interest, or dividends that occur as a result of loss of the "securities."

   Upon our payment for loss of "securities," you must assign to us all your right, title, and interest in and to those "securities."

k. For property of others, the value will be the actual cash value of that property, or the amount for which you are liable if less, including labor, materials, or services added, furnished, or arranged by you. This valuation does not apply to the Fine Arts - Market Value coverage or property you lease from others under a lease agreement.

l. For property of others under a lease agreement, the value will be the amount for which you are legally liable.

## H. ADDITIONAL CONDITIONS

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions.

**1. Brands and labels.**

If branded or labeled merchandise is damaged by a Covered Cause of Loss, we may take all or any part of the property at an agreed or appraised value. If we do, at your own expense you may:

a. Stamp "salvage" on the merchandise, its packaging, or its containers only if the stamp will not physically damage the property.

b. Remove the brands or labels only if such doing so will not physically damage the property. But you must relabel the merchandise, its packaging, or its containers to comply with the law.

**2. Mortgage Holders**

a. The term "mortgage holder" includes trustee.

b. We will pay for covered loss of or damage to covered buildings or structures to each mortgage holder shown in the Declarations (or schedule) in their order of precedence, as interests may appear.

c. The mortgage holder has the right to receive loss payment even if the mortgage holder has started foreclosure or similar action on the building or structure.

d. If we deny your claim because of your acts or because you have failed to comply with the terms of this Coverage Part the mortgage holder will still have the right to receive loss payment if the mortgage holder:

   (1) Pays any premium due under this Coverage Part at our request if you have failed to do so;

   (2) Submits a signed, sworn proof of loss within sixty days after receiving notice from us of your failure to do so; and

   (3) Has notified us of any change in ownership, occupancy, or substantial change in risk known to the mortgage holder.

   All of the terms of this Coverage Part will then apply directly to the mortgage holder.

e. If we pay the mortgage holder for any loss or damage and deny payment to you because of your acts or because you have failed to comply with terms of this Coverage Part:

   (1) The mortgage holder's rights under the mortgage will be transferred to us to the extent of the amount we pay; and

   (2) The mortgage holder's right to recover the full amount of the mortgage holder's claim will not be impaired.

CU/SP 00 01 12 92    Includes copyrighted material of Insurance Services Office, Inc. with its permission.    Page 9 of 12 ☐

SP00021

At our option, we may pay to the mortgage holder the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

f. If we cancel this policy, we will give written notice to the mortgage holder at least:

(1) Ten days before the effective date of cancellation if we cancel for your nonpayment of premium; or

(2) Thirty days before the effective date of cancellation if we cancel for any other reason.

g. If we elect not to renew this policy, we will give written notice to the mortgage holder at least ten days before the expiration date of this policy.

3. **Loss Adjustment**

The following is intended to facilitate payment of insurance proceeds if there is disagreement between us and a company providing boiler and machinery insurance as to the amount of the loss to be paid by each company.

a. We and the boiler and machinery insurer will make payments to the extent and in the manner, described in the following if the requirements listed in b. below are satisfied.

(1) We will pay, after your written request, the entire amount of loss that we agreed as being covered by this insurance and one-half (1/2) the amount that is in disagreement.

(2) The boiler and machinery insurer will pay, after your written request, the entire amount of loss that they have agreed as being covered by them and one-half (1/2) the amount that is in disagreement.

(3) The amount to be paid by us shall not exceed the amount we would have paid had no boiler and machinery insurance been in effect at the time of loss.

(4) The amount in disagreement to be paid by us shall not exceed the amount payable under the similar provision of the boiler and machinery insurer's policy.

(5) Your acceptance of sums paid does not alter, waive, or surrender any other right you have against us.

b. The following requirements must be met under this provision.

(1) The boiler and machinery insurance policy must contain a provision with substantially the same requirements, procedures, and conditions as provided under this provision.

(2) The damage to property must be caused by a loss for which both we and the boiler and machinery insurer admit to some liability for payment under the respective policies.

(3) The total amount of the loss must be agreed to by you, us, and the boiler and machinery insurer.

(4) We and the boiler and machinery insurer disagree as to the amount each should pay that is attributable to:

(a) A cause of loss covered under this insurance; and

(b) An accident covered under the boiler and machinery policy.

c. We and the boiler and machinery insurer will submit our differences to arbitration within ninety days after loss payment made under the terms of this provision.

d. There will be three arbitrators. One will be appointed by the boiler and machinery insurer and one will be appointed by us. The two arbitrators will then select the third arbitrator. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. A decision agreed to by two of the three arbitrators will be binding on both parties. Judgement on any award can be entered in any court that has jurisdiction. You will cooperate with any arbitration procedure, but not interfere in it.

4. **Occupancy**

Buildings and structures in the course of construction shall not be occupied without obtaining our written consent, except that machinery may be set up and operated solely for the purpose of testing the same without prejudice to this insurance.

5. **Pair, Set, or Parts**

a. In case of loss or damage to any part of a pair or set, we may:

(1) Repair or replace any part to restore the pair or set to its value before loss or damage; or

CL/SP 00 01 12 92   Includes copyrighted material of Insurance Services Office, Inc. with its permission.      Page 10 of 12 □

SP00022

(2) Pay the difference between the value of the pair or set before and after the loss or damage.

b. In case of loss or damage to any part of property consisting of several parts when complete, we will only pay for the value of the lost or damaged part.

## I. OPTIONAL COVERAGE -- INFLATION GUARD

The following applies only if this optional coverage is indicated in the Declarations.

The Limit of Insurance shown for Covered Property at "covered premises" will automatically increase by the annual percentage shown in the Declarations. The amount of increase will be:

1. The Limit of Insurance that applies on the most recent of the policy inception date, the policy anniversary date, or any other policy change amending the Limit of Insurance; times

2. The percentage of annual increase shown in the Declarations, expressed as a decimal (e.g. 8% is .08); times

3. The number of days since the beginning of the current policy year or the effective date of the most recent policy change amending the Limit of Insurance, divided by 365.

## J. DEFINITIONS

Wherever used in this Coverage Part:

1. "Banking premises" means the interior of that portion of any building occupied by a banking institution or similar safe depository.

2. "Covered premises" means premises described in the Declarations or in a Schedule of Locations form attached to this Coverage Part.

3. "Extra expense" means expenses you incur:

a. To avoid or minimize the suspension of business and to continue "operations":

(1) At "covered premises"; or

(2) At replacement premises or at temporary locations, including:

(a) Relocation expenses; and

(b) Costs to equip and operate the replacement or temporary locations.

b. To minimize the suspension of business if you cannot continue "operations."

c. To repair or replace any property. These expenses are covered only to the extent they reduce other extra expenses.

4. "Finished stock" means stock you have manufactured or produced (including whiskey and other products being aged) which is ready for sale. It does not include stock you have manufactured or produced which is held for sale on the premises of any retail outlet insured under this Coverage Part.

5. "Fine arts" means antiques, rare articles, and other works of art of every nature and description, including etchings, drawings, pictures, sculptures, statuary, marbles, bronzes, porcelains, and bric-a-brac.

6. "Money" means currency, coins, and bank notes in current use and having a face value and travelers checks, register checks, and money orders held for sale to the public.

7. "Messenger" means you or any of your employees, partners, directors, officers, or trustees while having custody of the property outside the "premises."

8. "Operations" means:

a. Your business activities occurring at "covered premises", and

b. The tenantability of the "insured locations."

9. "Period of restoration":

a. Means the period that begins on the date loss or damage occurs and ends:

(1) When the damaged property should, with reasonable speed, be repaired, rebuilt, or replaced; or

(2) The number of months shown in the Declarations for Period of Restoration;

whichever is earlier.

b. Does not include any increased period attributed to:

(1) The enforcement of any law, ordinance, order, rule, or ruling that:

(a) Prohibits, regulates, or restricts the alteration, construction installation, operation, use, or repair of any property.

(b) Requires the tearing down or demolition of any property.

(c) Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize, or in any way respond to or assess the effects of, "pollutants."

SP00023

(2) Delays in:

    (a) Rebuilding, repairing, or replacing property; or

    (b) The resumption or continuation of "operations";

resulting from interference by strikers or other persons.

(3) The suspension, lapse, cancellation, repeal, or refusal of, or any delay in the granting of, any license, lease, permit, contract, or order.

The expiration date of this policy will not cut short the "period of restoration."

10. "Personal property of others" means personal property that you do not own. It does not include:

  **a.** Personal property that belongs to you or your employees, officers, or partners; or

  **b.** Business personal property leased from others.

11. "Pollutants" means any solid, liquid, gaseous, or thermal irritant or contaminant, including smoke, soot, vapor, fumes, acids, alkalis, chemicals, and waste. Waste includes materials to be recycled, reconditioned, or reclaimed.

12. "Premises" means the interior portion of any building you occupy in conducting your business.

13. "Securities" means negotiable and non-negotiable instruments or contracts representing either "money" or other property and includes:

  **a.** Tokens, tickets, revenue and other stamps (whether represented by actual stamps or unused value in a meter) in current use; and

  **b.** Evidences of debt issued in connection with credit cards, which cards are not issued by you;

but does not include "money."

14. "Stock" means merchandise held in storage or for sale, raw materials, and in-process or finished goods, including supplies used in their packing or shipping.

15. "Theft" means any act of stealing except as otherwise excluded.

CL/SP 00 01 12 92    includes copyrighted material of Insurance Services Office, Inc. with its permission.

Page 12 of 12 ☐

135   12

SP00024

# CAUSES OF LOSS
# COMPREHENSIVE FORM

Words and phrases that appear in quotation marks have special meaning. Refer to section F.- Definitions.

## A. COVERED CAUSES OF LOSS

Covered Causes of Loss, as used in this Coverage Part, means RISKS OF DIRECT PHYSICAL LOSS unless the loss or damage is excluded or limited by other provisions in this Coverage Part.

## B. EXCLUSIONS

1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

   ### a. Ordinance or Law

   The enforcement of any ordinance or law:

   (1) That regulates or restricts the construction, installation, replacement, occupancy, operation, or use of any property.

   (2) That requires the demolition or tearing down of any property, including the cost of removing its debris.

   ### b. Earth Movement

   (1) Any "earth movement" that begins before or is in progress when this insurance becomes effective. This exclusion applies even if the loss or damage occurs after this insurance becomes effective.

   (2) Any "earth movement" that begins after this insurance becomes effective. But fire, explosion, or "sprinkler leakage" resulting from "earth movement" is covered. This exclusion does not apply if the Earth Movement Optional Coverage is selected in the Declarations.

   ### c. Flood

   (1) Any "flood" that begins before or is in progress when this insurance becomes effective. This exclusion applies even if the loss or damage occurs after this insurance becomes effective.

   (2) Any "flood" that begins after this insurance becomes effective. But fire or explosion resulting from "flood" is covered. This exclusion does not apply if the Flood-Optional Coverage is selected in the Declarations.

   ### d. Governmental Action

   Seizure or destruction of property by order of governmental authority.

   But we will pay for loss or damage resulting from acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread, if the fire would be covered under this Coverage Part.

   ### e. Nuclear Hazard

   Nuclear reaction or nuclear radiation or radioactive contamination, however caused.

   But if loss or damage by fire results, we will pay for that resulting loss or damage.

   ### f. Off-Premises Services

   The failure of power or other utility service supplied to "covered premises," however caused, if the failure occurs away from "covered premises."

   But if loss or damage by a Covered Cause of Loss results, we will pay for that resulting loss or damage.

   ### g. War and Military Action

   (1) War, including undeclared or civil war;

   (2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign power, or other authority using military personnel or other agents; or

   (3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.
Copyright, ISO Commercial Risk Services, Inc., 1990

CL/SP 10 30 12 92                                                                    Page 1 of 5 ☐

SP00025

by or resulting from:

a.   Artificially generated electric current, including electric arcing, that damages or disturbs electrical devices, appliances, or wires.

But if loss or damage by fire results, we will pay for that resulting loss or damage.

b.   Delay, loss of use, or loss of market.

c.   Smoke, vapor, or gas from agricultural smudging or industrial operations.

d.   Explosion of steam boilers, steam pipes, steam engines, or steam turbines owned or leased by you, or operated under your control. But if loss or damage by fire or combustion explosion results, we will pay for that resulting loss or damage. We will also pay for loss or damage cause by or resulting from the explosion of gases of fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

e.   Dishonest or criminal act by you, by any of your partners, employees, directors, trustees, or authorized representatives, or by anyone to whom you entrust the property for any purpose:

(1)   Acting alone or in collusion with others; or

(2)   Whether or not occurring during the hours of employment.

This exclusion does not apply to acts of destruction by your employees; but theft by employees is not covered.

f.   Voluntary parting with any property by you or anyone else to whom you have entrusted the property if induced to do so by any pretense or fraudulent scheme, trick, or device.

g.   Rain, snow, ice, or sleet to personal property in the open.

h.   Collapse, except as provided below in the Additional Coverage for Collapse. But if loss or damage by a Covered Cause of Loss results, we will pay for that resulting loss or damage.

i.   "Mine Subsidence."

j.   Discharge, dispersal, seepage, migration, release or escape of "pollutants" unless the discharge, dispersal, seepage, migration, release or escape is itself caused by any of the "specified causes of loss." But if loss or damage by the "specified causes of loss" results, we will pay for the resulting damage caused by the "specified causes of loss."

3.   We will not pay for loss or damage caused by or resulting from any of the following. But if loss or damage by the "specified causes of loss" or building glass breakage results, we will pay for that resulting loss of damage.

a.   Wear and tear;

b.   Rust, corrosion, mold, fungus, disease, decay, wet or dry rot, deterioration, hidden or latent defect, or any quality in property that causes it to damage or destroy itself;

c.   Smog;

d.   Settling, cracking, shrinking, or expansion;

e.   Insects, moths, birds, rodents, vermin, or other animals;

f.   Mechanical breakdown, including rupture or bursting caused by centrifugal force. However, this does not apply to any resulting loss or damage caused by elevator collision.

g.   The following causes of loss to personal property:

(1)   Dampness or dryness of atmosphere;

(2)   Changes in or extremes of temperature; or

(3)   Marring or scratching.

4.   We will not pay for loss or damage caused by or resulting from any of the following. But if loss or damage by a covered Cause of Loss results, we will pay for that resulting loss or damage.

a.   Weather conditions. But this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in paragraph 1. above to produce the loss or damage.

b.   Acts or decisions, including the failure to act or decide, of any person, group, organization, or governmental body.

c.   Faulty, inadequate, or defective:

(1)   Planning, zoning, development, surveying, or siting;

Includes copyrighted material of Insurance Services Office, Inc. with its permission.
Copyright, ISO Commercial Risk Services, Inc., 1990

SP00026

(2) Design, specifications, workman-ship, repair, construction, reno-vation, remodeling, grading, or compaction;

(3) Materials used in repair, con-struction, renovation, or remodeling; or

(4) Maintenance;

of part or all of any property on or off the "covered premises."

5. **Special Exclusions**

a. The following provisions shall also apply only with respect to loss or damage to valuable papers and records.

We will not pay for loss or damage caused by or resulting from:

(1) Electrical or magnetic injury, dis-turbance, or erasure of electronic recordings. But we will pay for di-rect loss caused by lightning.

(2) Errors in machine programming or instructions to machines.

(3) Errors or omissions in processing or copying. But we will pay for direct loss or damage caused by resulting fire or explosion.

(4) Operator or programmer error.

(5) Unauthorized instructions to trans-fer property to any person or to any place.

b. The following provisions shall also apply only with respect to loss of or damage to animals.

We will not pay for loss or damage caused by or resulting from:

(1) Blizzards, snowstorms, freezing, or smothering. This exclusion does not apply to animals inside buildings when any of these occur.

(2) Colds, disease, illness, infection, parturition, or other natural causes.

c. The following provisions shall also apply only with respect to "extra expense," the Business Income Coverage Form, or the Extra Expense Coverage Form.

We will not pay for:

(1) Any loss caused by or resulting from:

(a) Damage or destruction of "fin-ished stock"; or

(b) The time required to reproduce "finished stock."

This exclusion does not apply to "extra expense" (or Extra Expense).

(2) Any loss caused by or resulting from direct physical loss or damage to radio or television antennas, in-cluding their lead-in wiring, masts or towers.

(3) Any increase of loss caused by or resulting from:

(a) Delay in rebuilding, repairing, or replacing the property or re-suming "operations," due to in-terference at the location of the rebuilding, repair, or replace-ment by strikers or other per-sons; or

(b) Suspension, lapse, or cancella-tion of any license, lease, or contract. But if the suspension, lapse, or cancellation is directly caused by the suspension of "operations," we will cover such loss that affects your Business Income during the "period of restoration."

(4) Any "extra expense" (or Extra Ex-pense) caused by or resulting from suspension, lapse, or cancellation of any license, lease, or contract beyond the "period of restoration."

(5) Any other consequential loss.

d. The following provisions shall also apply only with respect to the Leasehold Inter-est Coverage Form.

(1) Paragraph B.1.a., Ordinance or Law, does not apply to insurance under this Coverage Form.

(2) We will not pay for any loss caused by:

(a) Your cancelling the lease;

(b) The suspension, lapse, or can-cellation of any license; or

(c) Any other consequential loss.

e. The following provisions shall also apply but only with respect to the Legal Liabil-ity Coverage Form.

(1) The following exclusions in the Causes of Loss Comprehensive Form do not apply.

CL/SP 10 30 12 92    Includes copyrighted material of Insurance Services Office, Inc. with its permission.
Copyright, ISO Commercial Risk Services, Inc., 1990

SP00027

(b) Paragraph B.1.d., Governmental Action;

(c) Paragraph B.1.e., Nuclear Hazard;

(d) Paragraph B.1.f., Off-Premises Services; and

(e) Paragraph B.1.g., War and Military Action.

(2) We will not defend any claim or "suit," or pay damages that you are legally liable to pay, solely by reason of your assumption of liability in a contract or agreement.

(3) We will not defend any claim or "suit," or pay any damages, loss, expense, or obligation, resulting from nuclear reaction or nuclear radiation or radioactive contamination, however caused.

## C. LIMITATIONS

1. We will not pay for loss of or damage to:

   a. Steam boilers, steam pipes, steam engines, or steam turbines caused by or resulting from any condition or event inside such equipment. But we will pay for loss of or damage to such equipment caused by or resulting from an explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

   b. Hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment, other than an explosion.

   c. The interior of any building or structure, or to personal property in the building or structure, caused by or resulting from rain, snow, sleet, ice, sand, or dust, whether driven by wind or not, unless:

      (1) The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand, or dust enters; or

      (2) The loss or damage is caused by or results from thawing of snow, sleet, or ice on the building or structure.

   d. Property that is missing, where the only evidence of the loss or damage is a shortage disclosed on taking inventory, or other instances where there is no

   e. Property that has been transferred to a person or to a place outside "covered premises" on the basis of unauthorized instructions.

2. We will not pay for loss of or damage to the following types of property unless caused by the "specified causes of loss" or building glass breakage:

   a. Fragile articles such as glassware, statuary, marbles, chinaware and porcelains, if broken. This restriction does not apply to:

      (1) Glass that is part of a building or structure;

      (2) Containers of property held for sale; or

      (3) Photographic or scientific instrument lenses.

   b. Builders' machinery, tools, and equipment you own or that are entrusted to you, while away from "covered premises."

3. We will not pay any cost to excavate, grade, backfill, or fill any land.

## D. ADDITIONAL COVERAGE - COLLAPSE

We will pay for loss or damage caused by or resulting from risks of direct physical loss involving collapse of a building or any part of a building caused only by one or more of the following:

1. The "specified causes of loss" or breakage of building glass, all only as insured against in this Coverage Part;

2. Hidden decay;

3. Hidden insect or vermin damage;

4. Weight of people or personal property;

5. Weight of rain that collects on a roof;

6. Use of defective material or methods in construction, remodeling, or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

We will not pay for loss or damage to the following types of property, if otherwise covered in this Coverage Part, under items 2., 3., 4., 5., and 6. unless the loss or damage is a direct result of the collapse of a building:

outdoor radio or television antennas, including their lead-in wiring, masts or towers; awnings, gutters, and downspouts; yard fixtures, outdoor swimming pools; fences; piers,

Includes copyrighted material of Insurance Services Office, Inc. with its permission.
Copyright, ISO Commercial Risk Services, Inc., 1990

CL/SP 10 30 12 92

Page 4 of 5 □

97

SP00028

wharves and docks; beach or diving platforms or appurtenances; retaining walls; walks, roadways, and other paved surfaces.

Collapse does not include settling, cracking, shrinkage, bulging, or expansion.

This Additional Coverage will not increase the Limits of Insurance provided in this Coverage Part.

E. **DEFINITIONS**

Wherever used in this Coverage Part:

1. "Earth movement" means earthquakes, landslides, or any other kind or type of earth movement. But "earth movement" does not mean mud-slide, mud-flow, "sinkhole collapse," or collapse of manmade, underground mines.

    All "earth movements" that occur within any 168-hour period will constitute a single occurrence by "earth movement." The expiration of this policy will not reduce the 168-hour period.

2. "Flood" means:

    a. Floods, flash floods, surface water, waves, tides, tidal waves or water, the rising or overflowing of any body of water, or their spray or runoff, all whether or not driven by wind.

    b. Mud-slide or mud-flow caused or precipitated by accumulation of water in, on, or under the ground.

    "Flood" includes the unusual and rapid accumulation or runoff of surface waters from any source.

3. "Mine subsidence" means lateral or vertical movement, including collapse, resulting from collapse of manmade, underground mines.

4. "Sinkhole collapse" means the sudden sinking or collapse of land into underground empty spaces created by the action of water on limestone or dolomite. This cause of loss does not include:

    a. The cost of filling sinkholes; or

    b. Sinking or collapse of land into manmade underground cavities.

5. "Specified cause of loss" means the following: fire; lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; "sinkhole collapse"; volcanic action; falling objects; weight of snow, ice or sleet; water damage.

    a. Falling objects does not include loss or damage to:

        (1) Personal property in the open; or

        (2) The interior of a building or structure, or property inside a building or structure, unless the roof or an outside wall of the building or structure is first damaged by a falling object.

    b. Water damage means accidental discharge or leakage of water or steam as the direct result of the breaking or cracking of any part of a system or appliance containing water or steam.

    To the extent that the Earth Movement - Optional Coverage applies or the Flood - Optional Coverage applies, "specified causes of loss" shall include "flood" or "earth movement."

CL/SP 10 30 12 92   Includes copyrighted material of Insurance Services Office, Inc. with its permission. Copyright, ISO Commercial Risk Services, Inc., 1990

Page 5 of 5 □

SP00029

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# LOSS PAYABLE PROVISIONS

### SCHEDULE

**Provisions Applicable**

| Loss Payable | Lender's Loss Payable | Contract Of Sale |
|---|---|---|
| | X | |

| Prem. No. | | Description of Property | | Loss Payee (Name & Address) |
|---|---|---|---|---|
| 1 | | YBPP | | YAMAZEN, INC. OR ITS ASSIGNEE 735 EAST REMINGTON RD. SCHAUMBURG, ILL 60173 |

The following is added to the LOSS PAYMENT Provision, as indicated by an "X" in the Schedule:

**A. LOSS PAYABLE**

For Covered Property in which both you and a Loss Payee shown in the Schedule or in the Declarations have an insurable interest, we will:

1. Adjust losses with you; and

2. Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**B. LENDER'S LOSS PAYABLE**

1. The Loss Payee shown in the Schedule or in the Declarations is a creditor, including a mortgage-holder or trustee, whose interest in Covered Property is established by such written instruments as:

   a. Warehouse receipts;

   b. A contract for deed;

   c. Bills of lading;

   d. Financing statements; or

   e. Mortgages, deeds of trust, or security agreements.

2. For Covered Property in which both you and a Loss Payee have an insurable interest:

   a. We will pay for covered loss or damage to each Loss Payee in their order of precedence, as interest may appear.

   b. The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure or similar action on the Covered Property.

   c. If we deny you claim because of your acts or because you have failed to comply with the terms of the Coverage Part, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

      (1) Pays any premium due under this Coverage Part at our request if you have failed to do so;

      (2) Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

      (3) Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

      All of the terms of this Coverage Part will then apply directly to the Loss Payee.

   d. If we pay the Loss Payee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Part:

      (1) The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

SP00030

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

CU/SP 12 18 12 92

(2) The Loss Payee's rights to recover the full amount of the Loss Payee's claim will not be impaired.

At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

3. If we cancel this policy, we will give written notice to the Loss Payee at least:

   a. 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

4. If we elect not to renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**C. CONTRACT OF SALE**

1. The Loss Payee shown in the Schedule or in the Declarations is a person or organization you have entered a contract with for the sale of Covered Property.

2. For Covered Property in which both you and the Loss Payee have an insurable interest we will:

   a. Adjust losses with you; and

   b. Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

3. The following is added to the OTHER INSURANCE provision of the Commercial Property Conditions form for Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

SP00031

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# LOSS PAYABLE PROVISIONS

### SCHEDULE

**Provisions Applicable**

| Loss Payable | Lender's Loss Payable | Contract Of Sale |
|---|---|---|
| X | | |

| Prem. No. | Description of Property | Loss Payee (Name & Address) |
|---|---|---|
| 1 | YBPP | PNC BANK, OHIO, NA<br>201 EAST FIFTH ST.<br>CINCINNATI, OH  45202 |

The following is added to the LOSS PAYMENT Provision, as indicated by an "X" in the Schedule:

## A.  LOSS PAYABLE

For Covered Property in which both you and a Loss Payee shown in the Schedule or in the Declarations have an insurable interest, we will:

1.  Adjust losses with you; and

2.  Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

## B.  LENDER'S LOSS PAYABLE

1.  The Loss Payee shown in the Schedule or in the Declarations is a creditor, including a mortgage-holder or trustee, whose interest in Covered Property is established by such written instruments as:

    a.  Warehouse receipts;

    b.  A contract for deed;

    c.  Bills of lading;

    d.  Financing statements; or

    e.  Mortgages, deeds of trust, or security agreements.

2.  For Covered Property in which both you and a Loss Payee have an insurable interest:

    a.  We will pay for covered loss or damage to each Loss Payee in their order of precedence, as interest may appear.

b.  The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure or similar action on the Covered Property.

c.  If we deny you claim because of your acts or because you have failed to comply with the terms of the Coverage Part, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

    (1)  Pays any premium due under this Coverage Part at our request if you have failed to do so;

    (2)  Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

    (3)  Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

    All of the terms of this Coverage Part will then apply directly to the Loss Payee.

d.  If we pay the Loss Payee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Part:

    (1)  The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

SP00032

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

(2) The Loss Payee's rights under the full amount of the Loss Payee's claim will not be impaired.

At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

If we cancel this policy, we will give written notice to the Loss Payee at least:

a. 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

b. 30 days before the effective date of cancellation if we cancel for any other reason.

If we elect not to renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

### CONTRACT OF SALE

1. The Loss Payee shown in the Schedule or in the Declarations is a person or organization you have entered a contract with for the sale of Covered Property.

2. For Covered Property in which both you and the Loss Payee have an insurable interest we will:

   a. Adjust losses with you; and

   b. Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear:

3. The following is added to the OTHER INSURANCE provision of the Commercial Property Conditions form for Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

SP00033

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

12 18 12 92

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# LOSS PAYABLE PROVISIONS

### SCHEDULE

**Provisions Applicable**

| Loss Payable | Lender's Loss Payable | Contract Of Sale |
|---|---|---|
| X | | |

| Prem. No. | Description of Property | Loss Payee (Name & Address) |
|---|---|---|
| 2 | YBPP | CHARLEVOIX STATE BANK<br>111 STATE STREET<br>CHARLEVOIX, MI 49720 |

The following is added to the LOSS PAYMENT Provision, as indicated by an "X" in the Schedule:

**A. LOSS PAYABLE**

For Covered Property in which both you and a Loss Payee shown in the Schedule or in the Declarations have an insurable interest, we will:

1. Adjust losses with you; and

2. Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**B. LENDER'S LOSS PAYABLE**

1. The Loss Payee shown in the Schedule or in the Declarations is a creditor, including a mortgage-holder or trustee, whose interest in Covered Property is established by such written instruments as:

   a. Warehouse receipts;

   b. A contract for deed;

   c. Bills of lading;

   d. Financing statements; or

   e. Mortgages, deeds of trust, or security agreements.

2. For Covered Property in which both you and a Loss Payee have an insurable interest:

   a. We will pay for covered loss or damage to each Loss Payee in their order of precedence, as interest may appear.

b. The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure or similar action on the Covered Property.

c. If we deny you claim because of your acts or because you have failed to comply with the terms of the Coverage Part, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

   (1) Pays any premium due under this Coverage Part at our request if you have failed to do so;

   (2) Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

   (3) Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

   All of the terms of this Coverage Part will then apply directly to the Loss Payee.

d. If we pay the Loss Payee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Part:

   (1) The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

SP00034

the full amount of the Loss Payee's claim will not be impaired.

At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

3. If we cancel this policy, we will give written notice to the Loss Payee at least:

   a. 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

4. If we elect not to renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

1. The Loss Payee shown in the Schedule or in the Declarations is a person or organization you have entered a contract with for the sale of Covered Property.

2. For Covered Property in which both you and the Loss Payee have an insurable interest we will:

   a. Adjust losses with you; and

   b. Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

3. The following is added to the OTHER INSURANCE provision of the Commercial Property Conditions form for Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

SP00035

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

HIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.
"REVISED"

# LOSS PAYABLE PROVISIONS

## SCHEDULE

Provisions Applicable

| Loss Payable | Lender's Loss Payable | Contract Of Sale |
|---|---|---|
| | X | |

| Prem. No. | Description of Property | Loss Payee (Name & Address) |
|---|---|---|
| | YBPP | PNC BANK, OHIO, NA 201 EAST FIFTH STREET CINCINNATI, OHIO 45202 |

The following is added to the LOSS PAYMENT Provision, as indicated by an "X" in the Schedule:

A. LOSS PAYABLE

For Covered Property in which both you and a Loss Payee shown in the Schedule or in the Declarations have an insurable interest, we will:

1. Adjust losses with you; and

2. Pay any claim for loss or damage jointly to **you** and the Loss Payee, as interests may appear.

B. LENDER'S LOSS PAYABLE

1. The Loss Payee shown in the Schedule or in the Declarations is a creditor, including a mortgage-holder or trustee, whose interest in Covered Property is established by such written instruments as:

   a. Warehouse receipts;

   b. A contract for deed;

   c. Bills of lading;

   d. Financing statements; or

   e. Mortgages, deeds of trust, or security agreements.

2. For Covered Property in which both you and a Loss Payee have an insurable interest:

   a. We will pay for covered loss or damage to each Loss Payee in their order of precedence, as interest may appear.

b. The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure or similar action on the Covered Property.

c. If we deny you claim because of your acts or because you have failed to comply with the terms of the Coverage Part, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

   (1) Pays any premium due under this Coverage Part at our request if you have failed to do so;

   (2) Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

   (3) Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

   All of the terms of this Coverage Part will then apply directly to the Loss Payee.

d. If we pay the Loss Payee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Part:

   (1) The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

SP00036

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

(2) The Loss Payee's right to recover the amount of the claim will not be impaired.

At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

3. If we cancel this policy, we will give written notice to the Loss Payee at least:

a. 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

b. 30 days before the effective date of cancellation if we cancel for any other reason.

4. If we elect not to renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

## C. CONTRACT OF SALE

1. The Loss Payee shown in the Schedule or in the Declarations is a person or organization you have entered a contract with for the sale of Covered Property.

2. For Covered Property in which both you and the Loss Payee have an insurable interest we will:

a. Adjust losses with you; and

b. Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear;

3. The following is added to the OTHER INSURANCE provision of the Commercial Property Conditions form for Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

12 18 12 92

# COMMERCIAL GENERAL LIABILITY COVERAGE PART - DECLARATIONS

**USF&G®**
**INSURANCE**

Policy No. 1MP 300991152 03

## LIMITS OF INSURANCE:

| | | |
|---|---|---|
| $ | 1,000,000 | General Aggregate Limit (Other than Products-Completed Operations) |
| $ | NOT COVERED | Products-Completed Operations Aggregate Limit |
| $ | 500,000 | Personal and Advertising Injury Limit |
| $ | 500,000 | Each Occurrence Limit |
| $ | 50,000 | Fire Damage Limit (Any One Fire) |
| $ | 5,000 | Medical Expense Limit (Any One Person) |

## FORM OF BUSINESS:

[ ] Individual    [ ] Partnership    [ ] Joint Venture    [X] Corporation

[ ] Other

## LOCATION OF ALL PREMISES YOU OWN, RENT OR OCCUPY:

[ ] Same as shown in Item 1 of the Common Policy Declarations.

[X] See below.

## PREMIUM SCHEDULE:    [ ] See Supplemental Schedule.

| Classifications | Code No. | Premium Bases[1] | Rates Prem./Ops.[2] | Rates Prod./Comp.Ops.[3] | Advance Premiums Prem./Ops.[2] | Advance Premiums Prod./Comp.Ops.[3] |
|---|---|---|---|---|---|---|
| 240 STILLE DRIVE CINCINNATI, OH 45233 | | | | | | |
| METAL GOODS MANUFACTURING-NOC | 56911 | S/4,750,000 | .626 | | 2,974.00 | EXCLUDED |
| 400 MARTIN ROAD CHARLEVOIX, MI 49720 | | | | | | |
| METAL GOODS MANUFACTURING-NOC | 56911 | S/5,400,000 | .698 | | 3,769.00 | EXCLUDED |
| CARPENTER ROAD CHARLEVOIX, MI 49720 | | | | | | |
| VACANT LAND-OTHER THAN NOT-FOR-PROFIT | 49451 | T/6 | 3.137 | | 19.00 | |
| INCLUDING PRODUCTS AND/OR COMPLETED OPERATIONS | | | | | | |
| PREMIUM BASE IS EACH ACRE | | | | | | |

TOTAL ADVANCE PREMIUM FOR THIS COVERAGE PART:                    $ 6,762.00 $

## AUDIT PERIOD:    [X] Annually    [ ] Semi-Annually    [ ] Quarterly    [ ] Monthly

## FORMS AND ENDORSEMENTS APPLICABLE TO THIS COVERAGE PART:
SEE ATTACHED CL/OO 99 01 01 87 (G#1) ✓

## RETROACTIVE DATE:

_____ (Coverages A. and B. provide claims-made coverage when form CG 00 02 applies.

Coverage does not apply to "bodily injury" or "property damage" that occurred, or to a "personal injury" or "advertising injury" offenses committed, before this date.)

CL/IL 151 07 9
01/02/97

(1) See Description of Terms Used as Premium Bases.
(2) Prem./Ops. = Premises/Operations
(3) Prod./Comp. Ops. = Products/Completed Operations

BRANCH OFFICE COPY

16387   5   01/02/97

SP00038

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**This endorsement modifies insurance provided under the following:**

COMMERCIAL GENERAL LIABILITY COVERAGE PART.

It is agreed that the following forms and endorsement are applicable to this coverage part:

CG 25 04 11 85
CG 21 04 11 85
CL/IL 151 07 90
CL/CG 21 02 07 89
CL/CG 01 68 12 91
CG 21 39 10 93
CG 00 01 01 96
CG 20 28 11 85

CL/OO 99 01 01 87 (G#1)

PAGE 1 OF 1

SP00039

16 387    9

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AMENDMENT—AGGREGATE LIMITS OF INSURANCE (PER LOCATION)

This endorsement modifies insurance provided under the following:

    COMMERCIAL GENERAL LIABILITY COVERAGE PART.

The General Aggregate Limit under LIMITS OF INSURANCE (Section III) applies separately to each of your "locations" owned by or rented to you.

"Location" means premises involving the same or connecting lots, or premises whose connection is interrupted only by a street, roadway, waterway or right-of-way of a railroad.

Copyright, Insurance Services Office, Inc., 1984

SP00040

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION — PRODUCTS — COMPLETED OPERATIONS HAZARD

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART.

This insurance does not apply to "bodily injury" or "property damage" included within the "products — completed operations hazard."

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION — ASBESTOS

This endorsement modifies insurance provided under the following:

> COMMERCIAL GENERAL LIABILITY COVERAGE PART
> OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
> POLLUTION LIABILITY COVERAGE PART
> PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
> RAILROAD PROTECTIVE LIABILITY COVERAGE PART.

This insurance does not apply to:

1. "Bodily injury," "personal injury" or "property damage" arising out of the actual, alleged or threatened exposure to asbestos; or

2. Any loss, cost or expense arising out of any:

   a. Request, demand or order that any insured or others test for, monitor, clean up, remove or contain, or in any way respond to, or assess the effects of asbestos; or

   b. Claim or "suit" by or on behalf of any person, organization or governmental authority for damages because of testing for, monitoring, cleaning up or removing, containing, or in any way responding to, or assessing the effects of asbestos.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.
Copyright, Insurance Services Office, Inc., 1984

CL/CG 21 02 07 89

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED - LESSOR OF LEASED EQUIPMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART.

## SCHEDULE

**Name of Person or Organization:**

YAMAZEN, INC., OR ITS ASSIGNEE
735 EAST REMINGTON RD.
SCHAUMBURG, ILL  60173

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

WHO IS AN INSURED (Section II) is amended to include as an insured the person(s) or organization(s) shown in the Schedule, but only with respect to their liability arising out of the maintenance, operation or use by you of equipment leased to you by such person(s) or organization(s), subject to the following additional exclusions:

This insurance does not apply:

1.  To any "occurrence" which takes place after the equipment lease expires;

2.  To "bodily injury" or "property damage" arising out of the sole negligence of the person or organization shown in the Schedule.

SP00043

16 387    7

POLICY NUMBER:                                                      COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CONTRACTUAL LIABILITY LIMITATION

This endorsement modifies insurance provided under the following:

    COMMERCIAL GENERAL LIABILITY COVERAGE PART
    PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART.

The definition of "insured contract" in the DEFINITIONS Section is replaced by the following:

"Insured contract" means:

a.  A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

b.  A sidetrack agreement;

c.  Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

d.  An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

e.  An elevator maintenance agreement.

CG 21 39 10 93          Copyright, Insurance Services Office, Inc., 1992

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we," "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under WHO IS AN INSURED (SECTION II).

Other words and phrases that appear in quotation marks have special meaning. Refer to DEFINITIONS (SECTION V).

## SECTION I - COVERAGES

### COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. **Insuring Agreement**

    a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

        (1) The amount we will pay for damages is limited as described in LIMITS OF INSURANCE (SECTION III); and

        (2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

        No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS - COVERAGES A AND B.

    b.  This insurance applies to "bodily injury" and "property damage" only if:

        (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

        (2) The "bodily injury" or "property damage" occurs during the policy period.

    c.  Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury."

2. **Exclusions.**

    This insurance does not apply to:

    a.  **Expected or Intended Injury**

        "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

    b.  **Contractual Liability**

        "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

        (1) that the insured would have in the absence of the contract or agreement; or

        (2) assumed in a contract or agreement that is an "insured contract," provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract," reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage," provided:

            (a) liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

            (b) such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

SP00045

c. **Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

d. **Workers Compensation and Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

e. **Employer's Liability**

"Bodily injury" to:

(1) An "employee" of the insured arising out of and in the course of:

(a) Employment by the insured; or

(b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of paragraph (1) above.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract."

f. **Pollution**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:

(a) At or from any premises, site or location which is or was at any time

owned or occupied by, or rented or loaned to, any insured;

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations:

(i) If the pollutants are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor; or

(ii) If the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants.

Subparagraph (d)(i) does not apply to "bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the fuels, lubricants or other operating fluids are intentionally discharged, dispersed or released, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent to be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor.

Subparagraphs (a) and (d)(i) do not apply to "bodily injury" or "property damage" arising out of heat, smoke or fumes from a hostile fire.

As used in this exclusion, a hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be.

    Copyright, Insurance Services Office, Inc., 1994

SP00046

(2) Any loss, cost or expense arising out of any:

    (a) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

    (b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**g. Aircraft, Auto or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading."

This exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:

    (a) Less than 26 feet long; and

    (b) Not being used to carry persons or property for a charge;

(3) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

(4) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

(5) "Bodily injury" or "property damage" arising out of the operation of any of the equipment listed in paragraph f.(2) or f.(3) of the definition of "mobile equipment."

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

(1) The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

(2) The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

**j. Damage to Property**

"Property damage" to:

(1) Property you own, rent, or occupy;

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you;

(4) Personal property in the care, custody or control of the insured;

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard."

**k. Damage to Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage to Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

SP00047

**m.  Damage to Impaired Property or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n.  Recall of Products, Work or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your product";

(2) "Your work"; or

(3) "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

Exclusions c. through n. do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in LIMITS OF INSURANCE (Section III)

**COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY**

**1.  Insuring Agreement.**

a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal injury" or "advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal injury" or "advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" or offense and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in LIMITS OF INSURANCE (SECTION III); and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS — COVERAGES A AND B.

b.  This insurance applies to:

(1) "Personal injury" caused by an offense arising out of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you;

(2) "Advertising injury" caused by an offense committed in the course of advertising your goods, products or services;

but only if the offense was committed in the "coverage territory" during the policy period.

**2.  Exclusions.**

This insurance does not apply to:

a.  "Personal injury" or "advertising injury":

(1) Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

(2) Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

(3) Arising out of the willful violation of a penal statute or ordinance committed by or with the consent of the insured;

(4) For which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement; or

(5) Arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time.

b.  "Advertising injury" arising out of:

(1) Breach of contract, other than misappropriation of advertising ideas under an implied contract;

SP00048

(2) The failure of goods, products or services to conform with advertised quality or performance;

(3) The wrong description of the price of goods, products or services; or

(4) An offense committed by an insured whose business is advertising, broadcasting, publishing or telecasting.

c. Any loss, cost or expenses arising out of any:

(1) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

(2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

## COVERAGE C. MEDICAL PAYMENTS

1. **Insuring Agreement.**

a. We will pay medical expenses as described below for "bodily injury" caused by an accident:

(1) On premises you own or rent;

(2) On ways next to premises you own or rent; or

(3) Because of your operations;

provided that:

(1) The accident takes place in the "coverage territory" and during the policy period;

(2) The expenses are incurred and reported to us within one year of the date of the accident; and

(3) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

b. We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

(1) First aid administered at the time of an accident;

(2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

(3) Necessary ambulance, hospital, professional nursing and funeral services.

2. **Exclusions.**

We will not pay expenses for "bodily injury":

a. To any insured.

b. To a person hired to do work for or on behalf of any insured or a tenant of any insured.

c. To a person injured on that part of premises you own or rent that the person normally occupies.

d. To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers compensation or disability benefits law or a similar law.

e. To a person injured while taking part in athletics.

f. Included within the "products-completed operations hazard."

g. Excluded under Coverage A.

h. Due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

## SUPPLEMENTARY PAYMENTS - COVERAGES A AND B

We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

1. All expenses we incur.

2. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

3. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

4. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit," including actual loss of earnings up to $250 a day because of time off from work.

5. All costs taxed against the insured in the "suit."

SP00049

sured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

7. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit," we will defend that indemnitee if all of the following conditions are met:

    a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

    b. This insurance applies to such liability assumed by the insured;

    c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

    d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interest of the indemnitee;

    e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

    f. The indemnitee:

        (1) agrees in writing to:

            (a) cooperate with us in the investigation, settlement or defense of the "suit";

            (b) immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

            (c) notify any other insurer whose coverage is available to the indemnitee; and

            (d) cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

        (2) provides us with written authorization to:

(a) obtain records and other information related to the "suit"; and

    (b) conduct and control the defense of the indemnitee in such "suit."

So long as the above conditions are met, attorneys fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of paragraph 2.b.(2) of COVERAGE A — BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section I — Coverages), such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an "insured's" indemnitee and to pay for attorneys fees and necessary litigation expenses as Supplementary Payments ends when:

    a. We have used up the applicable limit of insurance in the payment of judgments or settlements; or

    b. The conditions set forth above, or the terms of the agreement described in paragraph f. above, are no longer met.

## SECTION II - WHO IS AN INSURED

1. If you are designated in the Declarations as:

    a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

    b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

    c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

    d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

2. Each of the following is also an insured:

    a. Your "employees," other than either your "executive officers" (if you are an organization other than a partnership, joint venture

SP00050

or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" is an insured for:

(1) "Bodily injury" or "personal injury":

    (a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), or to a co-"employee" while that co-"employee" is either in the course of his or her employment or performing duties related to the conduct of your business;

    (b) To the spouse, child, parent, brother or sister of that co-"employee" as a consequence of paragraph (1)(a) above;

    (c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in paragraphs (1)(a) or (b) above; or

    (d) Arising out of his or her providing or failing to provide professional health care services.

(2) "Property damage" to property:

    (a) Owned, occupied or used by,

    (b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

you, any of your "employees," any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

**b.** Any person (other than your employee), or any organization while acting as your real estate manager.

**c.** Any person or organization having proper temporary custody of your property if you die, but only:

(1) With respect to liability arising out of the maintenance or use of that property; and

(2) Until your legal representative has been appointed.

**d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**3.** With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

    **a.** "Bodily injury" to a co-"employee" of the person driving the equipment; or

    **b.** "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

**4.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

    **a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

    **b.** Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

    **c.** Coverage B does not apply to "personal injury" or "advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III - LIMITS OF INSURANCE

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

    **a.** Insureds;

    **b.** Claims made or "suits" brought; or

    **c.** Persons or organizations making claims or bringing "suits."

**2.** The General Aggregate Limit is the most we will pay for the sum of:

    **a.** Medical expenses under Coverage C;

    **b.** Damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

SP00051

c. Damages under Coverage B.

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard."

4. Subject to 2. above, the Personal and Advertising Injury Limit is the most we will pay under Coverage B for the sum of all damages because of all "personal injury" and all "advertising injury" sustained by any one person or organization.

5. Subject to 2. or 3. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

a. Damages under Coverage A; and

b. Medical expenses under Coverage C

because of all "bodily injury" and "property damage" arising out of any one "occurrence."

6. Subject to 5. above, the Fire Damage Limit is the most we will pay under Coverage A for damages because of "property damage" to premises, while rented to you or temporarily occupied by you with permission of the owner, arising out of any one fire.

7. Subject to 5. above, the Medical Expense Limit is the most we will pay under Coverage C for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS

1. **Bankruptcy.**

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

2. **Duties In The Event Of Occurrence, Offense, Claim Or Suit.**

a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

(1) How, when and where the "occurrence" or offense took place;

(2) The names and addresses of any injured persons and witnesses; and

(3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

b. If a claim is made or "suit" is brought against any insured, you must:

(1) Immediately record the specifics of the claim or "suit" and the date received; and

(2) Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

c. You and any other involved insured must:

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

3. **Legal Action Against Us.**

No person or organization has a right under this Coverage Part:

a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

b. To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

SP00052

**4. Other Insurance.**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **c.** below.

**b. Excess Insurance**

This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis:

(1) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

(2) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner; or

(3) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of of Coverage A (Section I).

When this insurance is excess, we will have no duty under Coverages A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit." If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(2) The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit.**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period. Audit premiums are due and payable on notice to the first Named Insured. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations.**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds.**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us.**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

 Copyright, Insurance Services Office, Inc., 1994

**9.  When We Do Not Renew.**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

## SECTION V - DEFINITIONS

1.  "Advertising injury" means injury arising out of one or more of the following offenses:

    a.  Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    b.  Oral or written publication of material that violates a person's right of privacy;

    c.  Misappropriation of advertising ideas or style of doing business; or

    d.  Infringement of copyright, title or slogan.

2.  "Auto" means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment."

3.  "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4.  "Coverage territory" means:

    a.  The United States of America (including its territories and possessions), Puerto Rico and Canada;

    b.  International waters or airspace, provided the injury or damage does not occur in the course of travel or transportation to or from any place not included in a. above; or

    c.  All parts of the world if:

        (1)  The injury or damage arises out of:

            (a)  Goods or products made or sold by you in the territory described in a. above; or

            (b)  The activities of a person whose home is in the territory described in a. above, but is away for a short time on your business; and

        (2)  The insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in a. above or in a settlement we agree to.

5.  "Employee" includes a "leased worker." "Employee" does not include a "temporary worker."

6.  "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

7.  "Impaired property" means tangible property, other than "your product" or "your work," that cannot be used or is less useful because:

    a.  It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

    b.  You have failed to fulfill the terms of a contract or agreement;

    if such property can be restored to use by:

    a.  The repair, replacement, adjustment or removal of "your product" or "your work"; or

    b.  Your fulfilling the terms of the contract or agreement.

8.  "Insured contract" means:

    a.  A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

    b.  A sidetrack agreement;

    c.  Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

    d.  An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

    e.  An elevator maintenance agreement;

    f.  That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

        Paragraph f. does not include that part of any contract or agreement.

        (1)  That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations,

SP00054

within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

(2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

(a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

(b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

(3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection, architectural or engineering activities.

9. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker."

10. "Loading or unloading" means the handling of property:

a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

b. While it is in or on an aircraft, watercraft or "auto"; or

c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto."

11. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

b. Vehicles maintained for use solely on or next to premises you own or rent;

c. Vehicles that travel on crawler treads;

d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

(1) Power cranes, shovels, loaders, diggers or drills; or

(2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

e. Vehicles not described in a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

(1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

(2) Cherry pickers and similar devices used to raise or lower workers;

f. Vehicles not described in a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

(1) Equipment designed primarily for:

(a) Snow removal;

(b) Road maintenance, but not construction or resurfacing; or

(c) Street cleaning;

(2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

(3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

12. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

13. "Personal injury" means injury, other than "bodily injury," arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment;

b. Malicious prosecution;

CG 00 01 01 96 Copyright, Insurance Services Office, Inc., 1994 Page 11 of 13 ☐

140  11

SP00055

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

e. Oral or written publication of material that violates a person's right of privacy.

14. "Products-completed operations hazard":

a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned. However "your work" will be deemed completed at the earliest of the following times:

(a) When all of the work called for in your contract has been completed.

(b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

(c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

b. Does not include "bodily injury" or "property damage" arising out of:

(1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

(2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

(3) Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that

products-completed operations are subject to the General Aggregate Limit.

15. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

16. "Suit" means a civil proceeding in which damages because of "bodily injury," "property damage," "personal injury" or "advertising injury" to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

17. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

18. "Your product" means:

a. Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(1) You;

(2) Others trading under your name; or

(3) A person or organization whose business or assets you have acquired; and

b. Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

"Your product" includes:

a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product;" and

b. The providing of or failure to provide warnings or instructions.

"Your product" does not include vending machines or other property rented to or located for the use of others but not sold.

SP00056

**19.** "Your work" means:

    **a.** Work or operations performed by you or on your behalf; and

    **b.** Materials, parts or equipment furnished in connection with such work or operations.

"Your work" includes:

    **a.** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

    **b.** The providing of or failure to provide warnings or instructions.

CG 00 01 01 96      Copyright, Insurance Services Office, Inc., 1994      Page 13 of 13   ☐

140  13

SP00057

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# MICHIGAN CHANGES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
EMPLOYEE BENEFITS LIABILITY COVERAGE PART
FUNERAL DIRECTORS PROFESSIONAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
PASTORAL PROFESSIONAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
STOP PAYMENT OR DISHONOR LIABILITY COVERAGE PART.

1. CANCELLATION (Common Policy Conditions) is amended as follows:

   a. Paragraph 1. is replaced by the following:

      The first Named Insured shown in the Declarations may cancel this policy by surrendering the policy to us or our authorized agent or by mailing or delivering to us or our authorized agent advance written notice of cancellation.

   b. Paragraph 3. is replaced by the following:

      We will mail or deliver our notice to the first Named Insured's last mailing address known to us or our authorized agent.

   c. Paragraph 4. is replaced by the following:

      The time of surrender of the effective date and hour of cancellation stated in the notice shall become the end of the policy period.

2. The paragraph relating to prejudgment interest in SUPPLEMENTARY PAYMENTS is replaced by the following:

   Prejudgment interest awarded against the insured on that part of the judgment we pay.

3. With respect to the DUTIES Condition, notice to our authorized agent shall be considered notice to us.

4. Any WHEN WE DO NOT RENEW Condition is deleted.

   The following WHEN WE DO NOT RENEW Condition is added:

   If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured's last mailing address known to us or our authorized agent written notice of the nonrenewal not less than 30 days before the expiration date.

   If notice is mailed, proof of mailing shall be sufficient proof of notice.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.
Copyright, Insurance Services Office, Inc., 1985, 1986
(ISO CG 01 68 04 86)

CL/CG 01 68 01 90

SP00058

# INFORMATION TECHNOLOGY COVERAGE PART
# FOR SMALLER SYSTEMS - DECLARATIONS

US F+G
INSURANCE

Policy No.    1MP 300991152 03

## LOCATION OF PREMISES:

| Premises No. | Location |
|---|---|
| 1 | 240 STILLE DRIVE, CINCINNATI, OH  45233 |
| 2 | 400 MARTIN ROAD, CHARLEVOIX, MI  49720 |
| 3 | 5560 PALISADES DRIVE, CINCINNATI, OH |
| | |
| | |

## LIMITS OF INSURANCE:

| Premises No. | "ITS* Equipment" Limit | "Communication Equipment" Limit |
|---|---|---|
| 1 | $ 26,000. | $ |
| 2 | $ 30,000. | $ |
| 3 | $ 2,000. | $ |
| | $ | $ |
| | $ | $ |

*ITS = Information Technology Systems

The following limits apply unless an "X" is indicated in the box below, CL/CM 80 01 is attached, and an increased limit is shown in the Schedule:

**"Data" and "Media" Combined Limit:** the lesser of 20% of the "ITS Equipment" limit at the applicable location or $100,000.

**"Extra Expense" Limit:** the lesser of 20% of the "ITS Equipment" limit at the applicable location or $100,000.

**"Business Income" Limit:** $10,000 in any one occurrence.

☒ CL/CM 80 01 is attached.  Increased limit(s) apply.

## DEDUCTIBLE

$ 500.    Deductible amount.

**FORMS AND ENDORSEMENTS APPLICABLE TO THIS COVERAGE PART:** CL/CM 816 09 93
CM 0001 06 95   CL/CM 8001 09 95   CL/CM 0080 09 93

## PREMIUMS FOR THIS COVERAGE PART:

Policy Premium   $ 250.          Minimum Premium    $ 250.

CL/CM 816 09 93

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# INCREASED LIMITS OF INSURANCE

This endorsement modifies insurance provided under the following:

INFORMATION TECHNOLOGY COVERAGE FORM FOR SMALLER SYSTEMS.

The following apply only if  an "x" is entered in the box and a limit of insurance is shown in the Schedule below.

☐    **Business Income:**

Paragraph 9. d. of D. Additional Coverages of SECTION I - COVERAGE is deleted and replaced by the following:

d.  The most we will pay in any one occurrence for "business income" is the applicable Limit of Insurance shown in the Schedule below.

☒    **Data and Media - Combined Limit:**

Paragraph C. of SECTION II - LIMITS OF INSURANCE is deleted and replaced by the following:

C.  Data and Media - Combined Limit

Under A. Covered Property of SECTION I - COVERAGE, the most we will pay for direct physical "loss" to "data" and "media" combined in any one occurrence (regardless of whether one or more Causes of Loss contribute to such "loss") is the applicable Limit of Insurance shown in the Schedule below.

☐    **Extra Expense:**

Paragraph 9. e. of D. Additional Coverages of SECTION I - COVERAGE is deleted and replaced by the following:

e.  The most we will pay in any one occurrence for "extra expense" is the applicable Limit of Insurance shown in the Schedule below.

☒    **Transit:**

The second paragraph under 7. Transit of D. Additional Coverage of SECTION I - COVERAGE is deleted            and replaced by the following:

The most we will pay in any one occurrence under this coverage is the Limit for Covered Property in Transit shown in the Schedule below.

## SCHEDULE

## LIMITS OF INSURANCE

| Premises No. | "Business Income" | "Data" and "Media" | "Extra Expense" |
|---|---|---|---|
| 1 | $ _____ | $    9,000 | $ _____ |
| 2 | _____ | 9,000 | _____ |
| _____ | | _____ | _____ |

$    56,000.    Covered Property in Transit

SP00060

POLICY NUMBER:    1MP 300991152 03

# CONTRACTOR'S BLOCK PROGRAM COVERAGE PART



**PREMIUM SCHEDULE:**

| | | |
|---|---|---|
| Real and Business Personal Property Coverage Section | $ | _____ |
| Contractors' Equipment Coverage Section | $ | 353.00 |
| Builder's Risk and Installation Coverage Section | $ | _____ |

**Total Estimated Premium for this Coverage Part:**    $    353.00

**Forms and Endorsements Applicable to this Coverage Part:**

CL/CM 912 12 94   CL/CM 914 12 94

CL/CM 928 01 94

**USF&G** ®
**INSURANCE**

**JNTRACTORS' EQUIPMENT COVERAGE SECTION**

**DECLARATIONS**

**Policy No.**   IMP 300991152 03          **PREMIUM FOR THIS COVERAGE SECTION: $** 353.00

**LIMITS OF INSURANCE:**     ☒ SCHEDULED     ☐ BLANKET

$ __15,000.__ _____ Any one item of Covered Property. If scheduled, see Schedule of Contractor's Equipment, CL/CM 924 for equipment description and limit of insurance for each covered item.

$ __23,500.__ _____ All Covered Property in any one "loss."

**ADDITIONAL LIMITS OF INSURANCE:**

$_____ Employees Tools and Clothing. The limit is $5,000 (but not more than $500 per employee) unless otherwise stated.

$_____ Rental Expense. The limit is $10,000 per policy period (but not more than $500 per day) unless otherwise stated.

$_____ "Substitute Equipment." The limit is $100,000 unless otherwise stated.

$_____ Newly Purchased Property. The limit is $250,000 unless otherwise stated.

**DEDUCTIBLE: $** __500.__ _____ The deductible for this Section is $500 unless otherwise stated.

**RATES AND PREMIUMS:**

| REPORTING | | NON-REPORTING | |
|---|---|---|---|
| $_____ Rate | | $ __1.50__ _____ Rate | |
| _____ Premium Adjustment Period | | $ __N/A__ _____ Minimum Premium | |
| _____ Reporting Period | | | |
| $_____ Deposit Premium | | | |
| $_____ Minimum Earned Premium | | | |

**VALUATION:** Owned property will be valued on an **Actual Cash Value** basis unless otherwise indicated below.

☐ Replacement Cost

**LOSS PAYEE NAME AND MAILING ADDRESS:**

We will pay the adjusted "loss" jointly to "you" and the applicable loss payee, as interests may appear.

**FORMS AND ENDORSEMENTS APPLICABLE TO THIS COVERAGE SECTION:** CL/CM 912 12 94

CL/CM 00 20 12 94   CL/CM 924 12 94

SP00062

CL/CM 912 12 94

**SCHEDULE OF CONTRACTOR'S EQUIPMENT**

U S F&G
INSURANCE

**Policy No.**   **1MP 300991152 03**

"We" cover the Contractor's Equipment described below:

| Item No. | Year Mfg. | Manufacturer | Description Of Equipment | Model No. | Serial No. | Limit Of Insurance |
|------|------|------|------|------|------|------|
| 1 | | YALE | LIFT TRUCK | | 311945 | $ 8,500.00 |
| 2 | 1985 | CLARK | FORK LIFT | | 5885671 | $15,000.00 |

**Total Schedule Amount**      $32,000.00

CL/CM 924 12 94

SP00063

# CHANGE ENDORSEMENT

**USF&G**®
**INSURANCE**

| Change No. | Change(s) Eff. | Policy Number | Policy Exp. | Company |
|---|---|---|---|---|
| 1 | 01/01/97 | 1MP30099115203 | 01/01/98 | ☐ UNITED STATES FIDELITY AND GUARANTY COMPANY<br>☒ FIDELITY AND GUARANTY INSURANCE UNDERWRITERS, INC.<br>☐ FIDELITY AND GUARANTY INSURANCE COMPANY |

| Named Insured<br>HATER INDUSTRIES, INC. | Agent, Address and Agent's Code<br>KNEFLIN-DILLHOFF-HILS & KRUSE AGENCY<br>CINCINNATI, OH<br>16-3720 |
|---|---|

|  | The Named Insured is changed to: |
|---|---|
|  | The following insured(s) is added to the Named Insured: |
|  | The following insured(s) is deleted from the Named Insured: |
|  | The Mailing Address is changed to: |
|  | The Policy Period is changed to: |
|  | The Business Description is changed to: |
|  | The following coverage part(s) is added: |
|  | The following coverage part(s) is deleted: |
| X | The following coverage part(s) is changed as indicated below:<br>SUPERIOR PROPERTY PROGRAM |

Change(s)
PNC BANK , OHIO, NA, IS AMENDED TO LENDER'S LOSS PAYABLE PER THE ATTACHED REVISED
CL/SP 12 18 12 92, LOSS PAYABLE PROVISIONS ENDORSEMENT.

☐ **Additional Premium $**_____
**due at Endorsement Effective Date.**

☐ **Return Premium $**

_____
Authorized Representative

CL/OO 99 03 09 88