[Cite as *Szekeres v. State Farm Fire & Cas. Co.*, 2002-Ohio-5989.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STEVEN SZEKERES | : | JUDGES: |
| | : | Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellant | : | Hon. Sheila G. Farmer, J. |
| | : | Hon. John F. Boggins, J. |
| -vs- | : | |
| | : | |
| STATE FARM FIRE AND CASUALTY COMPANY, ET AL. | : | Case No. 02CA00004 |
| | : | |
| Defendants-Appellees | : | O P I N I O N |

CHARACTER OF PROCEEDING:        Appeal from the Court of Common Pleas, Case No. 00CV326

JUDGMENT:        Affirmed

DATE OF JUDGMENT ENTRY:        October 31, 2002

APPEARANCES:

For Plaintiff-Appellant

GLEN R. PRITCHARD
471 East Broad Street
Suite 1400
Columbus, Ohio 43215

***

JAY C. RICE
CATHERINE A. DAVIS
Seventh Floor - Bulkley Building
1501 Euclid Avenue
Cleveland, Ohio 44115
For Federal Insurance Company and Great Northern Insurance Company

For St. Paul Mercury Insurance Company, St. Paul Fire & Marine Insurance Company, Northbrook Property and Casualty Insurance Company and Northbrook Indemnity Company

For Defendants-Appellees

MITCHELL M. TALLAN
471 East Broad Street, 19th Floor
Columbus, Ohio 43215
For State Farm Fire and Casualty Company

D. JOHN TRAVIS
GARY L. NICHOLSON
Seventh Floor - Bulkley Building
1501 Euclid Avenue
Cleveland, Ohio 44115

*Farmer, J.*

{¶1}    On August 8, 1990, appellant, Steven Szekeres, sustained injuries when the motorcycle he was operating was struck by Paul Yost.

{¶2}    At the time of the accident, appellant lived with his parents, Donna and Martin Szekeres, and his sister, Pam Barker.  The family home was covered under a homeowner's policy issued by appellee, State Farm Fire and Casualty Company.

{¶3}    At the time of the accident, appellant was employed by London Square Apartments, insured under a commercial automobile policy issued by appellee, Federal Insurance Company, and a general liability policy issued by appellant, Great Northern Insurance Company.

{¶4}    Mrs. Szekeres was employed by Timken Mercy Medical Center, insured under a commercial automobile policy issued by appellee, Northbrook Property and Casualty Insurance Company, a general liability policy issued by appellee, St. Paul Mercury Insurance Company and an umbrella policy issued by appellee, St. Paul Fire & Marine Insurance Company.

{¶5}    Ms. Barker was employed by Mid American Imaging, Inc., insured under a commercial automobile policy issued by appellee Northbrook Property and a general liability policy issued by appellee, Northbrook Indemnity Company.

{¶6}    On April 27, 2000, appellant filed a complaint against appellee State Farm seeking uninsured/underinsured motorist coverage under the homeowner's policy.  Appellant later filed amended complaints on December 11, 2000, February 12, 2001 and April 11, 2001 naming the additional insurance companies, seeking uninsured/underinsured motorist coverage under their respective policies.[1]

{¶7}    All parties filed motions for summary judgment.  By judgment entry filed December 12, 2001, the trial court found in favor of appellees, denying appellant coverage under the policies.

{¶8}    Appellant filed an appeal and this matter is now before this court for consideration.  Assignments of error are as follows:

I

---

[1]On July 26, 1991, appellant settled with the tortfeasor.  Further, appellant settled with Tim's Tavern, the facility wherein Mr. Yost had become intoxicated.

{¶9} "THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO DEFENDANT-APPELLEE FEDERAL INSURANCE COMPANY, AND FINDING THAT COVERAGE UNDER THE FEDERAL COMMERCIAL AUTO POLICY ISSUED TO CIVISTA CORPORATION WAS INVALIDATED AS A RESULT OF A SETTLEMENT WITH THE AT-FAULT DRIVER WHICH OCCURRED MANY YEARS BEFORE THE OHIO SUPREME COURT'S DECISION IN *SCOTT-PONTZER*."

II

{¶10} "THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO DEFENDANT-APPELLEE GREAT NORTHERN, AND FINDING THAT UDM COVERAGE DOES NOT ARISE BY OPERATION OF LAW UNDER THE CGL POLICY ISSUED TO CIVISTA CORPORATION AND THAT APPELLANT IS NOT AN 'INSURED' THEREUNDER."

III

{¶11} "THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO DEFENDANT-APPELLEE NORTHBROOK PROPERTY AND CASUALTY, AND FINDING THAT COVERAGE UNDER THE NORTHBROOK COMMERCIAL AUTO POLICIES ISSUED TO TIMKEN MERCY MEDICAL CENTER AND MID-AMERICAN IMAGING, INC. WAS INVALIDATED AS A RESULT OF A SETTLEMENT WITH THE AT-FAULT DRIVER WHICH OCCURRED MANY YEARS BEFORE THE OHIO SUPREME COURT'S DECISION IN SCOTT-PONTZER."

IV

{¶12} "THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO DEFENDANT-APPELLEE ST. PAUL MERCURY, AND FINDING THAT UDM COVERAGE DOES NOT ARISE BY OPERATION OF LAW UNDER THE CGL POLICY ISSUED TO TIMKEN MERCY MEDICAL CENTER AND THAT APPELLANT IS NOT AN 'INSURED' THEREUNDER."

V

{¶13} "THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO DEFENDANT-APPELLEE NORTHBROOK, AND FINDING THAT UDM COVERAGE DOES NOT ARISE BY OPERATION OF LAW UNDER THE CGL POLICY ISSUED TO MID AMERICAN IMAGING, INC AND THAT APPELLANT IS NOT AN 'INSURED' THEREUNDER."

VI

{¶14}  "THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO DEFENDANT-APPELLEE ST. PAUL FIRE, AND FINDING THAT THE UDM COVERAGE ARISING BY OPERATION OF LAW UNDER THE UMBRELLA POLICY ISSUED TO TIMKEN MERCY MEDICAL CENTER WAS INVALIDATED AS A RESULT OF APPELLANT'S FAILURE TO GIVE 'PROMPT NOTICE' OF THE CLAIM."

VII

{¶15}  "THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO DEFENDANT-APPELLEE STATE FARM, AND FINDING THAT UDM COVERAGE DOES NOT ARISE BY OPERATION OF LAW UNDER THE HOMEOWNER'S INSURANCE POLICY COVERING APPELLANT."

I

{¶16}  Appellant claims the trial court erred in granting summary judgment to Federal.  Specifically, appellant claims the trial court erred in finding coverage under the Federal commercial automobile policy was invalidated as a result of the settlement with the at-fault driver which occurred many years before the Supreme Court of Ohio's decision in *Scott-Pontzer v. Liberty Mutual Fire Insurance Co.,* 85 Ohio St.3d 660, 1999-Ohio-292.  We disagree.

{¶17}  Federal issued a commercial automobile policy to CIVISTA Corporation.  CIVISTA owned the subsidiary which employed appellant.  The policy contained uninsured/underinsured motorist coverage. The definition of an "insured" was similar to the language at issue in *Scott-Pontzer*.  Accordingly, Federal did not dispute that appellant was an insured under the policy.  However, Federal did dispute the fact that appellant failed to comply with the notice, consent, and subrogation provisions contained within the policy. As such, Federal argued appellant was unable to recover under the policy.  Do the conditional provisions provided within the uninsured/underinsured motorist policy apply to the insureds?  We answer in the affirmative for the following reasons.

{¶18}  We note uninsured/underinsured motorist coverage is not "created" by operation of law because said coverage already exists.  We will look to the existing policy to determine this issue.

{¶19}  Appellant argues in *Burkhart v. CNA Insurance*, Stark App. No. 2001CA00265, 2002-Ohio-903, this court found the subrogation and notice provisions to be unenforceable.  In *Burkhart,* the commercial automobile policy contained uninsured/underinsured motorist coverage as the case sub judice.  In finding

the provisions to be unenforceable, the *Burkhart* court relied on this Court's decision in *Myers v. Safeco Insurance of America* (February 18, 2000), Licking App. No. 99CA00083, reversed on the authority of *Davidson v. Motorists Mutual Insurance Co.*, 91 Ohio St.3d 262, 2001-Ohio-36. *Myers* was not a commercial automobile policy with uninsured/underinsured motorist coverage, but a homeowner's policy that was determined to be a motor vehicle policy and coverage arose by operation of law. Further, the *Myers* court cited *Demetry v. Kim* (1991), 72 Ohio App. 3d 692, which also involved a policy that was created by operation of law.

{¶21} We specifically find the *Burkhart* court's reliance on *Myers* to be in error.[2] We have yet to decide what happens to conditional provisions when an uninsured/underinsured motorist policy is already in existence and not created by operation of law.

{¶22} *Scott-Pontzer,* besides providing lifetime employment for attorneys and judges, is the exception to the general rule that an insurance policy is a contract and the parties are bound by the provisions of the contract. See, *Scott-Pontzer* at 663, citing *Nationwide v. March* (1984), 15 Ohio St.3d 107, 109. Without arguing the absurd, we find the conditional provisions must carry through or there would be no need to have a written policy. *Scott-Pontzer* permits appellees to be insureds, but binds them to the conditional provisions of the policy under which they are insured.

{¶23} The policy sub judice contains the following provisions:

{¶24} "Promptly send us copies of the legal papers if a suit is brought." See, Section E(2)(b) of the Ohio Uninsured Motorist Coverage Endorsement, attached to Appellant's Brief as Exhibit B.

{¶25} Further, the policy states "[t]his insurance does not apply to: Any claim settled without our consent" and "[a]ny judgment for damages arising out of a suit brought without our written consent is not binding on us." See, respectively, Section C(1) and Section A(3) of the Ohio Uninsured Motorist Coverage Endorsement, attached to Appellant's Brief as Exhibit B.

{¶26} Under the clear mandate of *Bogan v. Progressive Casualty Insurance Co.* (1988), 36 Ohio St.3d 22, paragraph four of the syllabus, subrogation provisions are enforceable in uninsured/underinsured

---

[2]The *Burkhart* panel consisted of Judges Hoffman, Wise and Boggins. The panel in *Myers* consisted of Judges Wise and Edwards and a visiting judge. Therefore, because *Myers* contains a different fact pattern than *Burkhart,* we are not bound by it as precedence.

motorist claims:

{¶28} "Based upon the established common law and further strengthened by the specific statutory provision, R.C. 3937.18, a subrogation clause is reasonably includable in contracts providing underinsured motorist insurance. Such a clause is therefore both a valid and enforceable precondition to the duty to provide underinsured motorist coverage."

{¶29} Appellant settled with the tortfeasor on July 26, 1991 without notifying Federal.

{¶30} Based upon the subrogation and notice provisions which are enforceable contract conditions of the commercial automobile policy, uninsured/underinsured motorist coverage, we find appellant is not entitled to coverage under the commercial automobile policy issued by Federal.

{¶31} Assignment of Error I is denied.

II

{¶32} Appellant claims the trial court erred in granting summary judgment to Great Northern. Specifically, appellant claims the trial court erred in finding uninsured/underinsured motorist coverage did not arise by operation of law under the general liability policy issued to CIVISTA, and further, that appellant was not an insured thereunder. We disagree.

{¶33} In its December 12, 2001 judgment entry, the trial court found the general liability policy was not a motor vehicle liability policy subject to R.C. 3937.18. We agree. In *Davidson,* supra, the Supreme Court of Ohio examined R.C. 3837.18 coverage under a homeowner's policy. Writing for the court, Justice Francis Sweeney, who also wrote *Selander v. Erie Insurance Group,* 85 Ohio St.3d 541, 1999-Ohio-287, explained *Selander* as follows:

{¶34} "Moreover, we never intended *Selander* to be used to convert every homeowner's policy into a motor vehicle liability policy whenever any incidental coverage is afforded for some specified type of motorized vehicle. Instead, *Selander* stands only for the proposition that UM/UIM coverage is to be offered where a liability policy of insurance expressly provides for coverage for motor vehicles without qualification as to design or necessity for motor vehicle registration." *Davidson* at 268.

{¶35} The general liability policy sub judice states the following in pertinent part:

{¶36} "This insurance does not apply to:

{¶37}    "AIRCRAFT-WATERCRAFT-AUTO

{¶38}    "bodily injury or property damage arising out of the ownership, maintenance, use, or entrustment to others of any:

{¶39}    "1. aircraft;

{¶40}    "2. watercraft; or

{¶41}    "3. auto

{¶42}    "which any insured owns, operates, rents, or borrows.   Use includes operation and loading or unloading.

{¶43}    "BUT

{¶44}    "this exclusion does not apply to:

{¶45}    "****

{¶46}    "3. liability of any insured arising out of the parking of an auto on or next to your premises; provided such auto is not owned by, rented or loaned to such insured."  See, Pages 2-4 of 11 of the Financial Institutions General Liability Insurance, attached to Appellant's Brief as Exhibit C.

{¶47}    As noted, the policy contains a "valet parking" provision.  Per *Davidson,* such a provision is not truly a motor vehicle provision but a property damage provision.  The provision does not pertain to any motor vehicle operation, but to coverage of the automobile body itself.  We find to magnify this provision to the point that it would transform a general liability policy into a motor vehicle policy is to step beyond the pale.[3]  We have steadfastly rejected extensions of *Scott-Pontzer* in other areas such as residence employee provisions in homeowner's policies (*Vohsing v. Auto-Owners Insurance Co.,* Licking App. No. 01-CA-56, 2002-Ohio-250, *Mattox v. Allstate Insurance Co.,* Stark App. No. 2001CA218, 2002-Ohio-1453, *Henry v. Nationwide Mutual Fire Insurance Co.,* Muskingum App. No. CT2001-0014, 2001-Ohio-1427)

---

[3]This writer notes a direct conflict with this court's decision in *Cox v. State Farm Fire and Casualty Co.,* Licking App. No. 2001CA00117, 2002-Ohio-3076, which this writer wrote.  *Cox* involved a "valet parking" provision identical to a provision reviewed in *Burkhart,* supra.  The *Burkhart* court found the provision elevated the general liability policy to a motor vehicle policy, finding *Selander,* and not *Davidson* applied.  This writer adopted this holding in *Cox.*  Upon revisiting this "valet parking" provision which is identical in the case sub judice, this writer concedes error in the *Cox* decision and adopts the reasoning set forth above.

and we find this analysis to be of the same nature.  The general liability policy is not a motor vehicle policy and therefore is not covered by R.C. 3937.18.

{¶49}  Appellant is not entitled to coverage under the general liability policy issued by Great Northern.

{¶50}  Assignment of Error II is denied.

III

{¶51}  Appellant claims the trial court erred in granting summary judgment to Northbrook Property. Specifically, appellant claims the same issue as in Assignment of Error I, namely, the trial court erred in finding coverage under the Northbrook Property commercial automobile policies issued to Timken Mercy and Mid American were invalidated as a result of the settlement with the at-fault driver.  We disagree.

{¶52}  Appellant's mother, Donna Szekeres, worked for Timken Mercy and appellant's sister, Pam Barker, worked for Mid American.  Mrs. Szekeres and Ms. Barker lived in the same house with appellant at the time of the accident.  Both policies contain uninsured/underinsured motorist coverage.  The pertinent language contained in the policies is identical.

{¶53}  Northbrook Property concedes appellant is an insured under the policies pursuant to *Scott-Pontzer* and *Ezawa v. Yasuda Fire and Marine Ins. Co.*, 86 Ohio St.3d 557, 1999-Ohio-124.  However, Northbrook Property argues appellant failed to comply with the notice, consent and subrogation provisions in the policies, thereby precluding coverage.  We agree.

{¶54}  The policies sub judice contain the identical provisions as cited in Assignment of Error I.  See, Section A(3), Section C(1) and Section E(2)(b) of the Ohio Uninsured Motorist Coverage Endorsements, attached to Appellant's Brief as Exhibits D and E.

{¶55}  Again, appellant settled with the tortfeasor on July 26, 1991 without notifying Northbrook Property. For the same reasons set forth in our first assignment of error, we find the conditions in the policies applicable, thereby precluding coverage.

{¶56}  Appellant is not entitled to coverage under the commercial automobile policies issued by Northbrook Property.

{¶57}  Assignment of Error III is denied.

IV, V

{¶58}  Appellant claims the trial court erred in granting summary judgment to St. Paul Mercury and Northbrook Indemnity. Specifically, appellant claims the trial court erred in finding uninsured/underinsured motorist coverage did not arise by operation of law under the commercial general liability policies issued to Timken Mercy and Mid American, and further, that appellant was not an insured thereunder. We disagree.

{¶59}  In its December 12, 2001 judgment entry, the trial court found appellant was not an insured under either policy. We agree. The general liability policies do not include language which would protect family members of the insured.

{¶60}  The St. Paul Mercury policy states the following in pertinent part under "Who Is Protected Under This Agreement":

{¶61}  "Corporation or Other Organization. If you are named in the Introduction as a corporation or other organization, you are a protected person. Your executive officers, directors and trustees are protected persons only for their duties as your officers, directors or trustees. And your stockholders are protected persons only for their liability as your stockholders.

{¶62}  "****

{¶63}  "Worker Protection. Your employees, students and authorized volunteer workers are protected persons only while working for you within the scope of their duties." See, Page 4 of 12 of St. Paul's Commercial General Liability Protection Coverage, attached to Appellant's Brief as Exhibit F.

{¶64}  Unlike the language contained in the *Scott-Pontzer* and *Ezawa* policies, the definition of an "insured" in the policy sub judice does not contain any language referencing "any family member." While appellant's mother is an insured under the St. Paul Mercury policy while working within the scope of her duties, appellant is not. Assuming, arguendo, we found uninsured/underinsured motorist coverage arose by operation of law, appellant is not an insured under the policy.

{¶65}  We draw the same conclusion as to the Northbrook Indemnity policy issued to Mid American. The policy states the following in pertinent part under "Who Is An Insured":

{¶66}  "1. If you are designated in the declarations as:

{¶67}  "****

{¶68}  "c. An organization other than a partnership or joint venture, you are an Insured.  Your executive officers and directors are Insureds, but only with respect to their duties as your officers or directors.  Your stockholders are also Insureds, but only with respect to their liability as stockholders.

{¶69}  "2. Each of the following is also an Insured:

{¶70}  "a. Your employees, other than your executive officers, but only for acts within the scope of their employment by you.***"  See, Page 9 of 18 of Northbrook Indemnity's Commercial General Liability Coverage Form, attached to Appellant's Brief as Exhibit G.

{¶71}  Again, the language of this policy is unlike the language contained in the *Scott-Pontzer* and *Ezawa* policies which defined an "insured" to include family members.  While appellant's sister is an insured under the Northbrook Indemnity policy for acts within the scope of her employment, appellant is not.  For a similar result, see *Walton v. Continental Casualty Co.*, Holmes App. No. 02CA002, 2002-Ohio-3831.

{¶72}  Assignments of Error IV and V are denied.

VI

{¶73}  Appellant claims the trial court erred in granting summary judgment to St. Paul Fire regarding the umbrella policy issued to Timken Mercy.  We disagree.

{¶74}  Timken Mercy was insured under a commercial automobile policy issued by Northbrook Property, a general liability policy issued by St. Paul Mercury and the umbrella policy issued by St. Paul Fire.  In Assignment of Error III, we found appellant was not entitled to coverage under the commercial automobile policy because appellant failed to abide by the terms of the insurance contract.  In Assignment of Error IV, we found appellant was not entitled to coverage under the general liability policy because appellant was not an insured under the policy.

{¶75}  The umbrella policy states the following under "What This Agreement Covers":

{¶76}  "Bodily Injury and Property Damage Liability

{¶77}  "We'll pay amounts any protected person is legally required to pay as damages for covered bodily injury or property damage that:

{¶78}  "happens while this agreement is in effect; and

{¶79}  "is caused by an event.

{¶80}  "****

{¶81}  "Coverage In Addition To Basic Insurance

{¶82}  "When a claim or suit covered by this agreement is covered by your Basic Insurance, we'll pay damages you and others protected by this agreement are legally required to pay if those damages exceed the coverage limits of your Basic Insurance. But we'll only pay amounts up to the limits of coverage under this agreement.

{¶83}  "****

{¶84}  "*Your Basic Insurance* is shown on the Schedule of Basic Insurance. It doesn't matter whether you bought the insurance from us or from other insurance companies. We refer to this insurance as your Basic Insurance in this agreement." See, Page 2 of 14 of the Umbrella Excess Liability Protection Policy, attached to Appellant's Brief as Exhibit H.

{¶85}  The Northbrook Property commercial automobile policy and the St. Paul Mercury general liability policy are included on the Schedule of Basic Insurance. See, Schedule of Basic Insurance, Form 43666, attached to Appellant's Brief as Exhibit H.

{¶86}  Based upon the clear meaning of the insurance contract, the umbrella policy does not apply because appellant was not entitled to coverage under the underlying insurance policies.

{¶87}  Assignment of Error VI is denied.

VII

{¶88}  Appellant claims the trial court erred in granting summary judgment to State Farm regarding the homeowner's policy. We disagree.

{¶89}  Appellant argues the homeowner's policy is a motor vehicle policy by virtue of the "residence employee" language contained in the policy. This court has previously addressed the issue of whether "residence employee" language in a homeowner's policy elevates the policy to a motor vehicle policy subject to uninsured/underinsured motorist coverage, and has consistently held such language does not give rise to the mandates of R.C. 3938.17. See, citations cited supra under Assignment of Error II.

{¶90}  Assignment of Error VII is denied.

{¶91}  The judgment of the Court of Common Pleas of Licking County, Ohio is hereby affirmed.

topic: insurance issues

By Farmer, J.

Boggins, J. concurs.

Hoffman, P.J. concurs in part and dissents in part.

*Hoffman, P.J., concurring in part and dissenting in part*

I

{¶92}   I concur in the majority's disposition and part of the  analysis of appellant's first assignment of error.  I agree the conditions and restrictions apply, but I reach this conclusion through a different analysis. Because I authored this Court's Opinion in *Burkhart v. CNA Insurance,* Stark App. No. 2001CA00265, 2002-Ohio-903, I wish to elaborate my reasons for doing so.

{¶93}   This Court has addressed the issue of whether restrictions to and conditions of coverage in the underlying liability policy apply when UIM/UDM coverage arises by operation of law on  numerous occasions.  On at least three occasions, we found restrictions to and conditions of coverage in the underlying liability policy did not carry over where UIM/UDM coverage was created by operation of law. *Burkhart v. CNA Ins. Co.*, Stark App. No. 2001 CA00265, 2002-Ohio-903; *Myers v. Safeco Ins. Co. of America* (Feb. 18, 2000), Licking App. No. 99CA00083, unreported; and *Butcher v. Lewis*, Stark App. No. 2001 CA00219, 2002-Ohio-3343.[4]

{¶94}   Our decisions in *Butcher* and *Myers* analyzed a commercial general liability policy and a homeowners policy, respectively.  In both cases, we found UIM/UDM coverage arose by operation of law pursuant to R.C. 3937.18.  Because UIM/UDM coverage arose by operation of law, we further found restrictions to and conditions of coverage in the respective underlying liability policies did not carry over to UIM/UDM coverage pursuant to the law set forth in *Scott-Pontzer* and *Demetry v. Kim*, infra.

{¶95}   In *Myers,* this Court relied upon *Demetry v. Kim* (1991), 72 Ohio App.3d 692, 595 N.E.2d 997.  In *Demetry,* the Tenth District reasoned because "[t]he parties never intended underinsured coverage to be provided by the [business auto] policy, * * * there could be no negotiated exclusion intended to be implied

---

[4]After identifying the different composition of this Court's panels in *Myers* and *Burkhart,* the majority finds we are not bound by *Myers* as precedence because it contains a different fact pattern than *Burkhart.* Maj. Op. at 6, Fn 2.  I suggest we are not bound by either as they were both unreported cases.

to the underinsured coverage", which arose by operation of law. Id. at 698. The *Demetry* court noted there is nothing to prevent uninsured/underinsured coverage from being broader than liability coverage. Id.

{¶97}   In *Scott-Pontzer*, the Ohio Supreme Court cited the rational of *Demetry* with approval, holding the restriction of coverage found in the umbrella liability policy did not apply to the UIM coverage created by operation of law. Id. at 666. There is no reason to believe the Ohio Supreme Court's treatment of conditions to coverage would be different from its treatment of restrictions to coverage in *Scott-Pontzer* when the UIM/UDM coverage arises by operation of law pursuant to R.C. 3937.18.

{¶98}   In *Burkhart*, this Court was called upon to analyze a business auto policy which contained a UIM/UDM endorsement, a commercial general liability policy and a commercial umbrella liability policy. The insurer, Continental, argued no coverage existed under the business auto policy because the *Burkhart* plaintiffs failed to comply with the policy provisions relative to notice and the protection of subrogation rights.  This Court summarily rejected the insurer's argument citing *Myers v. Safeco*, supra, and *Martin v. Liberty Mut. Ins Co.* (2001), 187 F. Supp. 896.[5]  In relying upon *Myers* and *Martin*, this Court held UIM/UDM coverage under the business auto policy was not unavailable because of plaintiff's failure to obtain the insurer's consent to release all claims against the tortfeasor.  For the reason cited by the majority, the *Burkhart* court's reliance on *Myers* for this conclusion was wrong.  Maj. Op. at 6.

{¶99}   In *Martin*, the Federal District Court excused the plaintiff from protecting the insurer's subrogation rights against the tortfeasor, reasoning "[b]efore the holding in *Scott-Pontzer*, which was issued in June of 1999, Plaintiffs, and other [sic] similarly situated, could not predict that they would be covered under their employer's insurance policy, even when outside the scope of employment, and that such coverage could include underinsured motorist coverage." *Martin,* supra at 904.

{¶100} Upon reconsideration of *Martin*, I find its rational less persuasive than I did when I authored this Court's opinion in *Burkhart. Scott-Pontzer* did not represent a change in any existing law of which I am aware. The fact plaintiffs could not predict the result in *Scott-Pontzer* provides little justification for finding plaintiffs are thereby legally excused from the notice and consent provisions in a commercial general liability, commercial auto, or commercial umbrella policy where UIM/UDM coverage is created by contract rather than by operation of law. The plaintiffs in *Scott-Pontzer* could, and did, predict coverage under the

---

[5]The citation in *Burkhart* citing to *Martin v. Midwestern Idemnity Co.* is incorrect.

plaintiff's employer's insurance policy, even where the plaintiff-employee was outside the scope of employment. Coverage did not arise when *Scott-Pontzer* was decided. Rather, it was first judicially recognized when *Scott-Pontzer* was decided. Inherent in the *Scott-Pontzer* decision is the concept that UIM/UDM coverage arose at the time the commercial auto liability policy and umbrella policy were initially issued. As such, I now find *Martin's* "predictability" rationale to be of little persuasive value.

{¶102} I now believe that portion of *Burkhart* which found UIM/UDM coverage under the business auto policy to have been wrongly decided. If UIM/UDM coverage arises by operation of law, failure to comply with restrictions to or conditions of coverage in the underlying liability policy do not "invalidate" UIM/UDM coverage. However, where UIM/UDM coverage exists as a matter of contract, restrictions to or conditions of coverage found in the policy are valid and enforceable against "*Scott-Pontzer*" type insureds.

{¶103} How the plaintiff's status as an insured arises, whether as a named insured within the policy or as a result of a *Scott-Pontzer* ambiguity, does not bear on the issue of the enforceability of conditions of the insurance contract. Once determined to be an insured, the validity of restrictions to or conditions of UIM/UDM coverage depends upon whether the UIM/UDM coverage arises by operation of law under R.C. 3937.18 or by contract.[6]

{¶104} In the case sub judice, the UIM/UDM coverage under Federal's commercial auto policy arises as a matter of contract. As such, I agree with the majority and trial court appellant's failure to comply with the notice and consent provisions relieve Federal from its obligation to pay under the UIM/UDM coverage in its business auto policy.

II

{¶105} I respectfully dissent from the majority's analysis and disposition of appellant's second assignment of error. I would sustain this assignment of error and reverse the trial court's decision no coverage exists under the Great Northern general commercial liability policy.

{¶106} In finding no UIM/UDM coverage existed, the trial court relied upon this Court's decision in *Cox v.*

---

[6]In this regard, I disagree with the conclusion reached by this Court in *Cox v. State Farm*, Licking App. No. 2001 CA 00117, 2002-Ohio-3076. Therein, this Court held because the appellant was a named insured within the general provisions of the commercial general liability policy, *Scott-Pontzer* did not apply and the policy provisions restricting coverage carry forward into the UIM/UDM coverage created by operation of law.

*State Farm*, Licking App. No. 2001CA00117, 2002-Ohio-3076.

{¶108} The trial court cited *Cox,* supra, for the proposition this Court has found the coverage afforded by the valet parking exception to be incidental coverage for a very specific circumstance; therefore, insufficient to convert a commercial liability policy into a motor vehicle liability policy. December 12, 2001 Judgment Entry at 7.

{¶109} The trial court's reliance upon *Cox* for this proposition is in error. In fact, *Cox* found the valet parking exception did convert a commercial general liability policy into a motor vehicle policy for purposes of R.C. 3937.18. *Cox,* supra, at para. A-A-19. In *Cox*, this Court cited *Burkhart,* supra, at 9, with approval. In *Burkhart*, we reviewed a similar provision in a commercial general liability policy and concluded the policy expressly provided coverage, in a limited form, for motor vehicles. Id. at 9. As such, we found *Selander v. Erie Ins. Group*, 85 Ohio St.3d 541, 544, 1999-Ohio-287, 709 N.E.2d 1161, not *Davidson v. Motorists Mut. Ins. Co.,* 91 Ohio St.3d 262, 2001-Ohio-36, 744 N.E.2d 713, to be applicable.

{¶110} The majority concludes the "valet parking" provision in the Great Northern policy is not truly a motor vehicle provision but a property damage provision which does not pertain to any motor vehicle operation, but rather to coverage of the automobile body itself. Maj. Op. at 10. I disagree. The policy provides coverage for both bodily injury or property damage arising out of the parking of an auto on or next to the insureds premises provides said auto is not owned by, rented or loaned to such insured. The phrase "arising out of the parking of an auto" is capable of broad interpretation and would include autos required to be registered and intended to be operated on a public highway. Though this coverage is incidental to the commercial general liability policy, it nevertheless provides motor vehicle liability coverage.

{¶111} For the reasons set forth in *Burkhart* and *Cox*, I find the trial court erred in its determination the Great Northern policy was not a motor vehicle liability policy pursuant to *Selander*. I further find UIM/UDM coverage arose by operation of law because Great Northern failed to comply with the mandates of R.C. 3937.18,

{¶112} Having determined the Great Northern policy provides UIM/UDM coverage by operation of law, I now turn my attention to the question of who was an insured under the policy. The policy defines an insured in four ways. These insureds included an individual in a sole proprietor context, a partner in a partnership context, and a corporation in an "organization other than a partnership." Additionally, this

section indicates employees are also "an insured."

{¶114} In its December 12, 2001 Judgment Entry, the trial court found *Cox* to be controlling in reaching its decision appellant was not an insured under the policy because he was not acting within the scope of his employment at the time of the accident.

{¶115} In *Cox,* this Court found Wayne Cox was an insured within the general provisions of the policy regardless of *Scott-Pontzer. Cox* at para. A - A23. Because it found *Scott-Pontzer* did not apply, the Cox Court found the provisions which excluded coverage in the liability portion of the policy carried forward into the UIM/UDM coverage arising by operation of law, pursuant to a *Selander* analysis. I believe this portion of the *Cox* decision was wrongly decided, although the result reached therein was correct because the commercial general liability policy in Cox did not extend to family members of employees.

{¶116} Based upon the policy definition of who is an insured set forth above, I find a *Scott-Pontzer* ambiguity exists in the Great Northern policy. The definition of an insured states "Who is an Insured: 1. If you are 'an organization other than a partnership or joint venture, you are an insured.'" This language is sufficiently similar to the language in *Scott-Pontzer* to create an ambiguity creating UIM/UDM coverage by operation of law for the corporation. As in *Scott-Pontzer*, because a corporation cannot suffer personal injury, it is only reasonable to conclude the "you", when  referring to the corporation, also includes the corporation's employees, because "the corporation can act only by and through real live persons." "It would be nonsensical to limit protection solely to the corporate entity, since the corporation, itself, cannot occupy an automobile, suffer bodily injury or death, or operate a motor vehicle." *Scott-Pontzer,* supra at 664. "[N]aming the corporation as an insured is meaningless unless the coverage extends to some person or persons - - including to the corporations employees." Id. As did the Supreme Court in *Scott-Pontzer,* we find the use of the language "Who is an Insured * * * If you are: c. [a corporation], you are an insured" creates the same ambiguity examined in *Scott-Pontzer.* For a similar result see, e.g., *Burkhart, supra,* and *Hopkins v. Dyer*, Tuscarawas App. Nos. 2001AP080087 and 2001AP080088, 2002-Ohio-1576.

{¶117} There is another provision in the "Who is an insured" portion of the Great Northern policy which defines "your employees" as insureds. Accordingly, the next question to address is whether the inclusion of individual insureds destroys the ambiguity created through the corporate "you" language discussed, supra. I find that it does not.

{¶118} This Court has addressed this issue in both *Burkhart* and *Hopkins,* supra. In each of those cases, the policies provided named individuals in addition to the corporate "you" language. Although the policy in the matter sub judice does not contain the names of specific individuals, the inclusion of different classes of individual insureds does not act to destroy the ambiguity created by the corporate "you" language. I would adhere to our previous decisions and for the reasons stated therein, and find the trial court erred in its determination no ambiguity existed in the provisions defining insureds. See also, *Morgenstern v. Cincinnati Ins. Co.*, Delaware App. No. 01CA-E-12-065, 2002-Ohio-4049.    I further note appellant herein would be an insured even without the *Scott-Pontzer* ambiguity. In *Butcher v. Lewis,* supra, this Court again refused to carry over restrictions to coverage contained in a commercial general liability policy to UIM/UDM coverage which arose by operation of law. In *Butcher*, like the matter sub judice, the comprehensive general liability policy included within the definition of an insured, "employees who are acting within the scope of their employment." Id. at 4. After an extensive analysis of *Scott-Pontzer*, this Court found the analysis contained therein to be applicable, notwithstanding the factual distinctions.

{¶119} In *Butcher,* because the UIM/UDM coverage arose by operation of law, we found the language in the commercial general liability policy, limiting coverage to employees acting within the scope of their employment to be inapplicable. See, also, *Brodbeck v. Continental Cas. Co.*, Lucas App. No. L-01-1269, 2002-Ohio-532 (holding: "pursuant to the *Scott-Pontzer* doctrine, * * * the scope of employment exclusion applies solely to excess liability coverage and not to UIM coverage that has arisen by operation of law.").

I find the limitation on coverage contained in the definition itself not to be of significant difference from a separate restriction to coverage set forth in a different area of the policy listing exclusions. The fact the restriction is contained in the definition has no bearing on whether the restrictions carry over to UIM/UDM coverage arising by operation of law. This is in accord with the analysis contained in *Demetry*, cited with approval by the Ohio Supreme Court in *Scott-Pontzer*. *Scott-Pontzer*, supra at 666. Because the parties did not contemplate UIM/UDM coverage, they could not have contemplated any restrictions applying to UIM/UDM coverage arising by operation of law.

{¶120} In other words, having found UIM/UDM coverage arose by operation of law pursuant to *Selander*, I also find appellant was an insured. This is so either because of the *Scott-Pontzer* ambiguity or because appellant qualifies under the employee provision in the "WHO IS AN INSURED" section. As the restrictions and conditions contained in the underlying policy do not apply to UIM/UDM coverage arising by

operation of law, appellant was an insured entitled to UIM/UDM coverage.

III

{¶122} I concur in the majority's disposition and generally concur in its analysis of appellant's third assignment of error.

{¶123} However, I believe there is a significant difference between finding no coverage exists as opposed to finding the insurer is relieved of its obligation to pay pursuant to that coverage because of failure to comply with notice and consent to settlement provisions.[7]  Coverage arises prior to the insureds obligation to provide notice or secure the insurer's consent to any settlement.  Failure to do so by the insured does not negate one's status as an insured but rather relieves the insurer of its obligation to pay.

IV, V

{¶124} I fully concur in the majority's analysis and disposition of appellant's fourth and fifth assignments of error.

VI

{¶125} I respectfully dissent from the majority's analysis and disposition of appellant's sixth assignment of error.

{¶126} The majority's disposition is premised, in part, upon its conclusion in appellant's third assignment of error appellant is not entitled to coverage under the Northbrook business auto policy because he failed to abide by its terms.  The majority's disposition is also premised, in part, upon its conclusion in appellant's fourth assignment appellant was not insured under the St. Paul Mercury commercial general liability policy.

{¶127} While I agree appellant's failure to qualify as an insured under St. Paul Mercury's commercial general liability policy precludes him from acquiring the status of an insured under the St. Paul Fire umbrella policy based on a vertical comparison between those two policies,[8] I find the majority's premise

---

[7]This distinction becomes important to my reason for dissenting from the majority's disposition of appellant's sixth assignment of error, infra.

[8]I emphasize the vertical relationship between the St. Paul Mercury and St. Paul Fire umbrella policy because I find appellant's status as an insured under the St. Paul Fire umbrella policy arises from its own terms, independently of or horizontally from the St. Paul policy.  See my decision, infra.

for concluding appellant is not entitled to protection under the Northbrook business auto policy does not impact his status as an insured thereunder for the reason set forth in my discussion of appellant's third assignment of error, supra.

{¶129} In appellant's sixth assignment of error, he maintains the trial court erred in granting summary judgment to St. Paul Fire with regard to the excess umbrella policy St. Paul Fire issued to Timken Mercy Medical Center. Specifically, appellant argues the trial court erred in finding the UIM/UDM coverage which arose by operation of law under the umbrella policy was invalidated as a result of appellant's failure to give St. Paul prompt notice of his claim. I agree.

{¶130} In its December 12, 2001 Judgment Entry, the trial court found appellant was an insured pursuant to the policy. However, the trial court also found appellant was not entitled to UM/UIM coverage under the umbrella policy because appellant had failed to provide timely notice of his UM/UIM claim. I disagree with the trial court and the majority the St. Paul Fire umbrella policy did not provide coverage to appellant.

{¶131} Unlike the majority, the trial court found appellant was an insured under the umbrella policy on the basis of the following language:

{¶132} "Who Is Protected For Auto-Related Claims.

{¶133} "This section describes who is protected for claims arising out of the use of autos.

{¶134} "You.

{¶135} "Protected persons under your Basic Insurance. We'll protect any other person or organization who is protected under your Basic Insurance subject to the same coverage limitations as your Basic Insurance."

{¶136} The trial court found the use of the word "you" in the above quoted section to be an ambiguity similar to *Scott-Pontzer*. Accordingly, the trial court found "you" could include appellant as an insured. I agree.

{¶137} In addition to protected persons covered under Timken Mercy Medical Center's Basic Insurance, the umbrella policy also specifically provided coverage for "a member of an employee's household", but only "while using with your permission an auto you own, rent or borrow" See pgs. 4 and 5 of Umbrella/Excess Liability Protection, Form 43942, of the St. Paul Fire policy. Accordingly, I find liability coverage was extended to household members of employees of Timken Mercy Medical Center, albeit to

a limited extent, in the umbrella policy itself. Under this provision, appellant's status as an insured in not dependent upon whether he is an insured under either the Northbrook or St. Paul Mercury liability policies.

{¶139} Because UIM/UDM coverage was not offered with the St. Paul Fire umbrella coverage, it arises by operation of law pursuant to R.C. 3937.18. As set forth in my discussion of appellant's first and second assignments of error, restrictions to or conditions of coverage in the liability policies do not apply where UIM/UDM coverage arises by operation of law.

{¶140} I find the trial court erred in concluding no coverage existed under the St. Paul Fire's umbrella policy.

VII

{¶141} I respectfully dissent from the majority's disposition of appellant's seventh assignment of error.

{¶142} In appellant's seventh assignment of error, he maintains the trial court erred in granting summary judgment to State Farm. Specifically, appellant asserts the trial court should have found UIM/UDM coverage arose by operation of law pursuant to the homeowner's insurance policy which covered appellant. At issue herein is a provision in the homeowner's policy which provides coverage for injuries to a "residence employee."

{¶143} This Court has previously addressed the issue of whether the residence employee provision in a homeowner's policy could be construed so as to provide UIM/UDM coverage. See, e.g., *Mattox v. Allstate Ins. Co.*, Stark App. No.2001CA218, 2002-Ohio-1453. In each instance, this Court found the residence employee provision contained in a homeowner's policy to be insufficient to create coverage for "motor vehicle liability"requiring an offer of UIM/UDM coverage pursuant to R.C. 3937.18.

{¶144} In *Davidson v. Motorists Mut. Ins. Co.* (2001), 91 Ohio St.3d 262, the Ohio Supreme Court held: "A homeowner's insurance policy that provides limited liability coverage for vehicles that are not subject to motor vehicle registration and that are not intended to be used on a public highway is not a motor vehicle liability policy and is not subject to the requirement of former R.C. 3937.18 to offer uninsured and underinsured motorist coverage." Id. at 269.

{¶145} In so holding, the *Davidson* Court reaffirmed the holding in *Selander v. Erie Ins. Group* (1999), 85 Ohio St.3d 541, but made a distinction between the policies at issue in *Selander* and *Davidson*. In *Selander*, the Court reviewed a commercial general liability policy, which specifically provided coverage for

injuries for accidents involving "hired" or "non-owned" automobiles. In contrast, the homeowner's policy at issue in *Davidson* did not include coverage for liability arising out of the use of motor vehicles generally. Rather, the policy only provided incidental coverage to a narrow class of motorized vehicles which were not subject to motor vehicle registration, and were designed for off-road use or use around an insured's property. [9]   The *Davidson* court analyzed the differences between the policies and found the policy in *Selander* to be an automobile liability or motor vehicle policy because there was express liability coverage arising from the use of automobiles.

{¶147} The *Davidson* court stated: "* * * [I]t makes perfect sense to allow UM/UIM coverage in *Selander* but to restrict recovery under a homeowner's policy that provides incidental coverage for a very limited class of motorized vehicles that are neither subject to motor vehicle registration nor designed to be used on a public highway.

{¶148} "* * *

{¶149} "It makes perfect sense, then, to include coverage in homeowner's policies for off-road and similar vehicles that are used around the insured premises but to limit UM/UIM coverage to vehicles designed for highway use. Common sense alone dictates that neither the insurer nor the insured bargained for or contemplated that such homeowner's insurance would cover personal injuries arising out of an automobile accident that occurred on a highway away from the insured's premises." Id. at 268-269.  (Emphasis added).

{¶150} The syllabus language of *Davidson* is clear.  The inclusion of coverage of vehicles which will not be registered and are not intended for use on public roads does not transform a homeowner's policy into a motor vehicle policy requiring the offer of UM/UIM coverage.  Because the policy at issue herein does, in fact, include a provision in the homeowner's policy which provides coverage for cars - cars registered with the bureau of motor vehicles and cars driven on public roads - the holding in *Davidson* is inapplicable. Given the above-quoted language of the court in *Davidson,* and the distinctions the Supreme Court drew between the policies involved in *Davidson* and *Selander,* I conclude the policy at issue sub judice falls

---

[9] "Although the policy in *Davidson* contained a residence employee exclusion, similar to the one in this case, the Supreme Court declined to decide the issue concerning the residence employee exclusion because it had not been argued to the lower courts in that case. See *Davidson*, at 265, fn. 2." *Lemm v. The Hartford*, (Oct. 4, 2001), 10th Dist., CA No. 01-AP-251, unreported.

within the Court's analysis in *Selander*. I note my agreement with the well-reasoned analysis by the Tenth District Court of Appeals in *Lemm v. The Hartford*, supra.

{¶152} Therefore, the appropriate test to apply is set forth in *Selander*: "Where motor vehicle liability coverage is provided, even in limited form, uninsured/underinsured coverage must be provided. ." *Selander* at 1161, 1163.

{¶153} The policy at issue is a homeowner's policy which provides coverage for liability arising from the use of automobiles which are subject to motor vehicle registration and designed for and used for transporting people on a public highway. The policy provides express liability coverage for damages arising from a motor vehicle accident when the injured party is the homeowner's residence employee, and the injury occurred in the course of that employment. Thus, it is a motor vehicle liability policy subject to the former R.C. 3937.18, requiring an insurer to offer UIM/UDM coverage.

{¶154} Accordingly, I would sustain appellant's seventh assignment of error.

JUDGE WILLIAM B. HOFFMAN