[Cite as *Agudo De Uzhca, Admr. v. Derham*, 2002-Ohio-1814.]                    1

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

MARIA R. AGUDO DE UZHCA,                    :
ADMINISTRATOR OF THE ESTATE
OF MANUEL UZHCA                                              :

        Plaintiff-Appellant                                      :        C.A.
                                                    CASE NO.   19106

                                                                              :
                                                    T.C. NO.  00 CV 05016

JEFFREY L. DERHAM, et al.                    :

        Defendants-Appellees                                      :

· · · · · · · · · ·

**O P I N I O N**

Rendered on the   5th   day of   April   , 2002.

· · · · · · · · · ·

MICHAEL R. THOMAS, Atty. Reg. No. 0011638, 301 S. Breiel Blvd., Middletown, Ohio 45044-4021
        Attorney for Plaintiff-Appellant

JAY CLINTON RICE, Atty. Reg. No. 0000349, 1501 Euclid Avenue, 6th Floor, Bulkley Building, Cleveland, Ohio 44115
        Attorney for Defendants-Appellees Great Northern Insurance Company and Federal Insurance Company

PETER J. STACKPOLE, Atty. Reg. No. 0072103 and ERIN STOTTLEMYER GOLD, Atty. Reg. No. 0070687, The 113 St. Clair Building, Cleveland, Ohio 44114
        Attorneys for Defendant-Appellee Liberty Mutual Insurance Company

· · · · · · · · · ·

WOLFF, P. J.

{¶1}    Maria R. Agudo de Uzhca ("Maria") appeals from a judgment of the Montgomery County Court o

Common Pleas, which granted summary judgment in favor of defendants  Great Northern Insurance Company

("Great Northern"), Federal Insurance Company ("Federal"), and Liberty Mutual Insurance Company ("Liberty

Mutual").

**{¶2}**    Maria's husband, forty-one-year-old Manuel Uzhca ("Manuel"), died on October 24, 1999 in an automobile

accident caused by Jeffrey Derham, who ran a red light and collided with Manuel.  Manuel was driving a Ford F-250

truck, which was owned by him.  Maria is the administrator of Manuel's estate.  Derham was insured by Central

Insurance Company under a policy with a liability limit of $100,000 per person.

**{¶3}**    At the time of the accident, Maria was employed by two restaurants, Bravo Restaurant, operated by Bravo

Development, Inc. ("Bravo"), and Cozumel's Restaurant, operated by Brinker International, Inc. ("Brinker").  Great

Northern insured Bravo pursuant to two policies: a business auto policy and a commercial general liability policy.

The business auto policy provided liability coverage with a limit of $1 million per accident and contained an "Ohio

Uninsured Motorists Coverage–Bodily Injury" Endorsement.  The commercial general liability policy provided

liability coverage with a limit of $1 million per occurrence.  Bravo was also insured by Federal under an umbrella

policy with $5 million in liability coverage.  Liberty Mutual insured Brinker pursuant to two policies: a business auto

policy and a commercial general liability policy.  The business auto policy contained a liability limit of $2 million

and provided uninsured motorist coverage endorsements for several states, not including Ohio.  The commercial

general liability policy contained a liability limit of $1 million.  Neither the Great Northern nor the Liberty Mutual

commercial general liability policies provided or offered uninsured motorist coverage.

**{¶4}**    Maria filed a complaint on October 24, 2000 against Derham, Great Northern, Federal, and Liberty Mutual.

On November 9, 2000, she filed an amended complaint and action for declaratory judgment regarding the five

insurance policies discussed *supra*.  She settled her claims against Derham for $100,000, the limit of his liability

insurance coverage.  Great Northern and Federal filed a joint motion for summary judgment on August 14, 2001.

Maria filed a motion for summary judgment against Great Northern and Federal on August 15.  Liberty Mutual also

filed a motion for summary judgment on August 15.  On August 29, Maria filed a motion for summary judgment

against Liberty Mutual.  All parties having filed motions for summary judgment, the trial court issued two decisions

on October 9, 2001, granting Great Northern/Federal's motion and granting Liberty Mutual's motion.

**{¶5}**    Maria appeals, raising five assignments of error.

**{¶6}**    I. THE TRIAL COURT ERRED BY REFUSING TO FOLLOW *SCOTT-PONTZER V. LIBERTY MUTUAL FIRE INSURANCE CO.* (1999), 85 Ohio St.3d 660 AND GRANTING THE MOTION FOR SUMMARY JUDGMENT OF DEFENDANT GREAT NORTHERN INSURANCE

COMPANY AS TO ITS BUSINESS AUTO POLICY.

{¶8}    Maria argues that the trial court erred in concluding that Manuel was not covered by the uninsured motoris

coverage of the Great Northern business auto policy.  This assignment of error presents three issues for our review:

(1) Was Manuel an "insured" under the policy?  (2) If so, is coverage excluded for Manuel in this factual situation

under the "other owned autos" exclusion?  and (3) Is the "other owned autos" exclusion enforceable?  The trial court

concluded that Manuel was not an insured and that, even if he were, there would be no coverage because the

exclusion applied.  The trial court did not address the third issue.

{¶9}    Our review of the trial court's decision to grant summary judgment is *de novo*.  See *Helton v. Scioto Cty.*

*Bd. of Commrs.* (1997), 123 Ohio App.3d 158, 162.  Civ.R. 56(C) provides that summary judgment may be granted

when the moving party demonstrates that (1) there is no genuine issue of material fact; (2) the moving party is

entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the nonmoving party,

reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the

motion for summary judgment is made.  See *State ex rel. Grady v. State Emp. Relations Bd.* (1997), 78 Ohio St.3d

181, 183; *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 65-66.

{¶10}   Our determination of the first issue is governed primarily by the Supreme Court of Ohio's decision in *Scott*

*Pontzer v. Liberty Mut. Fire Ins. Co.* (1999), 85 Ohio St.3d 660.  Initially, we note that Great Northern does not even

appear to argue in its brief that Manuel was not an insured pursuant to *Scott-Pontzer*.  However, as the trial court

decided the case on this basis, we will discuss whether Manuel was an insured under the policy.

{¶11}   The uninsured motorist portion of the policy states as follows:

{¶12}   B. Who Is An Insured?

{¶13}   1. You.

{¶14}   2. If you are an individual, any "family member."

{¶15}   3. Anyone else "occupying" a covered "auto" or a temporary substitute for a covered
"auto."  The covered "auto" must be out of service because of its breakdown, repair, servicing, loss
or destruction.

{¶16}   4. Anyone for damages he or she is entitled to recover because of "bodily injury"
sustained by another "insured."

{¶17}  This language is identical to the policy language in *Scott-Pontzer*. Also identical to *Scott-Pontzer* is the following definition: "Throughout this policy the words 'you' and 'your' refer to the Named Insured shown in the Declarations." The named insured shown in the declarations is Bravo.[1]

{¶18}  In interpreting the above policy language, the supreme court concluded that "you" could be interpreted to include employees of the corporation:

{¶19}  "[I]t would be reasonable to conclude that "you," while referring to [the corporation], also includes [the corporation's] employees, since a corporation can act only by and through real live persons. It would be nonsensical to limit protection solely to the corporate entity, since a corporation, itself, cannot occupy an automobile, suffer bodily injury or death, or operate a motor vehicle. Here, naming the corporation as the insured is meaningless unless the coverage extends to some person or persons–including the corporation's employees." *Scott-Pontzer*, 85 Ohio St.3d at 664.

{¶20}  As the policy language at issue in this case is identical to that in *Scott-Pontzer*, "you" includes Bravo' employees and therefore Maria. Thus, the definition of "Who Is An Insured" includes Maria and, under the second paragraph of that definition, her family members. Therefore, Manuel was an insured under the definition in the uninsured motorist section of the policy. The trial court held to the contrary, stating that a family member was not included as an insured under *Scott-Pontzer*. This decision ignores applicable supreme court precedent. See *Ezawa v. Yasuda Fire & Marine Ins. Co. of Am.* (1999), 86 Ohio St.3d 557, 558 (holding that the minor son of the insured's employee was entitled to underinsured motorist coverage under the insured's commercial automobile insurance policy pursuant to the reasoning in *Scott-Pontzer*). In fact, the trial court cited to the dissent in *Ezawa* to support its conclusion. The trial court erred in doing so. The reasoning of *Scott-Pontzer* clearly extends to family members of the insured under the express terms of the policy and under *Ezawa*. Furthermore, this court recently held to that effect in *Batteiger v. Allstate Ins. Co.* (Feb. 15, 2002), Miami App. No. 2001 CA 37, unreported. Therefore, we find that Manuel was an insured under the policy.

{¶21}  We now turn to the second issue: whether the insurance contract excluded coverage in this situation under

---

[1]  In *Scott-Pontzer*, the named insured was Superior Dairy, Inc., Pontzer's employer. *Scott-Pontzer*, 85 Ohio St.3d at 663.

the "other owned autos" exclusion. The trial court concluded that the exclusion applied to Manuel and that, as a result, Manuel was not covered under the policy. The applicable policy language excludes coverage for:

{¶23}  5. "Bodily injury" sustained by:

{¶24}  a. You while "occupying" or when struck by any vehicle owned by you that is not a covered "auto" for Uninsured Motorists Coverage under this Coverage Form;

{¶25}  b. Any "family member" while "occupying" or when struck by any vehicle owned by that "family member" that is not a covered "auto" for Uninsured Motorists Coverage under this Coverage Form; or

{¶26}  c. Any "family member" while "occupying" or when struck by any vehicle owned by you that is insured for Uninsured Motorists Coverage on a primary basis under any other Coverage Form or policy.

{¶27}  Manuel would be excluded, if at all, under paragraph b. He was a family member of Maria occupying a vehicle owned by that family member (him). The remaining issue is whether the vehicle he was occupying was a covered auto under the policy.

{¶28}  A covered auto for the purposes of the policy's uninsured motorist coverage is defined as "[o]nly those 'autos' you own." As stated above, the policy defines "you" as "the Named Insured shown in the Declarations." Maria argues that "you" is ambiguous throughout the policy and that, under *Scott-Pontzer*, "you" always includes a corporation's employees. In support of this argument, she cites *United Ohio Co. v. Bird* (May 18, 2001), Delaware App. No. 00 CA 31, unreported, which stated, "We find, based on our review of the case law, that the interpretation of the word 'you' must be applied consistently to all provisions of the contract." Thus, under Maria's argument, "you" includes Maria and Manuel; therefore, Manuel was occupying a vehicle owned by "you."

{¶29}  Great Northern argues that the holding of *Scott-Pontzer* should not be extended in this manner. *Scott Pontzer* held that "you" was ambiguous in the definition of "insured" in the uninsured motorist portion of the policy. The justification was that "[i]t would be nonsensical to limit protection solely to the corporate entity, since a corporation, itself, cannot occupy an automobile, suffer bodily injury or death, or operate a motor vehicle." *Scott-Pontzer*, 85 Ohio St.3d at 664. "You" as used in the definition of a covered auto does not present the same justification to include employees in the definition. A corporation can own automobiles; therefore, it is not

"nonsensical" to limit the definition of "you" in this portion of the policy to the named insured, Bravo.

{¶31}  We find Maria's argument to be persuasive.  If "you" is ambiguous in some parts of the policy, it i ambiguous in all parts of the policy. The policy gives "you" the same meaning throughout the policy.  We believe that a consistent interpretation of the word is preferable to ascribing it different meanings depending on where in the policy it appears.  Thus, "you" includes employees of the corporate insured wherever it appears in the policy. However, interpreting "you" to include the employees of Bravo (and therefore Maria) does not necessarily include Manuel.  In the uninsured motorist portion of the policy, the definition of "insured" expressly includes family members ("If you are an individual, any family member.").  We do not read *Scott-Pontzer* and *Ezawa* as including family members in the definition of "you" where the policy itself does not expressly include family members in its definition.  Rather, we read *Ezawa* as applying the definition of an insured, which includes family members, in the context of *Scott-Pontzer*'s definition of "you."  In contrast to the definition of an insured for uninsured motorist coverage, the definition of a covered auto does not expressly include family members.  Therefore, even though automobiles owned by Maria fall within  the definition of a covered auto, automobiles owned by Manuel do not. Manuel was thus driving an automobile that was not a covered auto.  Coverage in this situation is therefore excluded under the policy.

{¶32}  Having concluded that the exclusion would apply to exclude coverage in this case, we must now determine whether the exclusion is enforceable.  This requires looking at the 1994 supreme court case of *Martin v. Midwestern Group Ins. Co.* (1994), 70 Ohio St.3d 478, and H.B. 261, which, in revising R.C. 3937.18(J), purported to overrule *Martin*.

{¶33}  *Martin* held that:

{¶34}  "An automobile liability insurance policy provision which eliminates uninsured motorist coverage for persons insured thereunder who are injured while occupying a motor vehicle owned by an insured, but not specifically listed in the policy, violates R.C. 3937.18 and is therefore invalid.": *Martin*, 70 Ohio St.3d at paragraph three of the syllabus.

{¶35}  *Martin* was interpreting the pre-H.B. 261 version of R.C. 3937.18. However, the section at issue in *Martin* (A)(1), still appears in H.B. 261 and is virtually identical in all respects to the prior version. R.C. 3937.18(A)(1), as it read at the time relevant to the case *sub judice*,[2] provides:

**{¶36}** (A) No automobile liability or motor vehicle liability policy of insurance insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless both of the following coverages are offered to persons insured under the policy due to bodily injury or death suffered by such insureds:

**{¶37}** (1) Uninsured motorist coverage * * *.

**{¶38}** (2) Underinsured motorist coverage * * *.

**{¶39}** *Martin* interpreted this language to prohibit "other owned auto" exclusions in insurance contracts. Thus under *Martin*, the exclusion in the Great Northern policy would be invalid.

**{¶40}** However, H.B. 261 was designed to supersede the holding of *Martin*. It added R.C. 3937.18(J), which provided:

**{¶41}** "The coverages offered under division (A) of this section or selected in accordance with division (C) of this section may include terms and conditions that preclude coverage for bodily injury or death suffered by an insured under any of the following circumstances:

**{¶42}** "(1) While the insured is operating or occupying a motor vehicle owned by, furnished to, or available for the regular use of a named insured, a spouse, or a resident relative of a named insured, if the motor vehicle is not specifically identified in the policy under which a claim is made, or is not a newly acquired or replacement motor vehicle covered under the terms of the policy under which the uninsured and underinsured motorist coverages are provided; * * *"

**{¶43}** Maria argues that R.C. 3937.18(J) did not completely supersede *Martin*. She notes that *Martin* invalidated the "other owned auto" exclusion with respect to vehicles owned by an "insured." R.C. 3937.18(J) on the other hand permits such exclusions only with respect to vehicles owned by a "named insured" or a spouse or resident relative of a named insured. Maria contends that there is a distinction between a named insured and an insured, see *Hillyer v. State Farm Mut. Auto Ins. Co.* (1999), 131 Ohio App.3d 172, 177, and that the only named insured is Bravo.[3] Because R.C. 3937.18(J) only mentions vehicles owned by a named insured, Maria argues that *Martin* still applies to

---

[2] R.C. 3937.18 has since been amended again to respond to *Scott-Pontzer* and its progeny.

[3] We recognize that this is inconsistent with her argument in the second issue that, when "you" is defined as the named insured, that definition includes employees and their family members.

situations where the vehicle is owned by any other insured and that *Martin* prohibits such an exclusion.

{¶45}   Great Northern argues that R.C. 3937.18(J) did completely supersede *Martin*.[4]  It gives no explanation fo the statute's use of the term "named insured" in place of "insured," but instead argues that Manuel was "a spouse, or a resident relative of a named insured" under *Scott-Pontzer*.[5]   Essentially, Great Northern argues that "you" is defined by the policy as the "named insured" and by *Scott-Pontzer* to include employees.   Therefore, "named insured" equals "you" equals Maria.  Manuel, an insured under *Scott-Pontzer*, was occupying a vehicle owned by "a spouse, or a resident relative of a named insured [Manuel]," and the exclusion would therefore be enforceable.

{¶46}   We agree with Maria that the statute has apparently failed to address the enforceability of "other owne auto" exclusions where the vehicle is owned by an insured other than the named insured.  Under the plain meaning of the statute, therefore, "other owned auto" exclusions are permissible only when the auto is owned by the named insured.   Thus, we must decide whether Maria was a named insured, which would make Manuel "a spouse, or a resident relative of a named insured."  As above, the resolution turns on how we interpret "you" in portions of the policy other than the uninsured motorist coverage.  Again, we must be consistent in our interpretation of the word "you."  If "you" is ambiguous in some portions of the policy, then it is ambiguous throughout the policy, and we will therefore apply a consistent interpretation of the word.   "You" includes employees of the corporate insured regardless of where it appears in the policy.  Because "you" and "named insured" are synonymous under the policy, Maria is a named insured.  Manuel is therefore "a spouse, or a resident relative of a named insured," and the exclusion is enforceable as to Manuel under R.C. 3937.18(J)(1).

---

[4]  Great Northern cites to *Baughman v. State Farm Mut. Auto Ins. Co.* (2000), 88 Ohio St.3d 480, 484, for the proposition that R.C. 3937.18(J) superseded *Martin*.  In *Baughman*, the supreme court discussed R.C. 3937.18(J) in the context of a class action suit and noted that "appellants now concede that '[t]he period in question ends 9/2/97 due to an amendment to R.C. 3937.18, whereby the legislature superseded this Court's holding in *Martin* and made the "other owned vehicle" exclusions enforceable once more.'" *Id*. However, the court in *Baughman* was not faced with the same situation or arguments that confront us now.

[5]  Great Northern's argument here is also inconsistent with its argument in the second issue that "you" should not be interpreted to include employees outside of the uninsured motorist provisions of the policy and that, even if it were, there is no justification to extend it to family members.

{¶47} We conclude that the trial court erred in finding that Manuel was not an insured under the policy, but tha the trial court was correct in its determination that Manuel was excluded from coverage under the "other owned auto" exclusion. We further conclude that the "other owned auto" exclusion is enforceable under R.C. 3937.18(J)(1).

{¶48} The first assignment of error is overruled.

{¶49} II. THE TRIAL COURT ERRED IN RULING THAT PLAINTIFF IS NOT COVERED BY UNINSURED/UNDERINSURED MOTORIST PROTECTION THROUGH DEFENDANT-APPELLEE FEDERAL INSURANCE COMPANY'S EXCESS-UMBRELLA POLICY.

{¶50} Under this assignment of error, Maria argues that the trial court erred in finding that Manuel was no covered under the Federal umbrella insurance policy. The Federal umbrella policy provides excess coverage to the Great Northern business auto policy: "[I]f the underlying insurance does not cover loss, * * * then we will not cover such loss." The trial court found, and both Maria and Federal agree, that coverage under the umbrella policy flows from coverage under the business auto policy. If there is no coverage under the business auto policy, then there is no coverage under the umbrella policy. Because we have concluded that there was no coverage under the business auto policy, we conclude that there was no coverage under the umbrella policy.

{¶51} The trial court decided this issue based on the same flawed reasoning discussed above–that Manuel was no an insured. This decision was error on the part of the trial court. However, the trial court was ultimately correct in its conclusion that there was no coverage under the business auto policy and was therefore also correct in concluding that there was no coverage under the umbrella policy.

{¶52} The second assignment of error is overruled.

{¶53} III. THE TRIAL COURT ERRED IN RULING THAT PLAINTIFF IS NOT COVERED BY UNINSURED/UNDERINSURED MOTORIST PROTECTION THROUGH DEFENDANT-APPELLEE GREAT NORTHERN INSURANCE COMPANY'S GENERAL LIABILITY POLICY.

{¶54} Maria argues that the trial court erred in concluding that the Great Northern commercial general liabilit policy was not an "automobile liability or motor vehicle liability policy of insurance" and was therefore not subject to the requirement that it offer uninsured motorist coverage to the insured. This "mandatory offering" requirement is contained in R.C. 3937.18(A), quoted *supra* under our discussion of the first assignment of error, and provides

uninsured motorist coverage by operation of law where there has not been an offering and a written rejection by the insured.

{¶56}   An "automobile liability or motor vehicle liability policy of insurance" means:

{¶57}   (1) Any policy of insurance that serves as proof of financial responsibility as defined by division (K) of section 4509.01 of the Revised Code, for owners or operators of the motor vehicles specifically identified in the policy of insurance.

{¶58}   (2) Any umbrella liability policy of insurance written as excess over one or more policies described in division (L)(1) of this section. R.C. 3937.18(L). R.C. 4509.01(K) defines "proof of financial responsibility" as "proof of ability to respond in damages for liability."

{¶59}   Great Northern's commercial general liability policy provides several types of coverage: property insurance, general liability insurance, and crime insurance for various offenses. It does not specifically identify any motor vehicles. In fact, it specifically excludes coverage for "bodily injury or property damage arising out of the ownership, maintenance, use, operation, loading or unloading, or entrustment to others of any * * * auto." However, the exclusion does not apply to: "[P]arking an auto on, or on the ways next to, premises you own or rent, provided the auto is not owned by or rented or loaned to you or the insured." Maria argues that this exception to the exclusion constitutes liability coverage such that the commercial general liability policy is an "automobile liability or motor vehicle liability policy of insurance." We disagree.

{¶60}   The very language of the policy makes clear that it is not designed to provide proof of financial responsibility for any automobile. It excludes liability coverage for automobiles, and the exception to that exclusion specifies that it only covers parking of automobiles on the insured's property if those automobiles are not owned by the insured. Furthermore, the policy does not provide liability insurance with respect to any vehicles "specifically identified in the policy of insurance" as required by R.C. 3937.18(L)(1). Therefore, it does not, as required by the statute "serve[] as proof of financial responsibility * * * for owners or operators of the motor vehicles specifically identified in the policy of insurance." It does not serve as proof of financial responsibility for owners or operators of any vehicle at all.

{¶61}   Maria relies on *Selander v. Erie Ins. Group* (1999), 85 Ohio St.3d 541, to support her argument that the Great Northern commercial general liability policy is an "automobile liability or motor vehicle liability policy of

insurance." *Selander* involved a commercial general liability policy that excluded coverage for liability arising from the use of automobiles but provided coverage for claims arising from the use of "non-owned" or hired automobiles used in the insured's business. The *Selander* court rejected the argument that the policy was not issued with respect to any particular motor vehicle and stated that "[t]he fact that a policy provides liability coverage for non-owned and hired motor vehicles is sufficient to satisfy the requirement of R.C. 3937.18 that a motor vehicle liability policy be delivered in this state with respect to any motor vehicle registered or principally garaged in this state." *Id.* at 544-45.

{¶63}  *Selander* is distinguishable in several ways. First, *Selander* was interpreting a previous version of the statute that did not include the R.C. 3937.18(L) definition of an "automobile liability or motor vehicle liability policy of insurance." That change limited the definition by requiring that "the proof of financial responsibility provided by the policy must be for owners or operators of the motor vehicles specifically identified in the policy." *Jump v. Nationwide Mut. Ins. Co.* (Nov. 2, 2001), Montgomery App. No. 18880, unreported. While *Selander* and other cases cited by Maria, see *Speelman v. Motorist Mut. Ins. Co.* (Dec. 22, 1995), Montgomery App. No. 15362, unreported, held that the policy did not have to be issued with respect to specific vehicles, these cases were decided prior to H.B. 261, which added the definition of "automobile liability or motor vehicle liability policy of insurance" quoted *supra*. Thus, H.B. 261 superseded these holdings and requires that the policy provide proof of financial responsibility for some specific vehicles identified in the policy. See *Jump, supra*. The Great Northern policy does not identify any vehicles and is therefore not an "automobile liability or motor vehicle liability policy of insurance."

{¶64}  Furthermore, the policy does not, as did the policy in *Selander*, provide coverage for non-owned or hired vehicles. It provides coverage only for the parking of vehicles not owned by the insured. In *Davidson v. Motorists Mut. Ins. Co.* (2001), 91 Ohio St.3d 262, 267, the supreme court distinguished *Selander* and noted that it expressly provided for coverage for "automobiles that were used and operated on public roads." While the Great Northern policy may provide limited coverage for automobiles that can be used on public roads, it expressly does not provide coverage for such use, but only for vehicles that are being parked and that are not owned by the insured.

{¶65}  The Great Northern commercial general liability policy does not provide proof of financial responsibility for any automobiles. Therefore, we find that the trial court did not err in concluding that the Great Northern

commercial general liability policy was not an "automobile liability or motor vehicle liability policy of insurance." Accordingly, Great Northern was not required to offer uninsured motorist coverage to Bravo under R.C. 3937.18(A)(1).

{¶67}   The third assignment of error is overruled.

{¶68}   IV. THE TRIAL COURT ERRED IN GRANTING THE MOTION FOR SUMMARY JUDGMENT OF DEFENDANT-APPELLEE LIBERTY MUTUAL INSURANCE COMPANY AS TO ITS BUSINESS AUTO POLICY.

{¶69}   The Liberty Mutual business auto policy provides uninsured motorist endorsements for several states, none of which are Ohio. Maria relies on the language of the Texas endorsement to argue that Manuel was covered as an insured under the policy. In the alternative, Maria argues that coverage should be imposed by operation of law under R.C. 3937.18(A).

{¶70}   The Texas uninsured motorist endorsement contains the following definition of an insured:

{¶71}   **C. WHO IS AN INSURED**

{¶72}   1. You and any **designated person** and any **family member** of either.

{¶73}   2. Any other person **occupying a covered auto**.

{¶74}   3. Any person or organization for damages that person or organization is entitled to recover because of **bodily injury** sustained by a person described in 1. or 2. above.

{¶75}   (Emphasis *sic*). "You" is defined as "the person or organization shown as the named insured in ITEM ONE of the declarations." The named insured is Brinker. If we apply Ohio law, *Scott-Pontzer* defines "you" to include employees. Therefore, Maria would be an insured, and Manuel would be an insured as her family member. The trial court concluded that, while Maria would be an insured under this policy, Manuel would not. Thus, as in the first assignment of error, the trial court erred in this conclusion.

{¶76}   Also as in the first assignment of error, the trial court determined that Manuel would be excluded from coverage under the policy. The policy excludes coverage:

{¶77}   For **bodily injury** sustained while **occupying**, or when struck by any motor vehicle or a **trailer** of any type owned by you, a **designated person** or a **family member** of either which is not insured for coverage under this policy.

{¶78}   (Emphasis *sic*.)  Manuel would be excluded under this provision.  Maria does not argue otherwise.

{¶79}   Maria also argues that we should impose uninsured motorist coverage by operation of law under R.C 3937.18(A).  However, that statute does not apply to the policy at issue as it was not delivered or issued for delivery in Ohio and was not delivered with respect to any vehicle registered or principally garaged in Ohio.  R.C. 3937.18(A) provides:

{¶80}   No automobile liability or motor vehicle liability policy of insurance insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle *shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state* unless both of the following coverage are offered to persons insured under the policy due to bodily injury or death suffered by such insureds:

{¶81}   (1) Uninsured motorist coverage * * *.

{¶82}   (2) Underinsured motorist coverage * * *.

{¶83}   (Emphasis added.)  The supreme court has held R.C. 3937.18 applies to insurance policies that are no delivered or issued for delivery in Ohio where the policies cover vehicles registered and principally garaged in Ohio. See *Henderson v. Lincoln Natl. Specialty Ins. Co.* (1994), 68 Ohio St.3d 303, 303.  However, in the case *sub judice*, we have an insurance policy that was not delivered or issued for delivery in Ohio and also covers no vehicles registered or principally garaged in Ohio.  In this case, we agree with the decision of the Ross County Court of Appeals:

{¶84}   By its express language, R.C. 3937.18(A) applies only to automobile insurance policies "delivered or issued * * * *with respect to* any motor vehicle registered or principally garaged *in this state* * * *." (Emphasis added.)  The Ohio Supreme Court has interpreted R.C. 3937.18(A) to apply to insurance policies delivered out of state, but which cover vehicles registered or principally garaged in Ohio.  *Henderson v. Lincoln Natl. Specialty Ins. Co.* (1994), 68 Ohio St.3d 303, 626 N.E. 2d 657.  However, R.C. 3937.18(A) has not been applied to an automobile insurance policy delivered out of state for vehicles registered and garaged out of state at the time of the policy's delivery. * * * R.C. 3937.18(A) is simply inapplicable to the * * * policy in this case.  *McGuire v. Mills* (Aug. 30, 1999), Ross App. No. 98CA2462, unreported.

{¶85}   Therefore, we conclude that the trial court, although incorrect in its determination that Manuel was not a insured, was correct in finding that he was excluded from coverage under the policy and was correct in finding that R.C. 3937.18(A) did not apply to the policy at issue.

{¶86}   The fourth assignment of error is overruled.

{¶87}  V. THE TRIAL COURT ERRED IN GRANTING THE MOTION FOR SUMMARY JUDGMENT OF DEFENDANT-APPELLEE LIBERTY MUTUAL INSURANCE COMPANY AS TO ITS COMMERCIAL GENERAL LIABILITY POLICY.

{¶88}  Under this assignment of error, Maria argues that coverage should be extended to Manuel by operation o

law under R.C. 3937.18(A) because the Liberty Mutual commercial general liability policy is an "automobile or

motor vehicle liability policy of insurance." As we discussed in the preceding assignment of error, R.C. 3937.18(A)

does not apply to the Liberty Mutual polices; therefore, we will not extend coverage under that statute. Furthermore,

even if the statute applied, the policy is not an "automobile or motor vehicle liability policy of insurance" for the

same reasons discussed under the third assignment of error with respect to the Great Northern commercial general

liability policy. The trial court concluded to this effect, and we find that it did not err in doing so.

{¶89}  The fifth assignment of error is overruled.

{¶90}  The judgment of the trial court will be affirmed.

. . . . . . . . . .

BROGAN, J., and YOUNG, J., concur.

Copies mailed to:

Michael R. Thomas
Jay Clinton Rice
Peter J. Stackpole
Erin Stottlemeyer Gold
Hon. John P. Petzold