[Cite as *Jones v. Gue*, 2003-Ohio-358.]        1

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

ROOSEVELT JONES, et al.

    Appellants

v.

JASON T. GUE, et al.

    Appellees/Cross-Appellants
C.A. Nos.    21118
              21136


APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CV 2000 08 3837

decision and journal entry

Dated: January 29, 2003
      This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:


      BATCHELDER, Judge.

    {¶1}    Appellant, Roosevelt Jones, fiduciary, appeals from a judgment of the Summit County Court of Common Pleas that granted summary judgment to appellees, Universal Casualty Company ("Universal") and National Union Insurance Company of Pittsburgh, PA ("National"), on claims of his daughter's estate for underinsured motorist coverage. Cross-appellants, Elbert and Theresa Gary, appeal from the same judgment of the trial court that also granted summary judgment to National on their claims for coverage. We affirm in part and reverse in part.

    {¶2}    This case stems from the fatalities of Sabra Gary and her nine-year-old daughter, Ambra Jones, that resulted from two traffic accidents on December 5, 1998. Gary was driving a vehicle southbound on Interstate 271, with her daughter Ambra and Darling Hatcher, the vehicle's owner, as passengers. Gary lost control of the vehicle, left the roadway, and landed in the median. A second collision occurred when Gary and Ambra, then outside the vehicle on the grassy median, were struck by another vehicle. The driver of that vehicle, Jason Gue, had apparently become impatient waiting in the stopped traffic caused by the first collision and decided to drive down the median. He struck Gary and Ambra, causing fatal injuries to both of them.

    {¶3}    Although this case initially involved numerous parties and claims, because only a few of them are at issue in this appeal, we will confine our recitation of the facts to those parties and claims. This lawsuit

was commenced by Roosevelt Jones, as Ambra's father and as administrator of her estate, against the alleged tortfeasors and various insurance carriers. Elbert and Theresa Gary, Sabra Gary's parents ("Gary's parents"), later filed claims as third-party plaintiffs, seeking to recover on behalf of Sabra Gary's estate and for the injuries that they sustained due to Gary's death. The parties do not dispute that Jason Gue, the driver who caused the fatalities, did not carry sufficient liability insurance to cover the parties' injuries and, therefore, was an underinsured motorist.

{¶5} The coverage disputes in this appeal involve whether the underinsured motorist coverage ("UIM coverage") under two particular policies of insurance extends to these plaintiffs. The only policies involved in this appeal are the following. The first policy at issue is a commercial umbrella liability policy that Gary's employer, Ernst and Young, held with National. There is no dispute at this point that, although the policy does not explicitly provide UIM coverage, such coverage will be imposed by operation of law, pursuant to the line of reasoning set forth by the Ohio Supreme Court in *Scott-Pontzer v. Liberty Mutual Fire Ins. Co.* (1999), 85 Ohio St.3d 660. There is also no dispute that Gary, as an employee of Ernst and Young, was covered by the UIM insurance. The issue in this appeal is whether the umbrella policy also provided UIM coverage for her family members, Ambra and Gary's parents.

{¶6} The second policy is an automobile insurance policy that Jones held with Universal. The policy included UIM coverage by its explicit terms. The parties do not dispute that Illinois law governs the construction of the terms of the policy because Jones was a resident of Illinois, the policy was issued in Illinois, and Jones's vehicle was licensed and garaged in Illinois. Jones, as the administrator of Ambra's estate, sought UIM coverage for his daughter Ambra, claiming that she was entitled to coverage as his "relative" under the terms of the policy. The Universal policy defines "relative" as "a relative of the named insured who is a resident of the same household." It was Jones's position that, although Ambra lived primarily with her mother in Ohio, she also resided with him at his home in Illinois during the summer and that the summer residence was sufficient to make her a "resident" of his household.

{¶7} National and Universal moved for summary judgment against these plaintiffs and the plaintiffs filed cross-motions for summary judgment. The trial court granted summary judgment to National and Universal against the plaintiffs and denied the cross-motions. Jones and Gary's parents separately appealed and the appeals were consolidated. To avoid confusion, Jones has been designated the appellant and Gary's parents have been designated the cross-appellants. Jones raises two assignments of error while Gary's parents raise one.

Assignment of Error I

{¶8} "THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT FOR NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA AND DENYING SUMMARY JUDGMENT FOR ROOSEVELT JONES ON THE ISSUE OF WHETHER AMBRA JONES WAS [] ENTITLED TO UIM COVERAGE UNDER THE NATIONAL UNION COMMERCIAL UMBRELLA LIABILITY POLICY."

Cross-Assignment of Error

{¶9} "THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT FOR NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA AND DENYING SUMMARY JUDGMENT FOR THERESA GARY AND ELBERT GARY ON THE ISSUE OF WHETHER THERESA GARY AND ELBERT GARY WERE ENTITLED TO UIM COVERAGE UNDER THE NATIONAL UNION COMMERCIAL UMBRELLA LIABILITY POLICY."

{¶10} We will address these assigned errors together because they involve the same issue, whether the UIM coverage imposed by operation of law under the National umbrella policy extended to Gary's family members, specifically her daughter Ambra and Gary's parents.

{¶11} Jones sought UIM coverage for Ambra and Gary's parents sought UIM coverage for their own injuries due to Gary's death under the National commercial umbrella policy. National moved for summary judgment on these claims, asserting that, although UIM coverage extended to Gary as an employee of the named insured, Ernst and Young, it did not extend to her family members. Jones and Gary's parents responded in opposition and filed cross-motions for summary judgment.

{¶12} Pursuant to Civ.R. 56(C), summary judgment is proper if:

{¶13} "(1) [N]o genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the nonmoving party." *State ex rel. Howard v. Ferreri* (1994), 70 Ohio St.3d 587,

589.

{¶15} The construction of an insurance contract, like the **construction of any written contract,** is a matter of **law.** Feldkamp v. USAA Ins. Co., 139 Ohio App.3d 118, 123. There is no dispute here that UIM coverage is imposed by law in the National umbrella policy and that such coverage extended to Gary, as an employee of Ernst and Young. See *Scott-Pontzer,* 85 Ohio St.3d at 666. The sole issue on summary judgment was whether such coverage also extended to her family members, Ambra and Gary's parents.

{¶16} Initially, this court must note that, although both parties suggest that this court made a legal determination on this issue in *Allen v. Johnson,* 9th Dist. Nos. 01CA0046 and 01CA0047, 2002-Ohio-3404, that is not correct. In *Allen v. Johnson,* this court did not reach the legal issue because the plaintiffs in that case did not satisfy their burden on summary judgment to "set forth specific facts showing that there is a genuine issue for trial." Id. at ¶¶ 17-18, quoting *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, quoting Civ.R. 56. Consequently, the parties' attempts to rely on *Allen v. Johnson,* or to distinguish it, are not persuasive because that case has no bearing on this issue.

{¶17} The parties made several legal arguments on this issue on summary judgement, asserting why UIM coverage should or should not extend to Gary's family members. This issue is complicated by the fact that, although the parties agree that the issue is controlled by the Supreme Court's holding in *Scott-Pontzer,* supra, the Supreme Court's opinion in *Scott-Pontzer* was devoted primarily to explaining why the plaintiff-employee was covered under his employer's primary commercial UIM coverage. Although the *Scott-Pontzer* court also concluded that he was covered under the umbrella policy, where UIM coverage was imposed by operation of law, it set forth almost no legal reasoning on that issue.

{¶18} This court will not extend the *Scott-Pontzer* line of reasoning any further than it must. That was one of the legal positions urged by National on summary judgment, and National pointed to an opinion of the United States District Court for the Southern District of Ohio, *Gibson v. New Hampshire Ins. Co.* (S.D.Ohio 2001), 178 F.Supp.2d 921. This court is persuaded by the following reasoning of that court:

{¶19} "The holding in Scott-Pontzer would appear to be limited to employees of the corporate insured. The rationale of Scott-Pontzer would not justify extending the definition of insured to include an employee's family members who have no connection with the corporate insured.

{¶20} "Plaintiff, however, points to the following language in the umbrella policy's definition of insured:

{¶21} "'2. Each of the following is also an "insured":

{¶22} "'e. Any other person or organization who is insured under any policy of "Underlying Insurance." The coverage afforded such "insureds" under this policy will be no broader than the "Underlying Insurance" except for this policy's "Limit of Insurance[.]"'

{¶23} "Plaintiff argues that since plaintiff and any members of his family are insureds under the UIM coverage of the commercial auto policy, which is a policy of 'underlying insurance,' then they are also covered under the umbrella policy by virtue of this provision. New Hampshire counters this argument by citing Scott-Pontzer for the proposition that provisions relating to liability coverage do not apply to UIM coverage when UIM coverage comes into existence in conjunction with a liability policy as a matter of law.

{¶24} "In Scott-Pontzer, the Supreme Court of Ohio refused to apply the scope of employment limitation of the umbrella policy to the UIM coverage stating:

{¶25} "'Any language in the Liberty Mutual umbrella policy restricting insurance coverage was intended to apply solely to excess liability insurance coverage and not for purposes of underinsured motorist coverage.' Scott-Pontzer, 85 Ohio St.

3d at 666.

{¶27} "It would seem to follow then that the provision relied upon by plaintiff would not apply to UIM coverage, because it was intended to apply solely to excess liability coverage. Further, inasmuch as the excess liability policy did not provide any UIM coverage, its reference to other persons or organizations insured in any policy of underlying insurance was intended to refer only to those persons or organizations insured in the liability coverage of any underlying policy. Plaintiff has not cited any provision in the liability coverage of the underlying policy that would extend the definition of insured to an insured's family members; instead, the provision plaintiff relies upon is part of the underlying policy's UIM coverage." Id. at 924.

{¶28} The *Gibson* court concluded by refusing to extend UIM coverage to family members because *Scott-Pontzer* did not require such a result. This court agrees. We are bound to follow the holding of *Scott-Pontzer* but, because its reasoning for finding that even the employee was covered under the umbrella policy is not clear, we are not inclined to make guesses and risk extending the reasoning any further.

{¶29} Some courts have extended the holding of *Scott-Pontzer* by construing language in the umbrella policy. See, e.g., *Fonseca v. Fetter* (June 15, 2001), Lucas C.P. No. CI 99-4712; *Cincinnati Ins. Co. v. Simpson* (Mar. 23, 2001), Wood C.P. No. 99 CV 302. As explained by *Gibson* above, such an approach is troublesome to this court because the umbrella policies in each of these cases, as well as the National policy at issue here, did not provide UM/UIM coverage under the terms of the policy; it was imposed by operation of law. Consequently, there is no reason to define the scope of that coverage by the express terms of the policy and, as explained above, *Scott-Pontzer* would suggest that such an approach is not proper.

{¶30} Because National demonstrated, as a matter of law, that Jones and Gary's parents could not establish that UIM coverage under the National umbrella policy extended to family members of employees of Ernst and Young, the trial court did not err in granting summary judgment to National on their coverage claims. The first assignment of error and the cross-assignment of error are overruled.

Assignment of Error II

{¶31} "THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT FOR UNIVERSAL CASUALTY COMPANY ON THE ISSUE OF WHETHER AMBRA JONES WAS AN 'INSURED' UNDER THE PERSONAL LIABILITY POLICY ISSUED TO ROOSEVELT JONES."

{¶32} Jones contends that the trial court erred in determining that Ambra was not an insured for purposes of the UIM coverage under his Universal automobile liability policy. As indicated above, the parties do not dispute that: (1) Jones held an automobile insurance policy with Universal at the time of the accidents; (2) the terms of the policy are construed according to Illinois law; and (3) the policy provided UIM coverage by its explicit terms and such coverage extended to Jones, as the named insured, and to "any relative of the named insured."

{¶33} The sole dispute on appeal is whether Ambra qualified as Jones's "relative" as that term was defined in the policy. The Universal policy included the following definition: "'relative' means a relative of the named insured who is a resident of the same household." There is no dispute that Ambra was Jones's daughter; the dispute is whether she was a resident of his household.

{¶34} Universal moved for summary judgment, contending that Ambra did not qualify as a "resident" of Jones's household because she lived with her mother in Ohio. Universal submitted evidence to support that argument.

{¶35} Jones responded in opposition to summary judgment, contending that, under Illinois law, a person can have more than one residence and that one's residence is determined by looking at the facts of each case. Jones presented a legal argument, with supporting evidence, that Ambra qualified as a resident of his household. The trial court concluded that Jones failed to demonstrate that there was a genuine issue of material fact on this issue. We disagree.

{¶36} Jones presented evidence that he lived with Ambra and her mother until Ambra was three years old and that, since that time, Ambra has stayed with him every summer, for the entire summer. Jones and Gary also alternated holidays with Ambra and Jones and Ambra spoke on the telephone two to three times per week. Jones presented further evidence that Ambra kept personal items such as clothes, toys, and toiletries at his home and that, while she stayed with him, she was under his complete care, custody, and control.

{¶37} In support of his argument that Ambra qualified as a "resident" of his household, Jones cited *Coriasco v. Hutchcraft* (1993), 245 Ill. App.3d 969, and made factual analogies to that case. In *Coriasco*,

the appellate court reversed summary judgment for the defendant-insurer and entered summary judgment for plaintiff on the issue of whether a child qualified, for purposes of UIM coverage, as a "resident" of her non-custodial father's household. Id. at 972.

{¶39}   Stressing that one can have multiple "residences," the *Coriasco* court focused on the following facts: the child visited regularly with her father, she kept clothes and personal items there for her overnight stays, and she was subject to his care and custody while she was there. Id. at 971-972. The court stressed that, although the child was only visiting her father, she did so on an ongoing, regular basis. "[A] visit to a location does not prevent that location from being a residence." Id. at 972. The court noted that then-President Bush's vacation homes would qualify as his "residences" despite the fact that he also resided at the White House. Id.

{¶40}   Given the broad construction that the *Coriasco* and other Illinois courts have given the term "resident," this court finds no basis on which the facts of *Coriasco* can be legally distinguished from the facts presented by Jones in this case. Jones presented sufficient evidence to raise a genuine issue of material fact as to whether Ambra was a resident of his household. Therefore, the trial court erred in granting summary judgment to Universal. The second assignment of error is sustained.

> Judgment affirmed in part,
> reversed in part and
> the cause remanded.

WILLIAM G. BATCHELDER
FOR THE COURT

SLABY, P J.
WHITMORE, J.
CONCUR

APPEARANCES:

ROBERT I. CHERNETT, VALORIA C. HOOVER, and DAVID M. DVORIN, Attorneys at Law, 1375 East Ninth Street, 20th Floor, One Cleveland Center, Cleveland, Ohio 44114, for Appellant Roosevelt Jones.

JIMMIE MACK, Attorney at Law, 716 Leader Building, Cleveland, Ohio 44113, for Appellees/Cross-Appellants Elbert Gary and Theresa Gary.

FRED E. STEVENS, Attorney at Law, 75 Public Square, Suite 1450, Cleveland, Ohio 44113, for Appellees/Cross-Appellants Elbert Gary and Theresa Gary.

SAMUEL M. PIPINO, Attorney at Law, 115 West Main Street, Suite 100, Columbus, Ohio 43215, for Appellee National Union Fire Insurance Company of Pittsburg, P.A.

SUSAN HOULIHAN and AMY K. CORRIGALL, Attorneys at Law, One Cascade Plaza, Suite 800, Akron, Ohio 44308, for Appellee Universal Casualty Insurance Company.