[Cite as *Lintner v. Midwestern Indemn. Co.*, 2002-Ohio-5609.]

Butler CA2002-04-077

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

RICHARD LINTNER, et al., :

    Plaintiffs-Appellants, : CASE NO. CA2002-04-077

                                       :             O P I N I O N
-vs-                                              10/21/2002

                                        :

THE MIDWESTERN INDEMNITY
COMPANY, :

    Defendant-Appellee. :

CIVIL APPEAL FROM COMMON PLEAS COURT

George C. Rogers, 3242 Executive Parkway, #208, Toledo, OH 43606, for plaintiffs-appellants

Freund, Freeze & Arnold, Stephen V. Freeze, One Dayton Centre, Suite 1800, One S. Main Street, Dayton, OH 45402-2017, for defendant-appellee

    POWELL, J.

    {¶1} Plaintiffs-appellants, Richard Lintner, Charlotte Lintner and Linda Mason, appeal from the decision of the Butler County Common Pleas Court, granting summary judgment in favor of defendant-appellee, The Midwestern Indemnity Company ("Midwestern"), after determining that Midwestern was not obligated to provide appellants with uninsured motorist benefits. The trial court's judgment is affirmed.

    {¶2} In April 1995, Gregory Lintner ("decedent") was killed while riding as a passenger in a car that was struck by an oncoming locomotive in Preble County, Ohio. Cheryl Ehrnschwender, an uninsured motorist, was driving the

- 1 -

Butler CA2002-04-077

car when the accident occurred. The accident was allegedly caused by Ehrnschwender's failure to yield while crossing the railroad track.

{¶4} In August 1995, decedent's mother, Charlotte Lintner, administrator of decedent's estate, filed suit against the Norfolk and Western Railway Company and several of its employees, alleging that the negligence of the railway company's employees caused decedent's death.[1] No action was brought against Ehrnschwender.

{¶5} At the time of the accident, decedent's parents, Richard a: Charlotte Lintner, and decedent's sister, Linda Mason, had automobile liability and homeowner's policies in effect with Midwestern. In February 2001, the Lintners and Mason ("appellants") notified Midwestern of their intention to present claims for uninsured motorist coverage pursuant to their automobile liability and homeowner's policies. Midwestern denied the claims on the grounds that appellants had destroyed its subrogation rights against Ehrnschwender by not giving it timely notice of their possible claims before the statute of limitations for bringing an action against Ehrnschwender had expired.

{¶6} In August 2001, appellants brought an action against Midweste: seeking a declaration that they were entitled to uninsured motorist coverage under their automobile liability and homeowner's policies. The trial court granted Midwestern's motion for summary judgment, holding that appellants' "failure to preserve Midwestern's subrogation rights against the tortfeasor and failure to notify Midwestern within a reasonable time of any claims constituted a material breach of the contract, precluding coverage."

{¶7} Appellants raise two assignments of error on appeal.

Assignment of Error No. 1

{¶8} "THE TRIAL COURT ERRED IN OVERRULING PLAINTIFFS' RICHARD AI

---

1. The outcome of this action was not revealed in the summary judgment proceedings; in any event, it is not relevant to this appeal.

- 2 -

Butler CA2002-04-077

CHARLOTTE LINTNER AND LINDA MASON, (SIC) MOTION FOR PARTIAL SUMMARY JUDGMENT ON THEIR AUTO POLICIES AND ERRED IN GRANTING MIDWESTERN'S MOTION FOR SUMMARY JUDGMENT."

{¶10} Appellants argue the trial court erred by granting summary judgme[nt] in favor of Midwestern on the issue of whether appellants were entitled to uninsured motorist benefits under their automobile insurance policies. Appellants acknowledge that they failed to provide Midwestern with timely notice of their possible claims in order to preserve Midwestern's subrogation rights, but contend, nevertheless, that Midwestern should be precluded from raising this issue as a bar to coverage. In support of this contention, appellants point out that the provision in their automobile policies restricting coverage to insureds who sustain a bodily injury is invalid and unenforceable pursuant to Sexton v. State Farm Mut. Auto. Ins. Co. (1982), 69 Ohio St.2d 431, and Moore v. State Auto. Mut. Ins. Co., 88 Ohio St.3d 27, 2000-Ohio-264. Appellants argue that the inclusion of this "unlawful" restriction in the policies' language prevented them from timely realizing that they were entitled to uninsured motorist coverage, since none of them had sustained bodily injury as a result of decedent's fatal accident. Therefore, appellants contend, their failure to preserve Midwestern's subrogation rights should not bar them from receiving uninsured motorist coverage. We find appellants' arguments unpersuasive.

{¶11} Summary judgment is to be granted only when there is no genuine iss[ue] of material fact remaining to be litigated, the moving party is entitled to judgment as a matter of law, and it appears from the evidence that reasonable minds can come to only one conclusion, and viewing that evidence most strongly in favor of the non-moving party, that conclusion is adverse to that party. Welco Industries, Inc. v. Applied Cos., 67 Ohio St.3d 344, 346, 1993-Ohio-191.

{¶12} Appellants' automobile insurance policies with Midwestern bo[th] contain provisions that state in pertinent part:

Butler CA2002-04-077

{¶13} "We will pay damages ***, for bodily injury which an 'insured' legally entitled to recover from the owner or operator of an uninsured motor vehicle *** because of 'bodily injury' to an insured."

{¶14} In Sexton, 69 Ohio St.2d at 436, the court held that a policy restriction limiting uninsured motorist coverage to insureds who had sustained bodily injury was void because it attempted to limit recovery contrary to the version of R.C. 3937.18 then in effect. At the time Sexton was decided, R.C. 3937.18(A) provided in relevant part:

{¶15} "(A) No automobile liability or motor vehicle liability policy of insurance insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless an equivalent amount of coverage for bodily injury or death is provided therein or supplemental thereto under provisions approved by the superintendent of insurance, <u>for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom</u>. The named insured shall have the right to reject such uninsured motorist coverage, or may require the issuance of coverage for bodily injury or death in accordance with a schedule of optional lesser amounts approved by the superintendent, that shall be no less than the limits set forth in section 4509.20 of the Revised Code for bodily injury or death. Unless the named insured requests such coverage in writing, such coverage need not be provided in or supplemental to a renewal policy where the named insured has rejected the coverage in connection with a policy previously issued to him by the same insurer." (Emphasis added.)

{¶16} The Sexton court stated, "The critical language [in the applicable version of R.C. 3937.18(A)] for this case is that the coverage is 'for the protection of persons insured thereunder who are legally entitled to

- 4 -

recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death resulting therefrom.'" Sexton at 434. The Sexton court concluded that "[a]lthough the statute does not indicate who must have sustained the bodily injury, it does not specify that it be the insured. Because the statute should be construed liberally, *** we will not add that limitation." (Citation omitted.) Id.

{¶18} In 1994, R.C. 3937.18 was amended by Am.Sub.S.B. No. 20 to provide pertinent part:

{¶19} "(A) No automobile liability or motor vehicle liability policy insurance insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless both of the following coverages are provided to persons insured under the policy for loss due to bodily injury or death suffered by such persons:

{¶20} "(1) Uninsured motorist coverage, which shall be in an amount coverage equivalent to the automobile liability or motor vehicle liability coverage and shall provide protection for bodily injury or death under provisions approved by the superintendent of insurance, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death, suffered by any person insured under the policy." (Emphasis added.)

{¶21} A number of courts concluded that the amended language of R.C. 3937.18 overruled Sexton, 69 Ohio St.2d 431, and thus permitted automobile insurance policies to restrict uninsured motorist coverage to insureds who had sustained bodily injury or death. See, e.g., King v. Western Res. Mut. Cas. Co. (Mar. 15, 1999), Monroe App. Nos. 805, 806 and 807. However, in Moore, 88 Ohio St.3d 27, the Ohio Supreme Court held:

Butler CA2002-04-077

{¶22} "R.C. 3937.18(A)(1) as amended by Am.Sub.S.B. No. 20, does not permit an insurer to limit uninsured motorist coverage in such a way that an insured must suffer bodily injury, sickness, or disease in order to recover damages from the insurer." Moore at syllabus.

{¶23} Appellants' primary argument is that the provision in the automobile liability insurance policies limiting coverage to insureds who sustain bodily injuries, which has been subsequently held to be invalid and unenforceable, misled them into believing they had no uninsured motorist coverage. Consequently, appellants assert, the policy failed to advise them of their rights and corresponding duties under the policies, such as their right to receive uninsured motorist coverage and their duties to provide Midwestern with notice of their claims and to protect Midwestern's subrogation rights with respect to the tortfeasor. Therefore, appellants assert, Midwestern should be precluded from arguing that they breached a condition precedent to coverage barring their recovery. We disagree with this argument.

{¶24} Appellants were represented by counsel in the aftermath of the accident. They were free to bring the exact type of claim that the prevailing plaintiff in Moore brought against his insurer. Had they done so, these types of claims might have become known as Sexton/Lintner claims. However, appellants chose not to pursue a claim against the tortfeasor to obtain recovery for their losses, but instead chose to pursue a claim against the railway company. We agree with the trial court that there was nothing to prevent appellants from providing Midwestern with timely notice of the incident and protecting Midwestern's subrogation rights. Accordingly, the trial court did not err by finding that appellants were precluded from recovery.

{¶25} Appellants' first assignment of error is overruled.

Assignment of Error No. 2

{¶26} "THE TRIAL COURT ERRED IN OVERRULING PLAINTIFF'S (SIC) MOTION FO

Butler CA2002-04-077

PARTIAL SUMMARY JUDGMENT ON THE 'HOWMEOWNERS' POLICIES AND ERRED IN GRANTING THE MIDWESTERN INDEMNITY'S MOTION FOR SUMMARY JUDGMENT."

{¶28} Appellants argue that the trial court erred by granting summa[ry] judgment against them on their claim that they were entitled to uninsured motorist benefits under their homeowner's policies with Midwestern. Appellants assert that they were entitled to such coverage under those policies because they contain a limited form of automobile liability coverage for "residence employees" and, therefore, are subject to the requirements of former R.C. 3937.18.

{¶29} Former R.C. 3937.18 requires insurers to offer uninsured/underinsur[ed] motorist ("UM/UIM") coverage whenever an automobile liability or motor vehicle liability policy of insurance is issued.[2] If such coverage is not offered, it becomes part of the policy by operation of law. Abate v. Pioneer Mut. Cas. Co. (1970), 22 Ohio St.2d 161, paragraphs one and two of the syllabus. Consequently, Midwestern was required to offer appellants UM/UIM coverage only if their homeowner's policy is a motor vehicle liability policy. See Davidson v. Motorists Mut. Ins. Co., 91 Ohio St.3d 262, 264, 2001-Ohio-36.

{¶30} Appellants' homeowner's policies with Midwestern excludes fr[om] coverage any bodily injury arising out of the ownership, maintenance or use of motor vehicles. However, this exclusion does not apply to bodily injury to a "residence employee arising out of and in the course of the residence employee's employment by an insured." Appellants argue the "residence employee" exception converts their homeowner's policies into motor vehicle liability policies, which are subject to the provisions of former R.C. 3937.18.

{¶31} In support of this contention, appellants cite Selander v. Erie In[s.] Group, 85 Ohio St.3d 541, 1999-Ohio-287, which held that former R.C.

---

2. The current version of R.C. 3937.18 no longer mandates the offering of UM/UIM motorist coverage. However, because the accident in question took place in 1995, the current version of R.C. 3937.18 does not apply to this case.

- 7 -

3937.18 applied to a general business liability policy that provided coverage for claims arising out of the use of "hired or non-owned automobiles." Id. The court held that "[w]here motor vehicle liability coverage is provided, even in limited form, uninsured/underinsured coverage must be provided." Id. at 544.

{¶33} However, in Davidson, 91 Ohio St.3d 262, the court refused to find that provisions in a homeowner's insurance policy providing incidental coverage for certain vehicles converted the homeowner's policy into a motor vehicle liability policy. The Davidson court stated in pertinent part:

{¶34} "In Cincinnati Indemn. Co. v. Martin (1999), 85 Ohio St.3d 604, 60 710 N.E.2d 677, 680, a case involving the insurer's duty to indemnify and/or defend a holder of a homeowner's policy against a wrongful-death claim, we explained the inherent differences between UM/UIM coverage and homeowner's coverage:

{¶35} "'[I]n the case of bodily injury, homeowner's liability insurance essentially designed to indemnify against liability for injuries that noninsureds sustain themselves, typically while in the insured's home. In contrast, the purpose of uninsured motorist coverage is "to protect persons from losses which, because of the tortfeasor's lack of liability coverage, would otherwise go uncompensated."'

{¶36} "It makes perfect sense, then, to include coverage in homeowner policies for off-road and similar vehicles that are used around the insured premises but to limit UM/UIM coverage to vehicles designed for highway use. Common sense alone dictates that neither the insurer nor the insured bargained for or contemplated that such homeowner's insurance would cover personal injuries arising out of an automobile accident that occurred on a highway away from the insured's premises." Davidson at 269.

{¶37} The Davidson court held "that a homeowner's insurance policy th provides limited liability coverage for vehicles that are not subject to motor vehicle registration and that are not intended to be used on a public highway is not a motor vehicle liability policy and is not subject to the

- 8 -

Butler CA2002-04-077

requirement of former R.C. 3937.18 to offer uninsured and underinsured motorist coverage." Id. at 270.

{¶39} The policy at issue in <u>Davidson</u> contained a "residence employee exception to the exclusion from coverage of bodily injury arising out of the ownership, maintenance or use of motor vehicles, similar to the one contained in the policy at issue here. The <u>Davidson</u> court refused to consider an argument that this provision rendered the homeowner's policy a motor vehicle liability policy because it had not been raised in either the trial court or the appellate court. Id. at 265, fn. 2.

{¶40} Appellants contend that the residence employee exception renders their homeowner's policies subject to former R.C. 3937.18. They further argue that <u>Davidson</u> does not apply because the liability coverage in their policies "does cover liability from automobiles that are subject to motor vehicle registration and that are designed for use on a public highway." Thus, appellants argue, the law in <u>Selander</u> rather than <u>Davidson</u> should control the outcome of this case.

{¶41} At least one appellate court has held that a homeowner's policy with language identical to the one before us falls within the court's analysis in <u>Selander</u>, rather than <u>Davidson</u>. <u>Lemm v. The Hartford</u> (Oct. 4, 2001), Franklin App. No. 01AP-251. Other courts have concluded just the opposite, thereby creating a conflict between two appellate districts on this issue.[3] See, e.g., <u>Davis v. Shelby Ins. Co.</u> (2001), 144 Ohio App.3d 468.

{¶42} We conclude that the residence employee exception does not convert the appellants' homeowner's policies into a motor vehicle liability policy that would render it subject to the requirements of former R.C. 3937.18. While the residence employee exception provides liability coverage for automobiles that are subject to motor vehicle registration and that are designed for use on a public highway, the policy at issue in this case is a homeowner's policy, rather than a general business liability policy, which

---

3. The conflict between <u>Lemm</u> and <u>Davis</u> has been certified and the Ohio Supreme Court has accepted it for review.

was at issue in <u>Selander</u>. We further find that the residence employee exception does not convert a homeowner's policy to a motor vehicle liability policy for the following reasons set forth in <u>Panozzo v. Allstate Ins. Co.</u> (Sept. 13, 2001), Cuyahoga App. No. 79083:

{¶44} "*** The policy here limits liability to a single, narrow class persons, residence employees, who are defined by the policy as follows:

{¶45} "'Residence employee means an employee of an insured person whi performing duties arising out of and in the course of employment in connection with the maintenance or use of your residence premises. This includes similar duties performed elsewhere for an insured person, not in connection with the business of an insured person.'

{¶46} "Based upon this definition, the policy only covers an injury to residence employee if the employee is injured in the course of his or her employment. Moreover, coverage is provided for any injury to a residence employee caused by an occurrence; it is not limited to injuries arising out of the ownership, maintenance, use, occupancy, etc., of an automobile. Thus, the fact that an automobile may be involved is incidental to coverage; the policy makes this aspect of the general coverage regarding residence employees express only because it must carve out an exception to the general exemption.

{¶47} "It is also worth emphasizing that the policy covers only t insured's liability for injuries to a residence employee, not injuries to any one else. The coverage for only such a limited class of persons makes it clear that the defining characteristic of coverage is the person injured, not the fact that a motor vehicle was involved." <u>Panozzo v. Allstate Ins. Co.</u> (Sept. 13, 2001), Cuyahoga App. No. 79083.

{¶48} Furthermore, appellants are not entitled to uninsured motori coverage under their homeowner's policies because, as was the case with their automobile policies, appellants failed to comply with the notice and subrogation provisions of their homeowner's policies. Relying on <u>Myers v.</u>

- 10 -

Butler CA2002-04-077

Safeco Ins. Co. of America (Feb. 18, 2000), Licking App. No. 99CA00093, appellants argue that their failure to comply with the notice and subrogation provisions in the policy does not preclude them from receiving uninsured motorist coverage. Appellants argue that where UM/UIM coverage is imposed by operation of law rather than by contract terms, the parties could not have intended UM/UIM coverage to be provided under the policy. Consequently, appellants argue, the parties could not have intended the notice and subrogation provision of the policies to apply to the UM/UIM coverage. We disagree with this argument.

{¶50} Instead, we agree with the decision in Luckenbill v. Midwestern Indemn. Co. (2001), 143 Ohio App.3d 501, which states in relevant part:

{¶51} "The policy provision here at issue, the notice provision, is general condition imposed upon the policy with respect to any liability coverage it provides. UM/UIM coverage is liability coverage, albeit for the benefit of the insured with respect to the liability of a tortfeasor who is uninsured or underinsured. When that coverage is imposed by law, *** it may not be diminished in its scope by circumstantial exclusions which are matters the parties never contemplated. However, the right to coverage may be conditioned on compliance with provisions the parties did contemplate. Here, they agreed to condition liability coverage on the insured's compliance with certain notice requirements. His failure to comply with those requirements likewise terminated the UM/UIM liability coverage involved, notwithstanding that it was imposed by law and not by agreement." Id. at 506-507.

{¶52} The Luckenbill court concluded "that a general, predicative condition for coverage in a policy of liability insurance, such as a notice provision, applies to UM/UIM coverage imposed by law for the benefit of the insured to the same extent that it applies under the policy's terms for liability coverage, which likewise benefits the insured when he is at fault." Id. at 507.

Butler CA2002-04-077

{¶53} In light of the foregoing, we conclude the trial court did not err determining that appellants were not entitled to uninsured motorist coverage under their homeowner's policies.

{¶54} Appellants' second assignment of error is overruled.

Judgment affirmed.

YOUNG and VALEN, JJ., concur.